_POOP_   M= MY CF COPY

## SUPERIOR COURT OF WASHINGTON FOR GRAYS HARBOUR COUNTY

PAUL MARKS
Plaintiff,

v.

DEPT. OF CORRECTIONS
Defendant.

No: 17-2-00050-3

SUMMONS [ 20 DAYS]

**TO THE DEFENDANT:** A lawsuit has been started against you in the above entitled court by _PAUL MARKS_, plaintiff. Plaintiff's claim is stated in the complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is issued pursuant to rule 4 of the Superior Court Civil Rules of the State of Washington.

Signed by Plaintiff _Paul Marks_
Printed Name _PAUL MARKS  321696 EB 26L_
Address _CRCC_
_1301 N. EPHRATA AVE_
_CONNELL, WA  99326_

DATED _3-4-17_

SUMMONS CR 4

①

POOR

MC

SUPERIOR COURT OF WASHINGTON FOR GRAYS HARBOUR COUNTY

PAUL MARKS
                Plaintiff,                    )
                                              )   No: 17-2-00050-3
                                              )   COMPLAINT
                                              )
        v.                                    )
DEPT. OF CORRECTIONS                          )
                Defendant.                    )

AT ALL MATERIAL TIMES STAFFORD CREEK CORRECTIONAL
CENTER IS LOCATED WITHIN GRAYS HARBOUR COUNTY
AT ALL MATERIAL TIMES PLAINTIFF WAS A INMATE
AT STAFFORD CREEK CORRECTIONAL CENTER
PLAINTIFF ALLEGES THAT: ON 10-29-16, PLAINTEFF
HAD A BOWEL MOVEMENT, FLUSHED THE TOILET WHICH
OVER FLOWED CAUSING FECAL MATTER AND CONTAMINATED
WATER TO FLOOD THE I WAS IN. AT THE TIME OF
THE FLOODING I WAS BEING HOUSED IN "F" UNIT
ALSO KNOW A "THE HOLE" IN A CELL THAT
I WAS UNABLE TO LEAVE.

Ⓐ

MC                    POOP

I CONTACTED THE CORRECTIONS OFFICER AND TOLD HIM
WHAT HAD HAPPENED. HE CONTACTED THE DUTY
SGT. WHO IN TURN CALLED FOR THE IMU PORTER.
PLAINTIFF WAS MOVED FROM HIS CELL TO ANOTHER
CELL WHERE HE HAD A BIRDS EYE VIEW OF THE
FOLLOWING: THE IMU PORTER WAS A MEXICAN WHO SPOKE
VERY LITTLE ENGLISH. HE CAME TO THE "E" UNIT WITH
1 BUCKET AND ONE MOP. THE PORTER MOPED THE FLOOR,
EACH TIME RINGING THE MOP INTO THE BUCKET, THEN PUT
THE MOP IN THE CONTAMINATED WATER, WRING THE MOP
AND MOPED UP THE FECAL MATTER AND CONTAMINATED WATER.
HE DID THIS UNTILL ALL THE OBSERVABLE CONTAMINATED WATER AND
FECAL MATTER WAS REMOVED. HE THEN PACKED UP THE MOP
AND MOP BUCKET AND LEFT. HE DID NOT SANITIZE THE
FLOOR WITH BLEACH OR ANY OTHER SANITIZEING AGENT.
PLAINTIFF WAS MOVED BACK TO THIS CELL. PLAINTIFF MADE
SEVERAL COMPLAINTS WHICH FELL ON DEAF EARS AND
WAS FORCED TO OCCUPY THIS CELL WITH A CONTAMINATED
FLOOR FOR 2 TO 3 WEEKS UNTILL I WAS MOVED TO
COYTOE RIDGE COR. CNT.
PLAINTIFF RESERVES THE RIGHT TO AMEND HIS COMPLAINT
AT ANY TIME AND MAIL AMENDED MATERIALS TO THE
DEFENDANT.

                SUBMITTED

                         PAUL MARICS
                         CRCC
                         1301 N. EPHRATA AVE
                                         2-4-17
                   ③

MC   POOP

PRAYER AND SUBMITTALS

PLAINTIFF PRAYS FOR THE FOLLOWING

1. $1,000 PER DAY PLAINTIFF WAS FORCED TO
   OCCUPY THE CONTAMINATED CELL. 18 DAYS

2. PUNITIVE DAMAGES IN THE AMOUNT OF $100,000
   SO DOC WILL NOT ENGAGE IN THE AFORE MENTIONED
   ACTIVITY

3. ATTORNEY FEES TO BE SET BY THE COURT

4. ANY ORDER THE COURT DEEMS JUST

DATED 3-4-17

_Paul Marks_
SIGNATURE
PAUL MARKS
PRINTED NAME

(4)

*Poop   MC*

---

SUPERIOR **Court of Washington**
For GRAYS HARBOUR COUNTY

PAUL MARKS
         Petitioner/Plaintiff,
vs.
DEPT. OF. CORR.
         Respondent/Defendant.

No. 17-2-00050-3

**Motion and Declaration For Waiver of Civil Fees and Surcharges (MTAF)**

## I. Motion

1.1    I am the ☒ petitioner/plaintiff ☐ respondent/defendant in this action.

1.2    I am asking for a waiver of fees and surcharges under GR 34.

## II. Basis for Motion

2.1.    GR 34 allows the court to waive "fees or surcharges the payment of which is a condition precedent to a litigant's ability to secure access to judicial relief" for a person who is indigent. As outlined below, I am indigent.

Dated: 3-4-17

Signature of Requesting Party

PAUL MARKS
Print or Type Name

## III. Declaration

I declare that,

Mt and Decl for Civil Fee Waiver (MTAF) - Page 1 of 2
WPF GR 34.0100 (05/2014) – GR 34

(5)

*POOR*   *M C*

3.1    I cannot afford to meet my necessary household living expenses and pay the fees and surcharges imposed by the court.  Please see the attached Financial Statement, which I incorporate as part of this declaration.

3.2    In addition to the information in the financial statement I would like the court to consider the following:

_____

_____

_____

_____

_____

_____

_____

_____

☒    (Check if applies.) I filed this motion by mail.  I enclosed a self-addressed stamped envelope with the motion so that I can receive a copy of the order once it is signed.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

Signed at (city) _CONNELL_____, (state) _WA__ on (date) _3-4-17_____.

_Paul Marks_____                    _PAUL MARKS_____
Signature                              Print or Type Name

*Voor   MC*

Case Name: PAUL MARKS V. DOC      Case Number: 17-2-00050-3

| Financial Statement (Attachment) | |
|---|---|
| **1.** My name is: PAUL MARKS | |
| **2.** [ ] I provide support to people who live with me: How many?    Age(s): | |

| **3. My Monthly Income:** | | **6. My Monthly Household Expenses:** | |
|---|---|---|---|
| Employed [ ]    Unemployed [X] | | Rent/Mortage: | $ |
| Employer's Name: | | Food/Household Supplies: | $ |
| Gross pay per month (salary or hourly pay): | $ | Utilities: | $ |
| Take home pay per month: | $ | Transportation: | $ |
| **4. Other Sources of Income Per Month in my Household:** | | Ordered Maintenance actually paid: | $ |
| Source: U.S. TREASURY | $ 133.70 | Ordered Child Support actually paid: | $ |
| Source: | $ | Clothing: | $ |
| Source: | $ | Child Care: | $ |
| Source: | $ | Education Expenses: | $ |
| Sub-Total: | $ 133.70 | Insurance (car, health): | $ |
| [ ] I receive food stamps. | | Medical Expenses: | $ |
| **Total Income, lines 3 (take home pay) and 4:** | $ | Sub-Total: | $ |
| **5. My Household Assets:** | | **7. My Other Monthly Household Expenses:** | |
| Cash on hand: | $ 332 | | $ |
| Checking Account Balance: | $ | | $ |
| Savings Account Balance: | $ | | $ |
| Auto #1 (Value less loan): | $ | | $ |
| Auto #2 (Value less loan): | $ | Sub-Total: | $ |
| Home (Value less mortgage): | $ | **8. My Other Debts with Monthly Payments:** | |
| Other: | $ | | $       /mo |
| Other: | $ | | $       /mo |
| Other: | $ | | $       /mo |
| Other: | $ | | $       /mo |
| Other: | $ | Sub-Total: | $ |
| **Total Household Assets:** | $ 332 | **Total Household Expenses and Debts, lines 6, 7, and 8:** | $ |
| Date: 3-4-17 | | Signature: *Paul Marks* | |

Financial Statement (Attachment) - Page 1 of 1
WPF GR 34.0300 (2/2011) GR 34



*POOP   MC*

| | |
|---|---|
| **SUPERIOR** **Court of Washington** For **GRAYS HARBOUR COUNTY** | No. **17-2-00050-3** |
| **PAUL MARKS** <br> Petitioner/Plaintiff, <br> vs. <br> **DEPT OF CORR.** <br> Respondent/Defendant. | **Order Re Waiver of Civil Fees and Surcharges** <br> ☐ **Granted (ORPRFP)** <br> ☐ **Denied (ORDYMT)** <br> ☐ **Clerk's Action Required 3.1** |

## I. Basis

The court received the motion to waive fees and surcharges filed by or on behalf of the ☒ petitioner/plaintiff ☐ respondent/defendant.

## II. Findings

The Court reviewed the motion and supporting declaration(s). Based on the declaration(s) and any relevant records and files, the Court finds:

2.1   ☐   The moving party is indigent based on the following:  He or she:

    ☐   is represented by a qualified legal aid provider that screened and found the applicant eligible for free civil legal aid services; and/or

    ☐   receives benefits from one or more needs-based, means-tested assistance programs; and/or

    ☐   has household income at or below 125% of the federal poverty guideline; and/or

    ☐   has household income above 125% of the federal poverty guideline but cannot meet basic household living expenses and pay the fees and/or surcharges; and/or

    ☐   other: _____

_____

Order re Civil Fee Waiver (ORPRFP, ORDYMT) - Page 1 of 2
WPF GR 34.0500 (05/2014) – GR 34

⑤

*Poop    MC*

2.2    ☐    The moving party is not indigent.

2.3    ☐    Other:_____

_____

_____

_____

_____

_____

### III.  Order

Based on the findings the court orders:

3.1    ☐    The motion is granted, and

        ☐    all fees and surcharges the payment of which is a condition precedent to the moving party's ability to secure access to judicial relief are waived.

        ☐    other: _____

_____

_____

_____

_____

_____

3.2    ☐    The motion is denied.

Dated: _____    _____

                                      **Judge/Commissioner**

Presented by:

_____

Signature of Party or Lawyer/WSBA No.

_____

Print or Type Name                    Date

⑨

SUBMITTLES (POOP)

M'C

11

*PooV # 17-1-00050-3*



## Department of
# Corrections
WASHINGTON STATE

*MC*

**HEALTH SERVICES KITE**

This form must be used to request non-emergency
health care services, except in facilities where kiosks or sign-up sheets are used.

**PLEASE PRINT**          *SUBMISSION OF HEALTH SERVICES REQUEST MAY RESULT IN A CO-PAY*

| LAST NAME *MARKS* | FIRST NAME *PAUL* | | |
|---|---|---|---|
| DOC NUMBER *321696* | FACILITY *Sccc* | UNIT/CELL *IMU 05* | DATE *17-3-16* | TIME |
| JOB/PROGRAM | | JOB/PROGRAM HOURS | DAYS OFF |

*If you feel you have an actual medical emergency, alert the staff and do not use this form.*

**TYPE OF REQUEST (check only one box per form)**

☒ MEDICAL          ☐ DENTAL          ☐ MENTAL HEALTH

☐ MEDICATION REFILL – List medication(s) with prescription number(s) or place sticker below

☐ OPTOMETRY          ☒ OTHER: *MALONE R.N.*

**REASON FOR REQUEST (list problem or medications needing refill)** *ITS OBVIOUS YOU DONT HAVE A COPY OF THE IMU/SEG HAND BOOK IE PAGE "6" OR YOU WOULDNT HAD ME REFER TO IT. IT IS SO AMBUOUS NO ONE IN THERE RIGHT MIND WOULD INTERPRET IT TO MEAN AFTER A CATASTROPH EVENT LIKE FECAL CONTAMANATED WATER FLOODING A CELL WOULD BE THE RESPONSABILITY OF THE OCUPIER TO CLEAN UP THE MESS AS IT FALLS DIRECTLY ON THE STAFF FOR PROPER CLEAN UP TO HEALTH DEPT REQUIREMENTS. THIS IS A PUBLIC BLDG AND THE HEALTH DEPT HAS GUIDE LINES ABOUT ISSUES LIKE THIS. JUST TALKED TO SGT. CIRKSEN HE SAYS IT WAS DONE APPROPATLY. I TOLD HIM TO PROVE IT ALL HE SAID HE WOULD*

*[signature]* OFFENDER SIGNATURE

## HEALTH SERVICES RESPONSE/ENCOUNTER

This form must be filed if any information is entered below except for: simple prescription refills, finance, non-medical
work/bunk change, religious diets, shoes, classification, non-health services issues

| ☐ Schedule within ____ days/weeks/months | ☐ Next available sick call | ☐ No visit required |
|---|---|---|

*I'll Give Him the oppurtunatly.*

| RESPONDER signature and stamp (all copies) | DATE and TIME |
|---|---|

**PRESCRIPTIONS MUST BE WRITTEN ON DOC 13-435 PRIMARY ENCOUNTER REPORT (PER) OR IN CIPS**

Distribution: **WHITE/YELLOW** – Responder, **PINK** – Offender keeps
Distribution upon completion: **WHITE** – Health Record, **YELLOW** – Return to Offender with Response

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written
consent of the person to whom it pertains, or as otherwise determined by law.*

DOC 13-423 (11/20/2015)        DOC 610.040   DOC 610.650   DOC 630.500   DOC 630.540        KITES

*(12)*

*POOP #17-2-00050-3*
*MC*

Department of
**Corrections**
WASHINGTON STATE

**HEALTH SERVICES KITE**

This form must be used to request non-emergency
health care services, except in facilities where kiosks or sign-up sheets are used.

*PLEASE PRINT*          *SUBMISSION OF HEALTH SERVICES REQUEST MAY RESULT IN A CO-PAY*

| LAST NAME Marks | | | FIRST NAME Paul | |
|---|---|---|---|---|
| DOC NUMBER 321696 | FACILITY SCCC | UNIT/CELL IMU OS? | DATE 11-1-16 | TIME |
| JOB/PROGRAM | | JOB/PROGRAM HOURS | DAYS OFF | |

*If you feel you have an actual medical emergency, alert the staff and do not use this form.*

**TYPE OF REQUEST (check only one box per form)**

☒ MEDICAL          ☐ DENTAL          ☐ MENTAL HEALTH

☐ MEDICATION REFILL – List medication(s) with prescription number(s) or place sticker below

☐ OPTOMETRY          ☐ OTHER: _____

**REASON FOR REQUEST (list problem or medications needing refill)**

2nd NOTICE, ON SUN 10-29-16 I took A BM, flushing the
toilet it again flowen spueing fical water all over the
floor along with fical matter. IMU Porters were dispatched,
I watched as they had only 1 mop bucket and proceded to
mop up the fical matter + water. Neusning emptying the mop bucket
nor did they sanitize the floor. I can see remenence of there
1/2 assed work on the floor where the wall meets the floor.
How long am I going to be under these conditions? If it was

_(signature)_
OFFENDER SIGNATURE

**HEALTH SERVICES RESPONSE/ENCOUNTER**

This form must be filed if any information is entered below except for: simple prescription refills, finance, non-medical
work/bunk change, religious diets, shoes, classification, non-health services issues

☐ Schedule within _____ days/weeks/months          ☐ Next available sick call          ☐ No visit required

"Your house I'm sure you would sanitize the Floor!!
See previous notice to "Oiller".

You may request cleaning gear per the Offender
Handbook for IMU/SEG. You may also discuss this with the
Unit Sgt.

_(signature)_ K Malone RN          DATE and TIME 11/2/16  0800
RESPONDER signature and stamp (all copies)

**PRESCRIPTIONS MUST BE WRITTEN ON DOC 13-435 PRIMARY ENCOUNTER REPORT (PER) OR IN CIPS**

Distribution: WHITE/YELLOW – Responder, PINK – Offender keeps
Distribution upon completion: WHITE – Health Record, YELLOW – Return to Offender as response

State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written
consent of the person to whom it pertains, or as otherwise permitted by law.

RECEIVED
NOV 02 2016

(13)

*POOP # 17-2-000 50-3*
*MMC*



### Department of
# Corrections
WASHINGTON STATE

**HEALTH SERVICES KITE**

This form must be used to request non-emergency
health care services, except in facilities where kiosks or sign-up sheets are used.

*PLEASE PRINT*     *SUBMISSION OF HEALTH SERVICES REQUEST MAY RESULT IN A CO-PAY*

| LAST NAME MARKS | | | FIRST NAME PAUL | |
|---|---|---|---|---|
| DOC NUMBER 321696 | FACILITY SCCC | UNIT/CELL IMU | DATE 10-29-16 | TIME |
| JOB/PROGRAM | | JOB/PROGRAM HOURS | | DAYS OFF |

*If you feel you have an actual medical emergency, alert the staff and do not use this form.*

**TYPE OF REQUEST** (check only one box per form)

☐ MEDICAL          ☐ DENTAL          ☐ MENTAL HEALTH

☐ MEDICATION REFILL – List medication(s) with prescription number(s) or place sticker below

☐ OPTOMETRY          ☒ OTHER: HEAD OF MEDICAL DEPT OR SANITIZATION DEPT.

**REASON FOR REQUEST** (list problem or medications needing refill) TODAY 10-29-16 AT
APROX 7:00 PM I TOOK A BM AND THE TOILET OVER FLOODED WITH FICAL
WATER GOING ALL OVER THE FLOOR. 2 CO'S TOOK ME TO THE SHOWER AND

*SEE* → I SAW THE FOLLOWING: (CO JOHN DOE 1, JOHN DOE 2) WATCHED THE PORTER
*BELOW* MOP THE FLOOR, NEVER USING CLEAN WATER, JUST THE FECAL INFESTED WATER.
THEY USED NO DISINFECANT OR ANY TYPE OF BLEACH OR ANTIBACTERAL SANITIZER
OF ANY TYPE. THEY JUST MOPED UP THE FECAL WATER, PUTTING THE MOP IN THE
MOP BUCKET AND DID THIS OVER AND OVER. I HAVE BEEN MOVED BACK INTO
THE SAME ROOM, WET FLOOR WITH FECAL WATER AND CONTAMINATED AIR.

*Paul Marks*
OFFENDER SIGNATURE

### HEALTH SERVICES RESPONSE/ENCOUNTER
This form must be filed if any information is entered below except for: simple prescription refills, finance, non-medical
work/bunk change, religious diets, shoes, classification, non-health services issues

| ☐ Schedule within _____ days/weeks/months | ☒ Next available sick call | ☐ No visit required |
|---|---|---|

I'm BEING EXPOSED TO FECAL CONTAMANTION AND A HEALTH
RISK. MIDIMUN THE CELL SHOULD HAVE BEEN BLEACHED BEFOR
REUSE. CO'S NAMES ARE CO MOSSES + CO. SHERMAN

You may request cleaning gear per the Offender
Handbook - HIV/STD. You may also discuss
this issue with the unit sgt.

RESPONDER signature and stamp (all copies)          DATE and TIME
J.A. Along RN                                        11/2/16  0800

**PRESCRIPTIONS MUST BE WRITTEN ON DOC 13-435 PRIMARY ENCOUNTER REPORT (PER) OR IN CIPS**

Distribution: **WHITE/YELLOW** – Responder, **PINK** – Offender keeps
Distribution upon completion: **WHITE** – Health Record, **YELLOW** – Return to Offender with Response

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written
consent of the person to whom it pertains, or as otherwise permitted by law.*

RECEIVED

OCT 31 2016

(14)



LOG I.D. NUMBER/*NUM. DE REGISTRO*

**16621307**

**OFFENDER COPY**

Department of
**Corrections**
WASHINGTON STATE

#17-2-00056-3

MC

**LEVEL I - INITIAL GRIEVANCE**
*NIVEL 1 - QUEJA INICIAL*

| Name:<br>*NOMBRE:* | Last<br>*APELLIDO*<br>**Marks** | First<br>*PRIMERO NOMBRE*<br>**Paul** | Middle<br>*2DO NOMBRE* | DOC Number<br>*NUMERO DOC*<br>**321696** | Facility/Office<br>*FACILIDAD*<br>**SCCC** | Unit/Cell<br>*UNIDAD/CELDA*<br>**FNA05** |
|---|---|---|---|---|---|---|

| PART A - INITIAL GRIEVANCE/*PARTE A - QUEJA INICIAL* | Date Typed 11/8/16 | Date Due |
|---|---|---|

**I WANT TO GRIEVE /** *QUIERO QUEJARME DE*: On 10-29-16 I took a shit and the toilet overflowed spilling shit water all over the floor. They called IMU porters and they cleaned up the mess by morning the using the same water mopen again. They did this over and over again. Never changing the water in the bucket. Did not sanitize the floor which in any place would be required. I watched it all take place. I can't wait for you investigating response. What should I do? Call the health dept but I don't have there phone number or there address.

**SUGGESTED REMEDY /** *REMEDIO SUGERIDO*: Clean the floor right then sanitize the floor!.

| /s/ D. Dahne | 11/8/2016 | /s/ Paul Marks | 11/8/2016 |
|---|---|---|---|
| Grievance Coordinator Signature<br>*FIRMA DE COORDINADOR DE QUEJAS* | Date<br>*FECHA* | Grievant Signature<br>*FIRMA DE QUEJANTE* | Date<br>*FECHA* |

| PART B - LEVEL I RESPONSE / *PARTE B RESPUESTA PRIMER NIVEL* |
|---|

Your complaint has been investigated and it has been concluded that sanitizer is added to the mop water. It has also been confirmed that you are able to receive cleaning gear on a regular schedule to clean and sanitize your cell. No further action will be recommended at this time.

| D. Dahne | 11/14/16 |
|---|---|
| Grievance Coordinator Signature<br>*COORDINADOR DE QUEJAS* | Date<br>*FECHA* |

You may appeal this response by submitting a written appeal to the Coordinator within five (5) working days from date this response was received.
*Ud. puede apelar esta respuesta al someter una apelación por escrito al coordinador dentro de cinco (5) dias de trabajo de la fecha en que esta respuesta fue recibida.*

Distribution: Grievance Program Manager/*Gerente del Programa de Quejas,* Grievance Coordinator/*Coordinador de Queja,* Grievant/*Quejante*
DOC 05-166 E/S (Rev. 04/01/14)                                                                              DOC 550.100

(15)

AOS



# OFFENDER COPY

**Department of Corrections** WASHINGTON STATE

LOG I.D. NUMBER
Y 11de21307

POOP
17-2-00050-3 MC

**OFFENDER COMPLAINT**

**CHECK ONE:** ☒ Initial   ☐ Emergency   ☐ Appeal   ☐ Rewrite

**RESIDENTIAL FACILITIES:** Send completed form to the Grievance Coordinator. Explain <u>what happened</u>, <u>when</u>, <u>where</u>, and <u>who</u> was involved or which policy/procedure is being grieved. Be as brief as possible, but include the necessary facts. Use only one complaint form. A formal grievance begins on the date the typed grievance forms are signed by the Coordinator. Contact a Department employee to report an emergency situation or to initiate an emergency complaint. Please attempt to resolve all complaints through the appropriate Department employee(s) before pursuing a grievance.

**NOTE:** Complaints must be filed within <u>20 working days</u> of the incident. Appeals must be filed within <u>5 working days</u> of receiving the response. Include log ID # on rewrite or response being appealed.

| Last Name MARKS | First PAUL | Middle DAVID | DOC Number 321696 | Facility/Office SCCC | Unit/Cell IMU 05 |
|---|---|---|---|---|---|

**COMMUNITY SUPERVISION:** Send completed copies of this form directly to: Grievance Program Manager, Offender Grievance Program, Department of Corrections, P.O. Box 41129, Olympia WA 98504-1129.

| MAILING ADDRESS: STREET OR P.O. BOX | CITY, STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|

**COMPLAINT:** ON 10-28-16 I TOOK A SHIT AND THE TOILET OVERFLOWED SPILLING SHIT WATER ALL OVER THE FLOOR. THEY CALLED IMU PORTERS AND THEY CLEAND UP THE MESS BY MOPING THE USING THE SAME WATER. MOPEN AGAIN, THEY DID THIS OVER AND OVER AGAIN, NEVER CHANGING THE WATER IN THE ~~BUCK~~ BUCKET. DID NOT SANITIZE THE FLOOR WHICH IN ANY PLACE WOULD BE REQUIRED. I WATCHED IT ALL TAKE PLACE. I CAN'T WAITS FOR YOU INVISTAGATING RESPONSE. WHAT SHOULD I DO? CALL THE HEALTH DEPT. BUT I DON'T HAVE THERE PHONE NUMBER OR THERE ADDRESS.

**SUGGESTED REMEDY:** CLEAN THE FLOOR RIGHT THEN SANITIZE THE FLOOR!

Mandatory *Paul Marks* _____   11-2-16
Signature                                    Date

---

**GRIEVANCE COORDINATOR'S RESPONSE**
Your complaint is being returned because:
☐ It is not a grievable issue.
☐ You requested to withdraw the complaint.
☐ You failed to respond to callout (sheet) on _____
☐ Administratively Withdrawn
☒ The formal grievance/appeal paperwork is being prepared.

Facility/Office SCCC Imu    Date Received 11/8/16

☐ The complaint was resolved informally.
☐ Additional information and/or rewriting needed. (See below.)
   Return within 5 working days or by: _____
☐ No rewrite received
☐ Sent to _____ (facility) on _____ (date).

**EXPLANATION:** *Dave I* 11/8/16

| Coordinator's Name (print) D. Dahne CSIII | Coordinator's Signature † | Date |
|---|---|---|

DOC 05-165 Front (Rev. 04/01/14)

DOC 310.100, DOC 550.100

16



*NOOP* ≠ 17-2-08050-3
MC

**Department of Corrections**
WASHINGTON STATE

This form must be used to request non-emergency
health care services, except in facilities where kiosks or sign-up sheets are used.

**PLEASE PRINT**          **SUBMISSION OF HEALTH SERVICES REQUEST MAY RESULT IN A CO-PAY**

| LAST NAME MARKS | | FIRST NAME PAUL | |
|---|---|---|---|
| DOC NUMBER 321696 | FACILITY SCCC | UNIT/CELL IMU 05 | DATE 11-2-16 | TIME |
| JOB/PROGRAM | | JOB/PROGRAM HOURS | DAYS OFF |

*If you feel you have an actual medical emergency, alert the staff and do not use this form.*

**TYPE OF REQUEST (check only one box per form)**

☒ MEDICAL          ☐ DENTAL          ☐ MENTAL HEALTH

☐ MEDICATION REFILL – List medication(s) with prescription number(s) or place sticker below

☐ OPTOMETRY          ☐ OTHER: _____

**REASON FOR REQUEST (list problem or medications needing refill)**

#1. TO: MALANE RN; I DON'T MEAN TO NITPICK BUT AFTER
A EVENT LIKE THE ONE THAT HAPPEND TO ME, ITS NOT
NOT ENUGH TO CLEAN THE CELL IN A WAY ACCEPTABLE TO
THE HEALTH DEPT. THAT FALLS ON THE STAFF I'M NOT A HOUSE
CLEANER, IT SHOULD HAVE BEEN DONE RIGHT THE FIRST TIME.
I STILL RESIDE IN THE SAME KNOWN ENVIRMNT. #2 DOES ANYONE
HAVE THE GUTS TO STEP FORWERD AND ACCEPT RESPONSABILITY FOR
MIS HANDELING MY ORG _____ QUEST FOR HSR UPDATE? I'VE BEEN IN

_____ OFFENDER SIGNATURE

**HEALTH SERVICES RESPONSE/ENCOUNTER**

This form must be filed if any information is entered below except for: simple prescription refills, financial, non-medical
work/bunk change, religious diets, shoes, classification, non-health services issues

☐ Schedule within _____ days/week _____     ☐ Not available _____     ☐ Not _____

IMU ____ SENSE 10-11-16 FOR SOMETHING I DIDN'T DO. YOU, WHO
EVER YOU ARE, ARE RESPONSIBLE FOR THE MENTAL ANGUISH AND RETALITORY
CONDUCT AND intentual INFLICTION OF EMOTIONAL VBA PERPETRATED
ON ME FOR NO REASON EXCEPT MY BLUNDER. DURESS!! #1. I DO NOT
HAVE A IMU HAND BOOK AS IT WAS CONTAMANATED AND THROWN AWAY!! I'LL
ASK FOR ONE

Noted.

| RESPONDER signature and stamp (all copies) X. Micou, RN | DATE and TIME 11/3/16 C800 |
|---|---|

**PRESCRIPTIONS MUST BE WRITTEN ON DOC 13-435 PRIMARY ENCOUNTER REPORT (PER) OR IN CIPS**

Distribution: WHITE/YELLOW – Responder, PINK – Offender keeps
Distribution upon completion: WHITE – Health Record, YELLOW – Return to Offender with Response

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written
consent of the person to whom it pertains, or as otherwise permitted by law.*

DOC 13-423 (11/20/2015)     DOC 610.040   DOC 610.650   DOC 630.500   DOC 630.540          17          KITES

II 17-2-00050-3

12-10-16

MC

RECEIVED

DEC 15 2016

G. H. Co. Health & Social Svcs.

~~From~~: GRAYS HARBOUR COUNTY HEALTH DEPT

2109 SUMNER AVE

ABERDEEN, WA 98520

FROM: PAUL MARKS 321696 EB 26L

CRCC

1301 EPHRATA AVE

CONNELL, WA 99326

DEAR SIR OR MA'AM

ON SUNDAY 10-29-16 I TOOK A BOWEL -
MOVEMENT AND THE TOILET OVER FLOWED AND FECAL
CONTAMINATED WATER AND MATTER ITS SELF FLOODED
THE FLOOR.

WILL YOU PLEASE SEND ME THE PROCEDURE FOR
A PROPER CLEAN UP AND ~~DECOM~~ DECONTAMINATION
PROCEDURE

THANK YOU

Paul Marks

(18)   (7) END



# Grays Harbor County
## Public Health and Social Services Department
PEARSALL BUILDING
2109 SUMNER AVENUE, ABERDEEN, WA 98520

PHONE: (360) 532-8631
TDD: (360) 532-8657

*Roov MC*

FAX: (360) 533-6272
FAX: (360) 533-1983

December 16, 2016

Franklin County Health Department
W. Okanogen Pl
Kennewick, WA 99336

Re: Coyote Ridge Corrections Center Inmate Letter

Dear Sir or Madam:

Enclosed please find a letter regarding Coyote Ridge Correction Center in Connell, WA. We do not have jurisdiction over this matter in Grays Harbor County, thus we are forwarding it to you. Thank you.

Sincerely,

Karolyn Holden, Director
Public Health and Social Services Department

Enclosure

POOK
#17-2-00050-3

Home   Newsroom   Publications   About Us

Health

[ Topics A-Z ]   [ Español ]   [ Search... ]  [ Go ]

You and Your Family    Community and Environment    Licenses, Permits and Certificates    Data and Statistical Reports    Emergencies

For Public Health and Healthcare Providers

MC

🏠 Emergencies > Emergency Preparedness and Response > Factsheets > Sewage Spills: Cleaning Them Up

## Cleaning Up a Sewage Spill

**Emergency Preparedness and Response**

Bad Weather

Bioterrorism        +

Disease Outbreaks

Emergency Telephone Numbers

En Español

Factsheets        −

Anthrax

Bomb Threats

Botulism

Calling 911

Carbon Monoxide Safety

Chemical Agents

Cold Weather

Children and Disasters

Deaf and Hard of Hearing: Disaster tips

Earthquakes

Ebola

Emergency Supplies

Other languages

All files are PDF.

- Spanish
- Chinese
- Korean
- Russian
- Somali
- Ukrainian
- Vietnamese

(20)(1)  OVER

Case 3:18-cv-05516-RBL   Document 7-1   Filed 10/24/18   Page 20 of 198

# 17-2-00050-3

This document was produced in cooperation with the Emergency Management Division of the Washington State Military Department.

**Thorough cleaning of indoor sewage spills is necessary to protect people -- especially small children -- from harmful bacteria and viruses. Clean-up should begin as soon as possible to reduce the risk of exposure to sewage.**

## Clean up tips:

- Keep children and pets out of the area until clean-up has been completed.

- Wear rubber gloves and boots. Use eye protection.

- Wash your hands thoroughly and launder clothes separately after completing the clean-up.

- Remove all furniture, loose rugs, and so on from the area.

- Saturated wall-to-wall carpeting (and the pad) usually cannot be adequately cleaned. They should be removed, wrapped in plastic, and taken to a transfer station or sanitary landfill. If you decide to keep the carpeting, hire a licensed carpet cleaning company to steam clean and disinfect the carpet.

- All hard surfaces, such as linoleum, hardwood floors, concrete, wood moldings, wood, and metal furniture, and on should be thoroughly cleaned with hot water and a mild detergent (dish detergent), and then rinsed with a bleach solution by mixing one tablespoon of liquid household unscented bleach to one gallon of water. Let the surface air dry.

- Upholstered furniture, loose rugs, drapery, and so on should be professionally cleaned. Notify the cleaner of the problem.

- Remove and replace plaster, plasterboard, and lath that have been saturated and are soft to the touch. If the surface has been wetted, clean as you would a hard surface, but do not saturate the plaster.

- Clean sinks, dishwashers, and other plumbing fixtures that have had sewage back-up with detergent, and then rinse with the bleach solution.

Fires in the Home

Floods

Floods: Cleaning a Basement

Generator Use During a Power Outage

Germs: Prevent Their Spread

Hot Weather Safety

Home Emergency Preparedness

Hypothermia

Landslides and Mudflows

Medical Needs: Disaster Tips

Medication Distribution During an Emergency

Mobility Disabilities: Disaster Tips

Out-of-Area Contacts

Pandemic Flu

Pets and Emergencies

Pneumonic Plague

Poisoning

Power Outages

Psychological and Emotional Needs

Sewage Spills: Cleaning Them Up

Shelter in Place

Smallpox

Smartphone

② NEXT PAGE

II 17-2-00050-3    MC

Terrorism

Tsunamis

Tularemia

Turning Off the Utilities

Vehicle Preparedness

Viral Hemorrhagic Fevers

Visual Disabilities:
Disaster Tips

Volcanoes

Water Purification

Water Sources

Wildfires

Windstorms

Water Heaters (How to
secure them)

Floods

Get Ready

Power Outages

Publications

- Disinfect clean-up mops, brooms, and brushes with the
  bleach solution.

- Prevent mold growth and reduce odors by increasing air
  circulation – open all windows and doors. The use of fans
  and heaters may speed this process.

## You can clean undamaged canned food:

1. Remove labels

2. Wash with a scrub brush in a detergent solution (use
   washed cans as soon as possible because they will rust)

3. Rinse in clean water

4. Sanitize by:
   • Boiling for 10 minutes, (Do not boil cans of carbonated
   beverages), or
   • Immersing cans in bleach solution for 15 minutes

5. Re-label with marker or grease pencil

## Discard

- Sealed food items

- Home canned foods

- Food items packaged in paper or cardboard

- Unpackaged foods such as fruit, potatoes, squash

DOH Publication 821-015
Revised - September 2007
Reviewed annually

**Contact Us**

- Agency Contacts
- Locations and Directions
- General Information:
  ◦ Email
  ◦ 800-525-0127
  ◦ TTY Users dial 711

**Notices**

- Privacy Notice
- Copyright Statement
- Notice of Nondiscrimination

**Publications**

**Social Media**



Alternate Format Requests

For people with disabilities, Web
documents in other formats are available

③ OVER   ②1

Case 3:18-cv-05516-RBL   Document 7-1   Filed 10/24/18   Page 22 of 198

PooP

- **Access Washington** ☞
- **Contact our Web team**

- **Health Education Resource Exchange** ☞
- **Publication List**

on request. To submit a request, please contact: **Web Management Team**.

# 17-2-00050-3

④ NEXT PAGE

(A)       MC
                                      1-8-17

DEAR COURT CLERK,
        PLEASE GIVE A CASE NUMBER AND
RETURN TO ME AT: PAUL MARKS 321696 EB26L
COYOTE RIDGE CORR. CNT. 1301 N. EPHRATA AVE.
CONNELL, WA. ~~98~~ 99326


ALSO: I SENT TO THE PRESIDING JUDGE SOME
MATERIALS THAT MAY BE FLOTING AROUND THE
COURT HOUSE. COULD YOU PLEASE SEE IF YOU CAN
~~FEE~~ FIND THEM AND RETURN THEM ALSO


            THANK YOU

            Paul Marks

JAN 2 4 2016

Case No.  17-2-00050-3

No further documents were found.

22

THURS.10-26-16      Still at IMU  18th Retolation Sack
FRI -10-27-16 —      "    "    "   19TH  "         Sack
SAT -10-28-16        "    "    "   20th  "         Sack  Girl Am
SUN -10-29-16        "    "    "   21ST  "   7:00 PM & Dinner Didnt Eat Breakfast

TODAY SUNDAY 10-29-16 AT APROX I TOOK A BM AND
THE TOILET OVER FLOWED WITH FICAL WATER GOING ON THE FLOOR.
I NOTIFIED A PERSON AT THE OTHER END OF THE EMERGENCY
CALL BOX. A CO WANTED TO GIVE ME A PLUNGER AND TOWL
AND CLEAN IT UP. I TOLD HIM I WASN'T A PLUMBER
THE FICAL WATER TOUCHED MY SHOWER SHOES AND BLANKETS.
THEY (2) CO TOOK ME TO THE SHOWER AND HAD
           PORTERS COME CLEAN UP THE MESS. 2 CO'S WATCHED
NAMED MOSSES      + SHERMAN     . I WATCHED FROM THE
SHOWER. FROM WHAT I COULD SEE THE PORTERS MOPED
THE FLOOR WITH THE FEACLE WATER NEVER CHANGING THE
WATER NOR USING ANY DISINFECTANT. JUST WIPED THE
FLOOR USING THE DIRTY WATER. I WAS MOVED BACK INTO
THIS SAME CELL, THE FLOOR WAS STILL WET AND
AM BREATHING THE FECAL CONTAMANATED AIR. WHAT
ARE THE HELTH RISKS? I'm TOTALY FREEKED OUT BY THE
CONTAMANATION AND BREATHING THE AIR. THIS EVENT
WAS OBSERVED BY Rich LSE NURSE

MON-10-30-16     STILL IN IMU - NO END IN SIGHT NO | MOSSES  SHERMAN
22 ND          PROPER CLEANING OF FLOOR - BREAKFAST & LUNCH SURVED IN
Retolation     BAG EXPOSED TO FICAL AIR OR WHETEVER CONTAMANATION
               EXISTS KITED HEAD OF MEDICAL AND OR HEAD OF CONTAMANATION
1st KITE       DEPT IF THERE IS ONE. WONDER ABOUT NEXT VICTUM OF
FICAL          THIS CELL NOT KNOWING THAT SHIT WATER WAS ON FLOOR
               AND NOT CLEANED UP PROPERLY NOR SANITIZED.
               DINNER - GIVEN SACK ROTTEN BANANA EVERY MEAL ROTTEN
               BANANA KITE PERDUE KITCHEN MGR
               STILL AT IMU TAYLOR FOOD SERVER - NO SAC
FICAL 2 DAY    BRONS HILL EVE FOOD SERVER     PREA PERSON AND NOTICE SEE FLOOR
TUE 11-1-16                                   VIA MED KITE  9:45
23 RD Retolation

FICAL

(4)

**WED 11-2-15**
**24th Retal**
**Fical 3rd Day**

Still IMU Co Lady wont talk to me about yard or time of USP. Yust walk away saying I already talked to you about yard. Her name is _Roberts_ came Come here Mr Marks and get your food — Taylor lunch dinner still fed to me Fecil matter on floor. sent medical kite to superident also did Orequence Asked for New Hand Book Ask Mahoner RN. Said she tell Sgt.

**THUR 11-3-16**
**25th Retal**
**Fical 4th DAY**

Still in IMU — Condition same as of 6:30am at 7:00am told Sgt _Weld_ about Hand Book said he will give me one when He Gess it to me. 11:00 am Asked Again for Hand Book, None Given Given Hand Book at Approx 12:30pm- Read Cell Standards + Sanation 5 times makes no mintion of Catastrofe Events Nore does it Require inmates to deal with these type of Events ESP Against theirs will. That would be Slabery outlawed in the mid 1850's Yust Had A Con. with Co Ship I'm Responsable Sgt will be on duty this Susning then ran away Not Answering My question About who's to clean up mess Co Crane said Sgt will be around soon HA HA

**2:30**

Talked to McGiniss said He told Sgt that I wanted to talk to him +Ask Left Talked to Sgt Erickson said it was Done Right. I told Him to Provide Me with Proff. He said He would. I'll Give Him the Chance. A Few Days

**FICAL 5th DAY**

**Fri 11-4-16**
**26th Retaliation**

Still in IMU No End in Sight - Got Statements - So What.

**SAT 11-5-16**
**27th/Ret**

Still in IMU - Nothing Speicl Happened 6th Day Fical

**SUN 11-6-16**
**7th DAY FICAL**

Still in IMU No Lunch Co Ran Past my Door Not Giving Me A Chance to Get to Bean Hole - was standing Going Twords Door when they ran Past Co _Roberts_ Lady + Co Crow Food Servers 12:00 When Happened - Clock turned Back to 11:00 am (Been Couching is it Floor Related?) Asked Lady Co what her Name is She Said "You Already know My Name and walked Away

**MON 11-7-16**
**8 DAY FICAL**

Still At IMU No End in Sight - Yust Had A interstesing Exp. I went to A Meeting which was suppson to be About the Monkey Scene And low And Behold The Investagator was Schreiber

(5)     FICAL

SAT 11-12-16    COUGH 3:28 pm 15 SEC PAUSE 23 SEC BAD TAST LAST
10 DAYS FICAL    SEVERAL DAYS, THROT FICAL FLOOR? CHEST ACHS

* SEVERAL DAYS AGO A CURIOUS THING HAPPENED
COBROHILL WAS LOOKING IN MY ROOM. I WENT TO
THE DOOR AND SHE WAS STANDING TO THE SIDE. WHEN
I SAW HER SHE SEEMED SUPRISED. SHE ASKED ME
A DUMB QUESTION ABOUT WHAT SIZE SHIRT I WORE
I OPPENED MY JUMP SUIT SHE SAID 2X AND LEFT. MY
SHIRT HAS NO SIZE ON IT. IS THIS PART OF THE PREA?

SUN    11-13-16    STILL IMU SLEPT TILL OR SHOULD I SAY I LAYED THERE
11-DAYS FICAL    UNTILL 3:45   NO CAUGHING YET  SAME ROOM

MON 11-14-16 STILL IMU -12 DAYS FICAL FLOOR - SENT KITE
12 FICAL    LAST NIGHT. 1 TO RALIGHT 1 TO DR SMITH TRYING TO
GET NURSE AND ASKING IF POSSABLE TO ANSWER "YES"
WHEN HAVING SEAZURE. ITS 7:30 HAD A HEARING. THOMAS
AND OTHERS WERE THERE. SENT HER KITE. AT HEARING
SHE DENIED THE ACUZATIONS I MADE TO HER. ALSO
HAVE FORM CLAS HEAR NOTICE SAYS "I MAY SUBMITT A PUBLIC
DISCLOSER REQUEST TO OBTAIN A COPY OF THE RECORDS USED IN YOUR
CLASSIF PROCESS

TUE 11-15-16    STILL IMU 2 COUGH EPISODES YESTERDAY DIDN'T NOTE TIME
3 FICAL    TODAY OK SO FAR

WED 11-16-16    STILL IMU WENT TO LOOK AT MEDICAL RECORDS  TO COLD
4 FICAL.    ALSO HAD ANOTHER MEETING WITH WHO ELSE SCHISRIBER
ABOUT SOMETHING. DIDN'T SAY WHAT IT WAS. I CHALLEN HIM
LIER ECT ABOUT YES STATEMENT

THU 11-17-16 STILL IMU SAC LOUGH WAITING FOR MAIL NOVE
15 FICAL    30 DAYS IMU

(4)

| | |
|---|---|
| **MON 21 DAYS** HOLE<br>11-7-16 CONT. | WE HAD A SHOUTING MATCH ABOUT THE YES STATEMENT ON THE INFRACTION REPORT AND HE DENIED EVERYTHING AND LEFT THE ROOM. A SGT THORNHILL SAID HE KNEW HIM FOR YEARS THAT HE WAS A LIER AND COULD'NT BE TRUSTED PROBABLY A JOKE ON ME. |
| **HEALTH DEPT. 9 DAYS 8 M**<br>9 DAY FICAL? | 11-8-16 12:30 AM CANT SLEEP ITS 22 DAYS HOLE VERY UP SET ABOUT YESTERDAYS EVENT WITH SCHRIBER UP HILL BATTLE NEVER GIVE UP |
| **TUE 11-8-16.**<br>10 DAY FICAL | STILL IN IMU HAVE HAD SOME COUGHING SPELLS AND TIGHTING OF CHEST IS IT RELATED TO FICAL FLOOR? ITS BEEN <u>10 DAYS</u> SINCE OVER FLOW MAIN LINE 10 45? |
| **WED 11-9-16**<br>11 DAY FICAL<br>~~THUR 11-10-16~~ | STILL IN IMU JUST WAS NOTIFIED OF HEARING. KANGAROO COURT THAT IS. HAD HEARING - DISMISSED PEE INFRACTION GUILTY OF "YES" SERVED PAPER CLOSED CUSTODY |
| **THURS 11-10-16**<br>12 th DAY FICAL | ~~SERVED~~ DID APPEAL STILL IMU GOING TO CLOSED CUSTODY? DID KITE TO L'HEAUX RECONSIDER KITE TO DR SMITH. |
| **FRI 11-11-16**<br>13 th DAY FICAL | NO MAIL RETURNED KITE DR SMITH KITE L'HEAUX YET ITS ONLY 12:00 TODAY IS THE 13 DAY LIVING IN THIS CONTAMINATED CELL FOR THE PAST SEVERAL DAYS I HAVE BEEN COUGHING AND CHEST PAIN. TIGHTING TYPE CHEST PAIN. NO PROOF OF PROPER CLEANING FROM 13 DAYS AGO NOTHING FROM SGT EIRKSOL AS HE PROMISED. HIS PROMIS WAS ON 11-3-16 GAVE HIM PLENTY OF TIME. WILL DOC EATIME I HAVE COUGHIIG SPELL. ITS HAPPENED SEVERAL TIMES IN PAST FEW DAYS BUT NOW I WILL DOC EXACT TIME AND # OF MIN. I COUGH SO FAR 12:08 PM 1 MIN 45 SEC. TIMED CLOCK AND 3:30 + 1 MIN 10 ~~##~~ SEC POD CLOCK |
| **SAT 11-12-16** | STILL IMU DID APPEAL ADD EM   COUGH 8:25 ½ MIN<br>AM |

FICAL

| | |
|---|---|
| FRI-11-18-16 | 16 DAYS FICAL LATER TOLD I'M MOVING COOBRNE FOR SHOES GOT MAC 142 USC § 1983 — NOT WHAT I WANTED DATE ON KITE IS 11-15-16 ASKED FOR STATE ALSO GIVEN TORT PKG. WROTE LETTER TO PRESIDING JUDG MONTESANO GRAYS COURT HOUSE DID NOT GET LETTER RETURNED SO NOW WHAT. NOT FILLING 1983 2 REASONS 1-$350 2. PROBABLY FILE STATE COURT. CHECK WITH ATT FOR PROPER COURT. GOT PUB DISC INTRESTING |
| SAT 11-19-16 | SAME OLD SAME OLD |
| SUN 11-20-16 | " " " " SAW NURSE + TOLD GOT SHE IS NURSE MALONE |
| 18 DAYS FICAL | TRYING TO TALK TO HER. IT'S LUNCH SHE WOULDN'T TALK TO ME. WALKED AWAY B LAMED DR SMITH WHO UPDATED HSR 2 WEEKS AGO |
| 11-21-16 | LEFT IMU GOING TO SHELTON DONE WITH LOG |

Mouth   m C

3-4-17

FROM:   PAUL MARKS 321696 E B 26 L

CRCC

1301 N. EPHRATA AVE

CONNELL, WA.  ~~98~~ 99326

TO:   GRAYS ~~County~~ HARBOUR County CLERK

162 W. BROADWAY ROOM 203

MONTESANO, WA 98563

DEAR COURT CLERK,

        ENCLOSED YOU WILL FIND A SUMMONS, COMPLAINT

AND PRAYER FOR CASE # 17-2-503.

        PLEASE CHECK TO SEE IF I DID EVERY THING

RIGHT AND RETURN TO ME FOR SERVICE

THANK YOU

Paul Marks

SUPERIOR COURT OF WASHINGTON FOR <u>GRAYS HARBOR</u>   COUNTY

PAUL MARKS )
Plaintiff, )
v. )   No: 17-2-50-3
DEPT OF CORR - C.O. JURESON )   DEFAULT JUDGEMENT MOTION
Defendant. )   AND PLEADING

COMES NOW THE PLAINTIFF AND MOVES THE COURT FOR A DEFAULT JUDGEMENT FOR THE FOLLOWING REASONS: 1. DEFENDANTS WERE SERVED A COPY OF THE SUMMONS VIA SUBSTATE SERVICE ON 5-4-17. ALSO WITH THE SUMMONS THE COMPLAINT WAS ALSO SERVED. 2. MORE THAN 30 DAYS HAS ELAPSED AND NO ANSWER HAS BEEN FILE WITHIN THE 30 DAYS. AS A MATTER OF FACT, 80 DAYS PLUSE HAS ELAPSED SINCE SERVICE. PLAINTIFF HAS GIVEN THE DEFENDANTS MORE THEN ENOUGH TIME TO ANSWER THE SUMMONS AND COMPLAINT.

THE SUMMONS AND COMPLAINT WAS FILED IN THE GRAYS HARBOR COUNTY COURT TO ESTABLISH VENUE

*mouth*

*mC*

FILED
GRAYS HARBOR COUNTY
C. BROWN, CLERK

2017 JAN 24  PM 1:25

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

IN AND FOR _GRAYS HARBOUR_ COUNTY

| | |
|---|---|
| PAUL MARKS<br><br>Plaintiff,<br><br>v.<br><br>DEPT. OF. CORR. + C.O JURESON<br><br><br>Defendants. | Case No.: _17-2-50-3_<br><br><br>SUMMONS [20 Days] |

**TO THE DEFENDANT:**    A lawsuit has been started against you in the above-entitled court by _PAUL MARKS_, plaintiff. Plaintiff's claim is stated in the complaint, a copy of which is served upon you with this summons.

In order to defend against this lawsuit, you must respond to the complaint by stating your defense in writing, and by serving a copy upon the person signing this summons within 20 days after the service of this summons, excluding the day of service, or a default judgment may be entered against you without notice. A default judgment is one where the plaintiff is entitled to what he asks for because you have not responded. If you serve a notice of appearance on the undersigned person, you are entitled to notice before a default judgment may be entered.

*SCH - SUMMONS - PAGE 1 OF 3*         3    ①

*MOUTH*   *MC*

You may demand that the plaintiff file this lawsuit with the court. If you do so, the demand must be in writing and must be served upon the person signing this summons. Within 14 days after you serve the demand, the plaintiff must file this lawsuit with the court, or the service on you of this summons and complaint will be void.

If you wish to seek the advice of an attorney in this matter, you should do so promptly so that your written response, if any, may be served on time.

This summons is pursuant to rule 4 of the Superior Court Civil Rules of the State of Washington.

Signed on this __8th__ day of __YAN. 2017__, ~~2016~~

_____
Signature

__PAUL MARKS__   __321696__
Printed Name          DOC#

~~STAFFORD CREEK CORRECTIONS CENTER~~
~~191 CONSTANTINE WY~~
~~ABERDEEN WA 98520~~

COYOTE RIDGE CORRECTION CENTER
1301 N. EPHRATA AVE.
CONNELL, WA 99326

(2)

MOUTH   ML

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR GRAYS HARBOUR COUNTY

FILED
GRAYS HARBOR COUNTY
C. BROWN, CLERK
2017 JAN 24  PM 1:25

PAUL MARKS

Plaintiff,

V.

DEPT OF CORR. & C.O. JURESON

DEFENDANTS

CASE # 17-2-50 3

JURISDICTION
COMPLAINT
PRAYER

AT ALL MATERIAL TIMES, STAFFORD CREEK CORRECTION CENTER WAS LOCATED IN GRAYS HARBOUR COUNTY.

AT ALL MATERIAL TIMES CORRECTIONS OFFICER JURESON WAS EMPLOYED AT STAFFORD CR. COR. CNT. BY THE DEPT. OF CORR.

COMPLAINT: SEE ATTACHMENT (PLAINTIFFS ALLEGATION)

PLAINTIFF PRAYS FOR THE FOLLOWING:

1. $6,300 FOR PAIN AND SUFFERING

2. ATTORNEY FEES TO BE SET BY THE COURT

3. ANY OTHER ORDER THE COURT DEEMS JUST

DATED THIS 8th DAY OF JAN. 2017

Paul Marks  321696 EB 36L

PAUL MARKS

4

③

*mouth*        *ML*

# I.

## STATEMENT OF CLAIM ATTACHMENT

On Dec 22,2014, while at lunch,(approx 12:00 PM), I was the last person in the chow hall.

Upon leaving, a Correction Officer(hereafter C/O) Jureson(SP?) was holding the door open. As I was exiting the chow hall,C/O Jureson(SP?) attempted to get the attention of another C/O by flaying his arms and in doing so, Smashed me in the mouth, I was knocked off balance and nearly fell to the ground from the force.

C/O Jureson looked at the injury to my mouth, said I was "OK" and sent me back to my housing unit and I returned to my unit, laid on my bunk, wherin my mouth immediatly began to swell and throb.

I reported the injury to C/O Snorr(SP?), wherein he called C/O Burlay(SP?) and I was escourted to the medical infirmary and was examined by P.A. LIGHT, who looked at the injury to my mouth and said "There is nothing I can do for you, You just have to live with it".... I asked for some pain relief, such as Tylenol 3, but was told that they didnt give tylenol w/ codine for pain.

After 4 or 5 days, the pain and swelling subsided, during this time the pain and swelling made it difficult to eat or sleep.

I make this Statement/Declaration under penalty of perjury under the laws of the State of Washington and swear that the foregoing is true and correct.

dated this 13th day of September, 2016

*Paul Marks* 321696 EB 2

Paul MARKS

(4)

PAGE 2

MOUTH
MC



STATE OF WASHINGTON
**DEPARTMENT OF CORRECTIONS**
P. O. Box 41129 • Olympia, Washington 98504-1129 • Tel (360) 725-8223
FAX (360) 664-4056

R 2012
2022

EXH

Confidential
Offender Copy

July 12, 2016

Marks, Paul; DOC# 321696
Stafford Creek Corrections Center
H3020L

Mr. Marks:

I am responding to your appeal of grievance log ID 16611101 dated 06/06/16. The grievance coordinator did not accept your complaint because it was past timelines to file. I concur with that determination.

A review of your grievance history indicates that you did not file a complaint during December 2014 through May 2015 alleging this issue.

According to Page 24 of the Offender Grievance Program Manual, you have twenty (20) working days from the date of the incident to submit a complaint. You are past that timeframe.

Sincerely,

Dale N. Caldwell
Grievance Program Manager

CC:   Kerri McTarsney, SCCC Grievance Coordinator
      Grievance Log ID 16611101

SENT LEGAL MAIL
9-21-16

# STANDARD TORT CLAIM FORM
General Liability Claim Form #SF 210

Pursuant to Chapter 4.92 RCW, this form is for filing a tort claim
against the state of Washington.  Some of the information requested
on this form is required by RCW 4.92.100 and may be subject to public
disclosure.  Pursuant to the law, Standard Tort Claim forms cannot be
submitted electronically (via email or fax).

For Official Use Only

**PLEASE TYPE OR PRINT CLEARLY IN INK**

Mail or deliver          Department of Enterprise Services
original claim to        Risk Management Division
                         1500 Jefferson Street SE
                         MS 41466
                         Olympia, Washington  98504-1466

Business Hours: Monday – Friday 8:00 a.m. – 5:00 p.m.
Closed on weekends and official state holidays.

1.  Claimant's name: MARKS      PAUL      DAVID
                     Last name          First   Middle      Date of birth (mm/dd/yyyy)

2.  Inmate DOC number (if applicable): 321696

3.  Current residential address: 191 CONSTANTINE WAY, ABERDEEN, WA.

4.  Mailing address (if different): SAME

5.  Residential address at the time of the incident: SAME
    (if different from current address)

6.  Claimant's daytime telephone number: N/A          N/A
                                        Home         Business or Cell

7.  Claimant's e-mail address: N/A

8.  Date of the incident: 12-22-14 Time: 1200 ☒a.m. ☒p.m. (check one)
                         (mm/dd/yyyy)

9.  If the incident occurred over a period of time, date of first and last occurrences:

    from N/A                Time: N/A        ☐a.m. ☐p.m.
        (mm/dd/yyyy)             (mm/dd/yyyy)

    to N/A                  Time: N/A        ☐a.m. ☐p.m.
        (mm/dd/yyyy)             (mm/dd/yyyy)

10. Location of incident: WA.        ABERDEEN    STAFFORD CREEK
                         State and county   City, if applicable   Place where occurred
                                                                  CORRECTION CNTER

11. If the incident occurred on a street or highway:

_N/A_

| Name of street or highway | Milepost number | At the intersection with or nearest intersecting street |

12. State agency or department alleged responsible for damage/injury:

WA. DEPT. OF CORRECTION

13. Names, addresses and telephone numbers of all persons involved in or witness to this incident:

CORRECTION OFFICER JURERSTIN SP?
       "      " C/o FLEMING  UNKNOWN  OTHERS
WORK: STAFFORD CREEK CORRECTION CENTER
C.O. BURLAY ESC. to MEDICAL

14. Names, addresses and telephone numbers of all state employees having knowledge about this incident:

SAME AS ABOVE

15. Names, addresses and telephone numbers of all individuals not already identified in #13 and #14 above that have knowledge regarding the liability issues involved in this incident, or knowledge of the Claimant's resulting damages. Please include a brief description as to the nature and extent of each person's knowledge. Attach additional sheets if necessary.

P.A. LIGHT, STAFFORD CREEK CORRECTION CENTER
SEE MEDICAL RECORDS

16. Describe the cause of the injury or damages. Explain the extent of property loss or medical, physical or mental injuries. Attach additional sheets if necessary.

SEE ATTACHMENT →

17. Has this incident been reported to law enforcement, safety or security personnel? If so, when and to whom? Please attach a copy of the report or contact information. *YES*

DAY ROOM CORRECTIONS OFFICER (UNKNOWN) Snorr
P.A. LIGHT

18. Names, addresses and telephone numbers of treating medical providers. Attach copies of all medical reports and billings. P.A. LIGHT, STAFFORD CREEK
CORRECTION CENTER. 191 CONSTALTINE WAY,
ABERDEEN, WA. 98520

19. Please attach documents which support the allegations of the claim.

20. I claim damages from the state of Washington in the sum of $ 6,300.00

This Claim form must be signed by the Claimant, a person holding a written power of attorney from the Claimant, by the attorney in fact for the Claimant, by an attorney admitted to practice in Washington State on the Claimant's behalf, or by a court-approved guardian or guardian ad litem on behalf of the Claimant.

I declare under penalty of perjury under the laws of the state of Washington that the foregoing is true and correct.

_____
Signature of Claimant

x 9-13-16
_____
Date and place (residential address, city and county)
SCCC
191 CONSTANTINE WAY
ABERDEEN WA 98520   GRAYS HARBOR CO.

Or

N/A
_____
Signature of Representative

N/A
_____
Date and place (residential address, city and county)

N/A
_____
Print Name of Representative

N/A
_____
Bar Number (if applicable)

## Authorization for Release of Protected Health Information (PHI)
## to
### Department of Enterprise Services, Office of Risk Management

Name: *MARKS, PAUL, DAVID*
(Last, First, Middle Initial or Middle Name)

Date of Birth: Month ____ Day ____ Year *45*

I hereby authorize disclosure of my protected health information to the Department of Enterprise Services, Office of Risk Management (Risk Management) for purposes of processing my claim for damages filed with the state of Washington.

I understand that by signing this document, I authorize the release of the following information:

Complete medical record for all services, including history and physical exam; progress notes; x-ray reports; inpatient admissions; operative notes; physical or other therapy; laboratory and other test reports; physician and physician assistant orders; nursing notes; and all other records and references designated by the provider as part of its medical record.

HIV Test Results and medical information related to HIV testing or treatment

Psychiatric, mental and behavioral health records, including treatment notes, assessments, testing documents and results, and medical records related to mental health diagnosis and treatment

Alcohol assessment, testing, referral or treatment records

All other chemical dependency assessment of treatment records

Pharmacy prescriptions and reports

All letters and memos received or sent, including electronic mail, referencing my treatment, compliance with treatment and any other subject related to my medical treatment

Information related to alleged sexual assault or sexually transmitted disease, including test results

Urgent care, outpatient or other clinic visit information

Gynecological and/or obstetrical information

All client records generated for or by governmental programs of which I am a client. Identify the program(s) and agency: ____ *DOC MEDICAL* ____.

Financial records related to my care and treatment

1

I understand the following:  (PLEASE READ AND INITIAL ALL STATEMENTS)

*[initials]* I understand that my records are protected under HIPAA/PHI regulations (federal law) and the Washington State Health Care Information Act (RCW 70.02).

Initials

*[initials]* I understand that my health information may be subject to re-disclosure by Risk Management and not protected for purposes of evaluating and investigating the claim I have filed with the state of Washington.

Initials

*[initials]* I understand that the specific information to be disclosed in my medical record may include information regarding alcohol, drug or other controlled substance use, counseling referrals and/or a history of testing or treatment of acquired immune deficiency syndrome.

Initials

*[initials]* I understand that I may revoke this authorization at any time by notifying Risk Management in writing, and that the revocation will be effective as of the date Risk Management receives it.  Any records obtained pursuant to this Authorization for Release of PHI prior to the revocation will be deemed authorized by me for release.

Initials

*[initials]* I understand that this Authorization for Release will expire 90 days from the date I sign it.  I can also authorize a different time frame for this release to be valid.  This permission is valid until my claim is resolved or closed by RMD.

Initials

*A Photostat of this Authorization carries the same authority as the original for purposes of releasing my records to Risk Management.*

Signature of Authorizing Individual:

*[signature] Paul D Marks*

Date of Signature:  X 9-13-16

Telephone number:  N/A

Witness (where patient is over 13 and signing the release):

_____

Where the signer is not the subject of the records:  N/A

I am authorized to sign this because I am the (attach proof of authority):

☐ Parent of minor
☐ Legal Guardian
☐ Personal Representative
☐ Other

## To the Provider or Records Custodian:

Please send legible copies of all records to:

Department of Enterprise Services
Office of Risk Management
1500 Jefferson Street SE
MS 41466
Olympia, WA  98504-1466

2

## MMSEA REPORTING COMPLIANCE DECLARATION

The Centers for Medicare & Medicaid Services (CMS) is the federal agency that oversees the Medicare program. Many Medicare beneficiaries have other insurance in addition to their Medicare benefits. Sometimes, Medicare is supposed to pay after the other insurance. However, if certain other insurance delays payment, Medicare may make a "conditional payment" so as not to inconvenience the beneficiary and recover after the insurance pays.

Section 111 of the Medicare, Medicaid and SCHIP Extension Act of 2007 (MMSEA), a federal law that became effective January 1, 2009, requires that liability insurers (including self-insurers like the state of Washington), no-fault insurers, and workers' compensation plans report specific information about Medicare beneficiaries who have other insurance coverage. This reporting is to assist CMS and other insurance plans to properly coordinate payment of benefits among plans so that your claims are paid promptly and correctly. Please answer the questions below so that we may comply with this law.

Please review this picture of the Medicare card to determine if you have, or have ever had, a similar Medicare card.



### Section I

| Are you presently, or have you ever been enrolled in Medicare Part A or Part B? UNKNOWN | | Yes | No |
|---|---|---|---|
| If yes, please complete the following. If no, proceed to Section II. | | | |
| Full Name: (Please print the name exactly as it appears on the SSN or Medicare card if available) PAUL DAVID MARKS | | | |
| Medicare Claim Number: | Date of Birth(Mo/Day/Year) | | |
| Social Security Number: (If Medicare Claim Number is Unavailable) | 1 1 4 7 4 5 | Sex Female | Male XX |

### Section II

I understand that the information requested is to assist the requesting insurance arrangement to accurately coordinate benefits with Medicare and to meet its mandatory reporting obligations under Medicare law.

PAUL DAVID MARKS
_____
Claimant Name (Please Print)                    Claim Number

N/A
_____
Name of Person Completing This Form If Claimant is Unable (Please Print)

Paul D Marks                          9-13-16
_____
Signature of Person Completing This Form        Date

*If you have completed Sections I and II above, stop here. If you are refusing to provide the information requested in Sections I and II, proceed to Section III.*

### Section III   N/A                    N/A
_____
Claimant Name (Please Print)                    Claim Number

For the reason(s) listed below, I have not provided the information requested. I understand that if I am a Medicare beneficiary and I do not provide the requested information, I may be violating obligations as a beneficiary to assist Medicare in coordinating benefits to pay my claims correctly and promptly.

**Reason(s) for Refusal to Provide Requested Information:**

N/A
_____

_____

N/A                                   N/A
_____
Signature of Person Completing This Form        Date



**STATE OF WASHINGTON**
DEPARTMENT OF ENTERPRISE SERVICES – OFFICE OF RISK MANAGEMENT
*1500 Jefferson Street PO Box 41466, Olympia, Washington 98504-1466*
*(360) 407-9199    www.des.wa.gov*

September 30, 2016


Paul Marks 321696
Stafford Creek Corrections Center
191 Constantine Way
Aberdeen, WA. 98520


RE: Tort Claim # 31083124

Dear Mr. Marks:

The Department of Enterprise Services, Office of Risk Management, has reviewed the
tort claim filed against the state of Washington on November 30, 2015.

Washington State maintains a public liability fund for payment of tort claims only after
there has been a finding of tortious conduct. A tort is committed when the state was
under a legal duty to act in a particular fashion, breaches that duty, and you are injured or
undergo a loss as a direct result of the state's breach.

A review of the medical records you provided indicates that you were not injured.

Our review does not support a finding upon which to base any payment, as required
under Chapter 4.92 RCW. Your tort claim against the state of Washington is respectfully
declined.

Sincerely,

Department of Enterprise Services – Office of Risk Management

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | ALLERGIES |
|---|---|---|---|---|
| 12-22-14 | 1045 | SCCC | H5 | KNT NKDA |

☐ Risks/benefits of recommended intervention explained; patient consents    PLAN / RX (Dx required for medication orders)

Brought to medical by custody. Not sickcall.

Vital Signs: BP 154/104 P 76 R 18 T 98.1 O2-Sat 97% Wt. 9

One Chief Complaint: Pt states got hit in the

Referred to Provider today - Yes X No ___ mouth coming out

Deferred to PCP for F/U - Yes ___ No ___ Provider Notified - Yes ___ No ___ of main line this am.

Triage Nurses Name K Lockett (Stamp) K. Lockett PA   States on

(D)side lower

lip. Denies pain or bleeding to lip, (no marks, bruises)
or open areas noted to inside or outside of mouth.
Pt states just numby feeling, also has "migraine" from
it. Refer to provider K. Lockett PA

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | ALLERGIES |

☐ Risks/benefits of recommended intervention explained; patient consents    PLAN / RX (Dx required for medication orders)

(S) SUBJECTIVE STORY OF BEING
STRUCK BY SOMEONE THIS
AM, DID NOT LOSE CONSCIOUSNESS.      - 400 PO IBU x 1
HE BEGAN DEVELOP A                    NOW
HA AFTER THAT WHICH                    - 975 mg PO
IS SIMILAR TO PREVIOUS                APAP x 1 NOW
HAS.
(O) VS AS ABOVE
HEENT - PERRL NO MALOCCUSSION,
NO DENTAL TRAUMA SEEN.
NO CREPITUS T MANDIBULAR/

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | ALLERGIES |
TMJ MOVEMENT. NO FACIAL
☐ Risks/benefits of recommended intervention explained; patient consents    PLAN / RX (Dx required for medication orders)

EDEMA, HEMATOMA, ECCHYMOSIS,
WOUND, OR PAIN TO FACE.
NO C-SPINE PAIN OR TENDERNESS
FULL NECK ROM NOTED
CHEST - CTA (B)
CV - RRR
ABD - NON TENDER

* CONTINUED NEXT PAGE

S. LIGHT, PA-C

State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

 Department of Corrections   DOC 410.430  DOC 420.250  DOC 490.850  DOC 610.010
DOC 610.025  DOC 610.040  DOC 610.600  DOC 610.650   **PRIMARY ENCOUNTER REPORT**

MARKS, PAUL 321696

MARKS, PAUL
321696

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | ALLERGIES | |
|---|---|---|---|---|---|
| 12-22-14 | 1045 | SCCC | HS | NKDA | |

☐ Risks/benefits of recommended intervention explained; patient consents | PLAN / RX (Dx required for medication orders)

✱ CONTINUED FROM PREVIOUS

NEURO — CN 2-12 INTACT AS TESTED
NORMAL CEREBELLAR FUNCTION
AS TESTED. NORMAL MENTATION,
A+O x 4. NORMAL GAIT.

(A/P) ① HEADACHE — APAP + IBU. HE
REPEATEDLY REQUESTS NARCOTIC
PAIN MEDICATION + THIS
WAS DISCUSSED

---

MARKS, PAUL

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | ALLERGIES | |
|---|---|---|---|---|---|
| | 2 | POSSIBLE | | BLOW TO THE FACE - IT | |

☐ Risks/benefits of recommended intervention explained; patient consents | PLAN / RX (Dx required for medication orders)

SEEMS THAT THIS WAS LIKELY
VERY MINOR + MOST LIKELY
AN ACCIDENT — CUSTODY
IS LOOKING INTO THIS. NO
APPARENT INJURY.

S. LIGHT, PA-C

---

MARKS, PAUL
321696

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | ALLERGIES | |
|---|---|---|---|---|---|
| 12/22/14 | 1915 | SCCC | HS | NKDA | |

☐ Risks/benefits of recommended intervention explained; patient consents | PLAN / RX (Dx required for medication orders)

To medical for Drug Δ, ∴ migraine    T/O Figueroa
HA, provider notified — W. Judge PA-2

Toradol 60 mg
IM Now
(RN)

SCANNED

L. Figueroa PA-C

---

State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

Department of Corrections   DOC 410.430   DOC 420.250   DOC 490.850   DOC 610.010
DOC 610.025   DOC 610.040   DOC 610.600   DOC 610.650

**PRIMARY ENCOUNTER REPORT**

TERMS

FILED
LODGED
RECEIVED

JUN 22 2018

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
DEPUTY

SCCC - STAFFORD CREEK CORRECTION CENTER

H - HOUSEING UNIT 1-6

DOC - DEPT. OF CORRECTION

C/O - CORRECTION OFFICER

MINOR INFRACTION - MINOR RULE VIOLATION

MAJOR INFRACTION - SERIOUS RULE VIOLATION

STAND FOR SEARCH - STAND WITH ARMS OUT AND LEGS
                        APART

"F" UNIT - SEGRAGATION

IMU - INMATE MANAGEMENT UNIT/HOLE "F" UNIT

P.A - PHYSICIANS ASSISTANT


"G" UNIT - ELECT. DOORS, TOILET IN ROOM NEXT TO BED

WHN - WHAT HAPPENED NEXT

KOP - KEEP ON PERSON (PILLS)

APPEAL- INFRACTION REPORT (ZACKFINN)

HSR - HEALTH SERVICE REPORT

✻ CORRECTIONS / ALTERATIONS / CLARIFICATIONS

✻ ⑫  I ALL READY HAD A ANURISM ON MY AORTA.
THE KNEED TO THE STOMACH COULD HAVE RESULTED
IN THE ANURISM RUPTUREING CAUSING MY DEATH
IN TWO - THREE MINUTES.

✻ ⑲  NOT 30 MINUTES BUT "ABOUT A FEW MINUTES"

✻ ㉙ ㉚  I CALL THIS "THE MONKEY INCIDENT"  CO FLEMING
AND CO BRUSKY

✻ ⑫  DR. ~~FR~~ DID SURGERY LATER
        DEITZ

✻ ㊽  SEE GREIVANCE ATTACHMENTS PREA

✻ ㊾  NO INVESTIGATION OR PUNISHMENT THAT I KNOW OF

✻✻✻  ~~SHOULD BE BEFOR I WENT TO SICK CALL~~  ?

Ⓢ  NO CLAIM FILED YET

# 1ST EVENT
# +
# MEDICAL REPORTS

### IN THE BEGINNING

I was housed in the "H-4" Unit for approxamatly a year____to___

**(A) WHAT HAPPENED NEXT.**

At some point in time, a prisoner, Ron Blood approached me to be
his roommate, because his roommate was leaving...
Mr. Blood is purported to be somewhat of a "JAILHOUSE LAWYER" &
at that time I was working on my criminal case and Mr. Blood was
assisting me with the case.(Mr Blood had access to my J&S).

**(B) WHAT HAPPENED NEXT:**

AFTER SEVERAL WEEKS, Mr Blood and I were no longer getting along,
perhaps because I did not agree to pay him for his services or
perhaps because of the nature of my crime, now known to him.

**(C) WHAT HAPPENED NEXT:**

Mr. Blood ingratiated himself to C/O FINN(who at that time was a
"pod" officer) Mr. Blood convinced then C/O FINN to assist Mr.
Blood to get rid of me.(presumably by revealing my crime to FINN).

**(D) WHAT HAPPENED NEXT:**

C/O FINN began a capaign to get me gone, by writing me up 3 minor
infractions in 2 days for being under my blankets during count.
(Note: until then, It was acceptable to be in bed at count)
These 3 minors got me moved to "H-5".

H5↓ **(E) WHAT HAPPENED NEXT:  — H5**

I WAs assigned to a single man cell, after a few days, a prisoner
who was just comming out of the "hole" (IMU)into the cell.this new
roommate(possible last name of "VADER")introduced himself as "WALKER"
and began to explain his name came from the fact he "walked" every-
where. and that he had once walked from Kelso Wa to Eugene OR and
back "just to do it". I immediatly thought to myself that this fellow
is "not all there".

**(F) WHAT HAPPENED NEXT:**

In the first few days "Walker" bragged that he was in the "hole"
for fighting. During the next few weeks he became stranger and
stranger, and we didn't speak to one another.

**(G) WHAT HAPPENED NEXT:+**

On Jan 22, 2015 we had a cell inspection, After the cell inspection,
"WALKER" came charging into the room and blamed me for the cell
search and inspection.

**(H) WHAT HAPPENED NEXT:**

"WALKER" yelled at me and said "if I get rolled up I will beat
you down until you are dead, cuz I have nothing to lose"
( I had no idea what he meant by "nothing to lose")

-1-

**WHAT HAPPENED NEXT:**

We almost came to blows in the cell, I maintained my composure and said nothing to provoke him further, no physical fight occured. He left the cell, bent out of shape and slammed the door.

**WHAT HAPPENED NEXT:**

AFTER HE LEFT THE ROOM, I put on my shoes and went to the "POD" officer (Jane Doe)and told her what happened. I didn't want to fight and didn't want the drama and because I was concerned about the threat to kill me.(I was 68 and he was 25-30)
On the way to the pod officers station, "WALKER" tried to block me, I side stepped him, He yelled "ARE YOU GOING TO TELL" at the same time I was telling the pod officer what happened.

**WHAT HAPPENED NEXT:**

"WALKER" then turned to everyone in the dayroom and yelled....
"I TOLD YOU SO, HE IS A RAT"... and so everyone in the dayroom was focused on the drama unfolding in front of their eyes.

**WHAT HAPPENED NEXT:**

After he yelled "HE"S A RAT", He attacked me, we went to the ground,(cement floor)while on the ground, he hit me with alot of force in the ribs, wherein I suffered injury to me ribs.
I did not fight back,only tried to protect myself by covering up. This event/attack lasted about one minute.

**WHAT HAPPENED NEXT:**

THE C/O SPRAYED HIM("WALKER) with C/S or whatever chemical and He (WALKER) stopped assaulting me. This event was in view of camera and I assert that there is a video record of this event.

**WHAT HAPPENED NEXT:**

WE both were taken to the "hole" (IMU), I was not taken to medical to see or document injurys(contrary to policy) I was in the hole for 2 days and sent to a new housing unit(H-3) because it was determined that I did nothing wrong. While in the "hole", I made 2 attempts to get medical attention for the pain and diffuculty breathing. No medical aid was provided, I couldnt sleep , I couldnt even get an aspirin... this is clear diliberate indifference.

**WHAT HAPPENED NEXT:**

ON 1-29-15, I finally was scheduled for "sick call" and was seen by P.A. LIGHT who told me I should have called a "MEDICAL EMERGENCY" I told him that my requests for this were ignored.

**WHAT HAPPENED NEXT:**

P.A. LIGHT examined me. noted the bruise on my left rib cage, scheduled an X-ray for Mon 2nd of Feb, the date for X-ray tech.. to be at the prison.

-2-

(Q) **WHAT HAPPENED NEXT:**

On Feb 3, 2015, the X-rays came back with clear evidence of 2 broken ribs(note, I was undiagnosed with the broken ribs since injury on Jan 22 2015. some 12 days w/o pain managment or TX)←?

(R) **WHAT HAPPENED NEXT:**

for the next 3 months, I couldn't breath or sneeze or caugh w/o enduring extreem pain, it took 90 days or so for my ribs to heal.

* (S) **WHAT HAPPENED NEXT:**

↑
END Ribs

This tort claim follows the deliberate indifference of staff, for the denial of medical care...
Also for the failure of staff to take me to medical after an altercation contrary to established policy and proceedure.

NEXT 3 PAGES IS HOW I KNEW ZACK FINN

NEXT PAGES BROKEN RIBS

ZACK FINN / ① ①

6-3-14

TO WHOM IT MAY CONCERN,

ON 6-3-14 I WAS MADE AWAIR OF A
APPAL I FILED ON 5-29-14 THAT WAS BASED
ON FALSE INFORMATION ON MY PART.

I WENT TO A HEARING ON 5-28-14. I
THOUGHT THE ALLEGED INFRACTION WAS AT 3:50 AM
AND MADE STATEMENTS THAT I THOUGHT WERE TRUE
AT THE TIME. I NOW RELIZE THE ALLEGED INFRACTION
TOOK PLACE AT 3:50 P.M. AND THE CO WAS IN FACT
ZACK FENN THE CO WHO WORKS THE 2:00 - 10:00 PM
SHIFT.

PLEASE DISREGARD MY APPEAL OF 5-29-14.
AS I WAS CONFUSED ABOUT THE TIME OF THE ALLEDGED
INFRACTION AND WHO ZACK FENN WAS.

1ST, I DON'T KNOW WHO ZACK FENN IS EXCEPT
HE WORKS THE HU ASIDE ON A TIME TO TIME BASIS.
I HAVE NEVER HAD A CONVERSATION WITH HIM EXCEPT
STVERAL MONTHS AGO TO BORROW A PEN TO SIGN UP
FOR KOP. I STAY IN MY ROOM 100% OF THE TIME
EXCEPT WHEN I GO EAT, SHOWER OR USE THE REST ROOM.
THIS IS WHY I DO NOT KNOW THE NAMES OF THE CO'S
AS I NEVER INTERACT WITH THEM. I STAY OUT OF
SIGHT AND MIND MY OWN BUSSINESS.

2ND FOR THE LAST 5 YEARS 8 MONTHS I HAVE
BEEN ASLEEP DURING THE 4:00 PM COUNT 3 TIMES.
ON 5-26-14 I WAS NOT SLEEPING. I WAS LAYING
ON MY BED. NO ONE KNOCKED ON MY DOOR

OVER



OR TOLD ME TO MOVE FOR COUNT. IF WHAT HE SAYS IS TRUE, HE WOULD HAVE COME INTO MY ROOM TO SEE IF I WERE ALIVE OR IN SOME SORT OF DISTRESS. THATS THE PROCEDURE. WHY WOULD I NOT MOVE IF INFACT HE "KNOCKED SEVERAL TIMES AND TOLD ME TO MOVE"? IT MAKES NO SENSE. ALSO WOULDN'T THE OTHER CO KNOCK AND TELL ME TO MOVE AND SGT BOLDEN DOES THE COUNT WITH HIM. WOULDN'T HE SAY SOMETHING TO ME. NO SUCH ACTION HAPPENED

3RD YOU WON'T BELEAVE THIS BUT I HAVE SEEN DOZENS AND DOZENS AND DOZENS OF COUNTS WHERE THE CO'S TAPE ON THE DOOR AND TELL INMATES TO MOVE AND THIS INCLUDES ME. I'VE BEEN TOLD TO MOVE AT THE 9:00 PM COUNT AS HAVE OTHERS AND THE CO'S GO ON THERE WAY. I AND OTHERS HAVE BEEN TOLD TO MOVE AT THE 3:00 AM COUNT WHEN PEOPLE ARE SOUND ASLEEP, WE MOVE AND THE COUNT GOES ON. NOW THE $64,000 QUESTION, WHY HAVE I BEEN SINGLED OUT AND INFRACTED WHEN OTHERS ARE NOT? OVER THE PAST FEW DAYS I HAVE BEEN INFRACTED FOR THE SAME THING, ANOTHER BY ZACK FINN AND ONE BY RYON JONES. WHY? I'LL TELL YOU WHY. EVERY SENCE YOU DISMISSED THE "STOLEN BURRITO" ESCAPAID, SGT BOLDEN HAS CONVAYED TO OTHER CO'S TO INFRACT ME BECAUSE I SLEEP UNDER MY BLANKETS. THIS IS CLASSIC CO RETALIATION BASED ON STATEMENTS IMPOSSABLE TO DISPROVE BASED ON STATEMENTS OF ONE PERSON WITH NO EVIDENCE WHAT SO EVER

Paul Wright

Eliud Kipchoge is the greatest marathoner of all time.

to verify my 3:00 AM court conduct.

I know you are not going to find in my favor and this is an exercise in ~~Etty~~ fuetility and how one can be responsable for something that happens when one is sound asleep as actions when one is asleep are involentary actions with no ~~$~~ concensous reactions

THANK YOU

Paul Works 321696

ZACK FENN  BLOOD      N/A
+ IRON
(3)

Department of
**Corrections**
WASHINGTON STATE                              **GENERAL INFRACTION REPORT**

| Offender Name | | DOC Number | Housing Assignment | Infraction Date |
|---|---|---|---|---|
| Marks, Paul | | 321696 | H4-015L | 05/26/14 |

| Incident Date 05/26/14 | Incident Time 1550 | | Incident Place H4-015L | |

| Rule Violations 214 | Witness(es) N/A | | | |

**DETAILS IN FULL:**
On 05/26/14 at 1550, I, Officer Fenn, Zack was conducting formal count when I came to the cell 015 with offender Marks, Paul DOC# 321696 inside it. Offender Marks was completely covered up with blankets in his bed and would not move for count after I knocked several times and gave verbal directives to show for count. This has been an on going problem with this offender after I even gave him several warnings in the past to not cover up and to be visible for count.

| Reporting Staff (Print) Zack Fenn | Signature _Fenn_ | | Shift 3 | Days Off Fri/Sat |
| Infraction Reviewer's (Print) | Signature | | Date | |

**NOTICE TO OFFENDER:**
You are to appear at 1900 HRS a.m./p.m. on 5/28/14 in the H-4 Sergeant's Office.
                      Time                    Date/Day              Unit

I _____ Name _____ DOC _____ Number _____ Waive my right to attend this scheduled hearing. I understand the hearing will be held in my absence.

X _Paul Marks_
Copy Received Offender Signature                5/27/14        1435
                                                  Date          Time
C/O Fenn
Issued by Staff (Print)        Signature        5/27/14
                                                  Date

**ACTION:**
Hearing Date: _5-28-14_            Hearing Time: _1920_
Offender's Plea(s) to Violations(s): _NOT GUILTY_
Summary of Offender's Statement: _HE STAFF KNOCKED ON THE DOOR & I MOVED_

Finding(s): _GUILTY_
Reason(s): _STAFF WRITTEN STATEMENT_
Sanction(s) (if any): _R&W_
Reason(s): _NO HISTORY_

Appeals must be addressed to the Disciplinary Hearing Officer within 24 hours after receiving this notification. Attach your copy of this form to your appeal.

**NOTIFICATION HAS BEEN RECEIVED:**
_Paul Marks_
Offender Signature                5-29-14    1925
                                    Date       Time
Sgt BOLDEN, MITCHELL
Staff (Print)        Signature        5-28-14    1925
                                        Date       Time

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

Distribution:   **ORIGINAL** – Unit File     COPY – To offender when notice is given
                                              COPY – To offender after hearing has been conducted and signature obtained
DOC 17-070 (Rev. 08/16/12)                                                      DOC 460.000

*MED 7R REC*

*RIBS*

# Stafford Creek
# Corrections Center

Professional Diagnostic Reading Service Provided By:

**TRA** Medical Imaging
(866) 761-4200, option 1

| | | | |
|---|---|---|---|
| **Patient Name:** | MARKS, PAUL | **Accession Number:** | G150202100221270 |
| **Patient ID:** | 284560SCC | **Date of Service:** | February 2, 2015 09:47 |
| **Date of Birth:** | , 1949 | **Procedure** | DX - |
| **Referring Physician:** | Light, Scott | **Description:** | X-RAY RIBS UNILATERAL LEFT 2 VIEWS |

EXAM: LEFT RIB X-RAY SERIES

HISTORY: Trauma. Pain over the mid left rib cage.

TECHNIQUE: Two views of the left ribs were obtained.

COMPARISON: None.

FINDINGS AND IMPRESSION: There is a nondisplaced fracture of the left anterolateral seventh rib. No pneumothorax or pleural effusion.

Thank you for this referral. For consultation with the radiologist, please call 360-413-8383.

Reported: 02 Feb 2015 10:59 RANDALL PATTEN
Electronically Signed: 02 Feb 2015 11:01 RANDALL PATTEN

**Relevant Clinical Information**
^Primary Tech: DOC, Tech
sore mid left ribs--in a fight
NEW

NORMAL_____SEE REPORT_____
ACTION REQUIRED_____
_____
_____
INITIALS_____DATE_____

# Stafford Creek
# Corrections Center

RIBS

Professional Diagnostic Reading Service Provided By:

**TRA** Medical Imaging
(866) 761-4200, option 1

| | | | |
|---|---|---|---|
| **Patient Name:** | MARKS, PAUL | **Accession Number:** | G150202095350905 |
| **Patient ID:** | 321696SCC | **Date of Service:** | February 2, 2015 09:38 |
| **Date of Birth:** | 1945 | **Procedure** | DX - |
| **Referring Physician:** | Light, Scott | **Description:** | X-RAY CHEST MINIMUM 4 VIEWS |

EXAM: X-RAY CHEST MINIMUM 4 VIEWS

HISTORY: Cough and sore ribs

COMPARISON: None.

TECHNIQUE: PA and bilateral shallow oblique and lateral.

FINDINGS: Lungs are clear. The vessels are distinct. Cardiac, mediastinal and pleural contours appear normal. Recent right seventh lateral rib fracture present, recent left seventh lateral rib fracture also present.

IMPRESSION: Recent bilateral seventh lateral rib fractures.

Reported: 02 Feb 2015 11:40 DANIEL HELLER
Electronically Signed: 02 Feb 2015 11:43 DANIEL HELLER

**Relevant Clinical Information**
^Primary Tech: DOC, Tech
cough and sore Lt. ribs
NEW

NORMAL_____SEE REPORT_____
ACTION REQUIRED_____

INITIALS_____ DATE 2-3-15

S. LIGHT, PA-C



RIBS

OFFENDER I.D. DATA: **MARKS, PAUL**
(Name, DOC#, DOB)   **321696**      **1945**

## DIAGNOSTIC IMAGING REQUEST

| DATE OF REQUEST | FACILITY | UNIT | ALLERGIES |
|---|---|---|---|
| **01/29/2015** | **SCCC** | **H3** | NKDA |

**STATUS**
☐ Emergent   ☒ Urgent   ☐ Routine

**PROCEDURE**
☒ X-ray   ☐ Mammogram   ☐ Ultrasound   ☐ Other:

**EXAMINATION OF**
1. CHEST
2. RIGHT TIB-FIB    & LT ribs

**VIEWS REQUESTED**
1. PA & LATERAL
2. PA & LATERAL

**REASON/HISTORY**
FIGHT WITH RIB PAIN AND ECHYMOSIS AT ABOUT T-8 LEFT MID AXILLARY AND ECHYMOSIS RIGHT SHIN

**X-RAYS
DONE**

| HEIGHT | | WEIGHT | | PROVIDER'S NAME | | |
|---|---|---|---|---|---|---|
| ft | in | lbs | | S.LIGHT, PA-C | | |
| DATE IMAGED | | IMAGING PERFORMED BY | | | SIGNATURE | 2-2-15 |

~~20049O4WA~~   200695904 WA _900

71030 Chest

73590 RR Tibia

7110 2Lr ribs

as corinta dm

State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

DOC 13-038 (09/22/2014)                                    DIAGNOSTIC

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | ☐ Allergies verified with patient; Problem List updated as needed |
|---|---|---|---|---|
| 1-20-15 | 0915 | SCCC | H5 | |

☐ Risks/benefits of recommended intervention explained; patient consents    PLAN / RX (Dx required for medication orders)

Vital Signs: BP 124/86 P 85 R 16 T 98.0 O2-Sat 96 %Wt 165

One Chief Complaint: (L) side pain

Referred to Provider today - Yes___ No___

Deferred to PCP for F/U - Yes___ No___   Provider Notified - Yes___ No___

Triage Nurses Name_____ (Stamp)_____

UA DIP
BMP
CBCD

(S) Assaulted on 1-22 +
now has PTP SOB (L)
chest wall. — Never
asked for evaluation
until now. Now feels

---

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | ☐ Allergies verified with patient; Problem List updated as needed |
|---|---|---|---|---|
| | | | | |

☐ Risks/benefits of recommended intervention explained; patient consents    PLAN / RX (Dx required for medication orders)

stiff + sore + some
pleuritic pain

(O) VS as above. Gen A+O NAD
HEENT- PERR
chest - CTA throughout bilateral
CV - RRR
ABD - Non tender. Palpable mass
(L) U.Q.; similar to previous
SKIN - Ecchymosis (L) flank at
about T-8 to T-10 c pain
to palp over those ribs.

---

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | ☐ Allergies verified with patient; Problem List updated as needed |
|---|---|---|---|---|
| | | | | |

☐ Risks/benefits of recommended intervention explained; patient consents    PLAN / RX (Dx required for medication orders)

EXT - Ecchymosis (R) antecub. SM c
c subtle p to palp but no pain
over knee on ankle on c
knee / ankle ROM
Head to toe c No other bruises
on signs of trauma
identified.

(A/P) * continued on next page

State law (RCW 70.02) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.



DOC 410.430   DOC 420.250   DOC 490.850   DOC 610.010
DOC 610.025   DOC 610.040   DOC 610.600   DOC 610.650
DOC 630.520   DOC 670.020

**PRIMARY ENCOUNTER REPORT**

DOC 13-435 (05/19/2014)

RIBS

| DATE (m/d/yy) 1/21/15 | TIME (24-hr) 1850 | FACILITY SCC | UNIT DMU | ALLERGIES NKDA | PLAN / RX (Dx required for medication orders) |
|---|---|---|---|---|---|

☐ Risks/benefits of recommended intervention explained; patient consents

HEALTH ASSESSMENT & PREA QUESTIONS COMPLETED.
PT HAS NO MEDICAL OR MH C/O @ THIS TIME &
NO INJURIES OBSERVED. DOES REPORT CHRONIC
BACK PAIN X SURG. STATES TAKES NO MEDS FOR
IT. ONLY TAKES CHOLESTEROL MEDS. 2000 PT REQUESTING
"A COUPLE ASPIRIN" FOR BACK PAIN. TOLD
HIM I HAVE NO ORDERS FOR ANY PAIN MEDS FOR
HIM @ THIS TIME

[signature] RN
TRACY MEAS

---

| DATE (m/d/yy) 2/19/15 | TIME (24-hr) 9:15 | FACILITY Scc | UNIT H3 | ALLERGIES NKDA | PLAN / RX (Dx required for medication orders) |
|---|---|---|---|---|---|

☐ Risks/benefits of recommended intervention explained; patient consents

OPTOMETRY

See Form

[signature] OD   E. WAYMAN, OD

---

| DATE (m/d/yy) 2/25/15 | TIME (24-hr) 0945 | FACILITY SCC | UNIT H3 | ALLERGIES NKDA | PLAN / RX (Dx required for medication orders) |
|---|---|---|---|---|---|

BP re-check & NOTIFY ME OF RESULTS

☐ Risks/benefits of recommended intervention explained; patient consents

Vital Signs: BP 146/4 P 72 R 16 T 98 O₂ Sat 94 % Wt. 162.2

One Chief Complaint: Pain in small of back increasing
Referred to Provider today - Yes ✓ No____   & down Ⓛ leg. Reports

Deferred to PCP for F/U - Yes____ No ✓ Provider Notified - Yes____ No____

Triage Nurses Name [signature]   (Stamp) D. Poonkasem

28 yr/o Also has broken ribs from altercation ō cellmate in January"

PLEASE SEE
DICTATED

S. LIGHT, PA-C

[signature]

State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

Department of Corrections   DOC 410.430  DOC 420.250  DOC 490.850  DOC 610.010   **PRIMARY ENCOUNTER REPORT**
DOC 610.025  DOC 610.040  DOC 610.600  DOC 610.650
DOC 630.520  DOC 670.020

DOC 13-435 (11/08/2013)

MARIS PAUL 331194 45

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | |
|---|---|---|---|---|
| 1-20-15 | 0915 | SLCC | H3 | ☑ Allergies verified with patient; Problem List updated as needed |

☐ Risks/benefits of recommended intervention explained; patient consents    PLAN / RX (Dx required for medication orders)

✳ CONTINUED FROM PREVIOUS

A+P     ① ⓘ STEADY NSP PROD — ISOLATE RE
          SPINNING (HE HAS)      + APAP, X-RAY,

        ② Ⓛ LOWER LBL CONTUSION — X-RAY

        ③ INTRA RENAL AAA — DISCUSSION
          c̄ ATTENDING & WE'LL MOVE UP
          PLANNED SURGERY TO IMAGE/CT,

✳ DISCUSSED c̄ ATTENDING

[signature]

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | |
|---|---|---|---|---|
| | | | | ☐ Allergies verified with patient; Problem List updated as needed |

☐ Risks/benefits of recommended intervention explained; patient consents    PLAN / RX (Dx required for medication orders)

S. LIGHT, PA-C

| DATE (m/d/yy) | TIME (24-hr) | FACILITY | UNIT | |
|---|---|---|---|---|
| 2-3-15 | 1400 | SLCC | H3 | ☑ Allergies verified with patient; Problem List updated as needed |

☐ Risks/benefits of recommended intervention explained; patient consents    PLAN / RX (Dx required for medication orders)

SEEN + EXAMINED c̄ ATTENDING
DUE TO CONCERNS ABOUT
ANEURYSM — WILL MOVE
UP IMAGE STUDY ASAP,
PULSATILE MASS LLQ — NO
PROD, COUNSEL ON PROGRESS

S. LIGHT, PA-C

State law (RCW 70.02) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.

Department of Corrections
WASHINGTON STATE

DOC 410.430   DOC 420.250   DOC 490.850   DOC 610.010
DOC 610.025   DOC 610.040   DOC 610.600   DOC 610.650
DOC 630.520   DOC 670.020

**PRIMARY ENCOUNTER REPORT**

DOC 13-435 (05/19/2014)

MARKS, PAUL   321696

BO2
Broken Ribs

H3   010E

**Department of**
# Corrections
WASHINGTON STATE

**HEALTH SERVICES KITE**

This form must be used to request non-emergency
health care services, except in facilities where kiosks or sign-up sheets are used.

*PLEASE PRINT*          **SUBMISSION OF HEALTH SERVICES REQUEST MAY RESULT IN A CO-PAY**

| LAST NAME MARKS | | FIRST NAME PAUL | | |
|---|---|---|---|---|
| DOC NUMBER 321696 | FACILITY SCCC | UNIT/CELL IMU | DATE 1-22-15 | TIME |
| JOB/PROGRAM | | JOB/PROGRAM HOURS | DAYS OFF | |

*If you feel you have an actual medical emergency, alert the staff and do not use this form.*

**TYPE OF REQUEST (check only one box per form)**

☒ MEDICAL          ☐ DENTAL          ☐ MENTAL HEALTH

☐ MEDICATION REFILL – List medication(s) with prescription number(s) or place sticker below

☐ OPTOMETRY          ☐ OTHER: _____

**REASON FOR REQUEST (list problem or medications needing refill)**

PA. **F.** MR FIGORDA, AS PER MY PREVIOUS KITE, I AM
UNDERGOING EXTREEM PAIN IN MY BACK AND ESP MY LEFT
RIB CAGE AREA. I CAN NOT TAKE A DEEP BREATH, COUGH OR
SNEZE WITHOUT ALMOST PASSING OUT. DO I HAVE A BROKEN
RIB? IS THERE DANGER OF A PUNCHURED LUNG? I NEED IMM-
EDIATE CARE TO SEE HOW SERIOUS MY INJURYS ARE. TODAY IS
THURSDAY. FRI, ~~SAT~~, ~~SUN~~, IS LAST WORK DAY. DO I HAVE TO
SUFFER SAT + SUN AND EVEN MONDAY WITHOUT BEING LOOKED AT. A
QUICK XRAY WILL PROBABLY DO THE _Paul Marks_
TRICK          OFFENDER SIGNATURE

**HEALTH SERVICES RESPONSE/ENCOUNTER**
This form must be filed if any information is entered below except for: simple prescription refills, finance, non-medical
work/bunk change, religious diets, shoes, classification, non-health services issues

1) PA figorni doesn't work in f-unit,

2) if you want to be seen at
sick call send a kite, NO Xrays
without seeing a provider to order
it

| RESPONDER signature and stamp (all copies) | DATE and TIME 1/23/15 |
|---|---|

**PRESCRIPTIONS MUST BE WRITTEN ON DOC 13-435 PRIMARY ENCOUNTER REPORT (PER) OR IN CIPS**

Distribution: **WHITE/YELLOW** – Responder, **PINK** – Offender keeps
Distribution upon completion: **WHITE** – Health Record, **YELLOW** – Return to Offender with Response
*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written
consent of the person to whom it pertains, or as otherwise permitted by law.*

DOC 13-423 (09/02/2014)          DOC 610.650          DOC 630.500          KITES

B02

BROKEN RIBS + PA3 43 010L
FOOD BYPA3

**Department of**
**Corrections**
WASHINGTON STATE

**HEALTH SERVICES KITE**

This form must be used to request non-emergency
health care services, except in facilities where kiosks or sign-up sheets are used.

*PLEASE PRINT*                    *SUBMISSION OF HEALTH SERVICES REQUEST MAY RESULT IN A CO-PAY*

| LAST NAME MARKS | | FIRST NAME PAUL | |
|---|---|---|---|
| DOC NUMBER 321696 | FACILITY SCCC | UNIT/CELL IMU | DATE 1-22-15  TIME |
| JOB/PROGRAM | | JOB/PROGRAM HOURS | DAYS OFF |

*If you feel you have an actual medical emergency, alert the staff and do not use this form.*

**TYPE OF REQUEST** (check only one box per form)         ☐ OPTOMETRY

☒ MEDICAL                    ☐ DENTAL                    ☐ MENTAL HEALTH

☐ MEDICATION REFILL (list medication/s or place sticker below )    ☐ OTHER: _____

**REASON FOR REQUEST** (list problem or medications needing refill)

ON 1-21-15 I WAS THE VICTIM OF A PHYSICAL
ASSULT. I HAVE AN INJURED BACK AND RIBS to SUCH
A DEGREE THAT IT TAKES ME SEVERAL MINUTES TO GET OUT
OF BED AND TO THE DOOR FOR FOOD. I DID NOT EAT BREAKFAST
BUT WHEN LUNCH CAME I WANTED TO EAT. I WAS BY PASSED AND
THE STAFF HAS REFUSED TO ALLOW ME TIME TO GET TO THE DOOR
FOR LUNCH. I HAVE MADE 2 REQUEST FOR LUNCH AND NOTHING
HAS HAPPENED. I ALSO NEED SOME TYPE OF PAIN MED FOR MY INJURY
I CAN HARDLY MOVE AND THE PAIN IS *Paul Marks*
ALMOST UNBEARABLE                    OFFENDER SIGNATURE

**HEALTH SERVICES RESPONSE/ENCOUNTER**
This form must be filed if any information is entered below except for: simple prescription refills, finance, non-medical
work/bunk change, religious diets, shoes, classification, non-health services issues

☐ Schedule within ____ days/weeks/months    ☐ Next available sick call    ☐ No visit required

meals are announced over intercom & called
by officer when they begin
Get up at that time & head toward door
if officers see you are out of bed they will
serve you, if you stay in bed it is
a meal refused by you

RESPONDER signature and stamp (all copies)                    DATE and TIME 1/23/15

**PRESCRIPTIONS MUST BE WRITTEN ON DOC 13-435, PRIMARY ENCOUNTER REPORT (PER) OR IN CIPS**
Distribution: **WHITE/YELLOW** – Responder, **PINK** – Offender keeps
Distribution upon completion: **WHITE** – Health Record, **YELLOW** – Return to Offender with Response

*State law (RCW 70.02; RCW 70.24.105; RCW 71.05.390) and/or federal regulations (42 CFR Part 2; 45 CFR Part 164) prohibit
disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

DOC 13-423 (07/03/2013) POL          DOC 610.650          DOC 630.500          KITES

CRONOLOGY OF EVENTS
7-20-16 FORWARD

(1) <u>WHAT HAPPENED</u>; at approxamatly 5:30 PM SCCC Housing unit H-3 was
called to dinner.

(2) <u>WHAT HAPPENED NEXT</u>; approxamatly 50 to 60 prisoners, including
myself, walked the 300 or so yards to chow hall.

(3) <u>WHAT HAPPENED NEXT</u>; a line formed at the entrance to the chow hall,
I was about 15 feet from that entrance.

(4) <u>WHAT HAPPENED NEXT</u>; SGT FINN, a DOC employee, known to me for the
following reason(s); several months prior to this incident, employee
FINN who had not yet recieved his SGT stripes, was a unit C/O in H-4.
His dutys were to watch over the prisoners and to do count.
My roomate at the time was RON BLOOD. prisoner Blood and myself had
conflict as roomates. prisoner Blood ingratiated himself to C/O FINN
and they seemed to have a strong repore.

Prisoner Blood complained to FINN about conflicts in the cell and
these complaints lead C/O FINN to infract me with 2 or 3 minor in-
fractions and I was moved to H-5↓(and subsequently moved to H-3).
          WHERE BROKEN RIBS HAPPENED
The above is how I became known to C/O FINN and how he became known
to me.

Several months or even years passed and I didnt see or hear of C/OFINN.

Then one day I saw FINN with SGT stripes, and I saw him a number of
times on the breezeway watching the commings and goings of prisoners
at the chowhall. On this day 7-20, he saw me and for some reason
unknown to me, he ordered me to stand for search.

I moved to his location and stood feet apart, back to him waiting
to be searched.

(5) <u>WHAT HAPPENED NEXT</u>; I stood for 30 seconds or so in this position
with my feet apart and my hands spread wide, But no one searched me.

Generally, a SGT will never search prisoners, but leave this to
subordinate C/O's to do.

(6) <u>WHAT HAPPENED NEXT</u>; After standing in this position for the ½
minute or so SGT FINN ordered me back to my unit, by shouting
"GO BACK TO YOUR UNIT"...

(7) <u>WHAT HAPPENED NEXT</u>; I was confused as I was waiting to be searched.

(8) <u>WHAT HAPPENED NEXT</u>; SGT FINN shouted again "GO BACK TO YOUR UNIT".

⑨ **WHAT HAPPENED NEXT;** Before I could react or move, 2 or 3 C/O's attacked me, one twisting my head and neck as if to remove same from my body, meanwhile I was handcuffed,with all the C/O's yelling "STOP RESISTING",which I was not(I am 71 yrs old, 150lbs)

⑩ **WHAT HAPPENED NEXT;** I was lead toward the F-unit(segragation) handcuffed with my hands behind my back, one C/O on each side of me with their arms intertwined with mine.

⑪ **WHAT HAPPENED NEXT;** At about 200 ft from the initial contact and on the way to the F-unit, my left leg gave out and/or I was tripped. (note: I have an extreem case of scoliosis which makes my leg numb)

✱ ⑫ **WHAT HAPPENED NEXT;**On the way down, a C/O kneed me in the stomach as hard as he could(resulting in an anurism at my aorta)my head and neck was again twisted... The C/O's all the time yelling the signal to attack"STOP RESISTING". DID NOT RESULT IN A ANURISM I ALLREADY HAD IT!

⑬ **WHAT HAPPENED NEXT;** I fell to the ground,with the C/O's wherein they continued to knee and pummel me for no reason.

⑭ **WHAT HAPPENED NEXT:** After being pummeled, it was obvious that I could not walk. A wheelchair was brought, I was lifted into the wheelchair and taken to the "F-unit"(segragation)(IMU).

✱ ⑮ **WHAT HAPPENED NEXT;** I was wheeled to a holding cell(5'X5') and dumped out of the wheelchair onto a concrete floor, at which point, I went unconscience. SEE INITIAL SER.INC. REPORT

⑯ **WHAT HAPPENED NEXT;** I woke up at 10:30 AM the next day. I had tubes down my nose and throat, was tied to a bed. I was panicked and thought I was going to die as I could not swallow my saliva. This was the most terrifying thing that has ever happened to me. There are no proper words to describe the feeling you have when you believe that you are about to die.

⑰ **WHAT HAPPENED NEXT;** I was lying in bed, not able to talk, still panicked, began to pound on the bedrail, attempting to get the C/O's attention to my distress.The C/O made no efforts to help me, no effort to seek help for me, only said "they will be here soon to take care of you."

⑱ **WHAT HAPPENED NEXT;**I saw a man, who later, I learned was a male nurse. I attempted to use my hand to signal that I was in distress this nurse did nothing to assist me, rather mocked me, laugh and walked away.

✱ ⑲ **WHAT HAPPENED NEXT;** Eventually, a female nurse came into the room and told me "as soon a the doctor gives us the go ahead we will remove the things in your nose and throat, it should be about ▬ minutes".

          5-10

(20) **WHAT HAPPENED NEXT;** I lay there for 1½ hours, the whole time I watched the clock,(which was right in front of me)it clicked off second by second for this 1½ hrs. there are no words to describe the terror, panic and helplessness I experianced.

(21) **WHAT HAPPENED NEXT;** Finally, the mocking male nurse came in and removed the things in my nose and mouth so that I could breath again properly.

(22) **WHAT HAPPENED NEXT;** I had a dizzing headache and every bone in my body hurt, especially my head and neck.

(23) **WHAT HAPPENED NEXT;**on that day at about 1:30 PM, a nurse brought me a lunch. shortly after, I saw with my own 2 eyes C/O Smith take food off my tray that was meant for me. His partner, C/O Shothammer wispered "I didnt see a thing".C/O Smith stashed the food in his backpac.

(24) **WHAT HAPPENED NEXT;**The next day I was seen by a private practice Doctor and had tests for the anurism including an MRI and then returned to the hospital and subsequently discharged.

(25) **WHAT HAPPENED NEXT;**I was returned to SCCC medical unit.

(26) **WHAT HAPPENED NEXT;** At some point after my return to SCCC medical unit, My usual medical provider, PA LIGHT came into my room and was all excited and animated,(like we just won the world series) and exclaimed **"YOU SURVIVED?"**.

(27) **WHAT HAPPENED NEXT;** PA LIGHT and I talked, He told me that I had a siezure, he did a minimal/cursury exam and left me to my druthers.

(28) **WHAT HAPPENED NEXT;** The following AM at 8:30, 2 C/O's came to escourt me to have an X-ray. I was handcuffed for this escourt.

✳ (29) **WHAT HAPPENED NEXT;**As I was being led down the hall to X-ray, the 2 C/O's started singing into my ear... the one CO would say "I'M changing the station" and then started singing "RAP" and would start RAPPING, and then yelled, I'M CHANGING THE STATION" and would start singing country... These antics went on down the hallway to the x-ray continuing to attempt to annoy me or to use this as some kind of PSYOPS. This continued even into the X-ray room, wherein the X-ray tech sort of laughed.

✳ (30) **WHAT HAPPENED NEXT;** After the X-ray exam, the C/O's marched me again down the hall, singing and "changing the radio station". This excessive noise inches from my ears was for the entertainment of the staff and the C/O's. I was treated as some kind of monkey or clown or fool.

I FILED A GRIEVANCE OVER THIS; ~~SEE~~

(31) **WHAT HAPPENED NEXT;** After being returned to my room, A C/O
and a lady I never saw before came to my room to ask me questions
about reimbursment. This was some 15 minutes after the singing
incident. At this time I began to mimick the singing... saying
"I can sing too" I began to sing Elvis's HEARTBREAK HOTEL.
The lady left right away and the C/O shortly thereafter.

(32) **WHAT HAPPENED NEXT;** I was moved down the hall to an "F-unit"
observation room(generally used as as "suicide watch" room)
This room reeked and the toilet was funky, the sink dirty an
stained, this was a concrete room with concrete floor. This
placement was in retaliation for my singing.

(33) **WHAT HAPPENED NEXT;** 1 or 2 days later, Dr. Smith and I had a
meeting, I was handcuffed to a chair and Dr. Smith standing
over me. We had a discussion about my anurism, I argued that
I should be in a hospital in case the anurism were to burst,
that I would be close to proper, necessary care such as
emergency surgery ect.(Note; it would take SCCC medical at
least 5 minutes to respond, then another 20 minutes for an
ambulance to arrive another 15-20 minutes to arrive at the
hospital) By the time I was actually seen by professional
medical personell at the aberdeen hospital, I certinly would
arrive dead!!!(Generally a burst aorta anurism that untreated
the patient dies in 5 minutes).

(34) **WHAT HAPPENED NEXT;** Dr Smith argued that she understood that
it was me and not her that had the condition,...That it was me
and not her that was worried about the possibility of death,...
Me and not her that had a bulge in my stomach,.. and then said
that she refused to admit me to a hospital because I would be
discharged for some unknown/vauge reason.... some thing mumbled
about "Bed Related"?.

(35) **WHAT HAPPENED NEXT;** I told her that I totally disagreed with
her and to prove my point, I challenged her to call Aberdeen
Olympia or Tacoma or Harbor View Hospitals about admitting me
under those circumstances.

(36) **WHAT HAPPENED NEXT;** She declined to do anything and said that
they were trying to figure out what to do and left. I was returned
to the bleak suicide room.

(37) **WHAT HAPPENED NEXT;** Some time later, a female PA came to look
in on me, took my blood pressure, which was extreemly high.
I expressed that "what would you expect"?"I'm freaking out
about my anurism and no one seems to want to help me".The PA
left, no help was given, I was returned to the suicide room.

(38) **WHAT HAPPENED NEXT;** Sometime later , I made a complaint that my
stomach was hurting in the aneurism area. I was brought out of
the suicide/concrete room in a wheelchair. It felt to me that
my aneurism was expanding and contracting with every heartbeat.
(note:I was tied to the wheelchair!!)

(39) **WHAT HAPPENED NEXT:** A nurse came on the scene, I told her about my situation, she dissappeared, came back 10 minutes later and appeared to authorize my removal from the punishment/suicide room. I was placed back at F-unit (IMU), wherein I was transported there in a wheelchair and tied/roped in...secreted down a hallway ans snuck out the back door and taken to IMU.

(40) **WHAT HAPPENED NEXT:** I was deposited into a holding cell, was uncuffed and told to undress. I was in extrem distress, could not comply or dress myself, had a seizure, went unconscience, fell to the floor. I was told later that I recieved no help as this was no "medical emergency". DICKERSON C.O. & RN SKINNER

(41) **WHAT HAPPENED NEXT:** After several hours I was able to compose myself, yet it took me 45 minutes to undress and change into the required clothing for IMU. I recieved no help from the 2 C/O's who previously told me I could die there and it would make"no difference to them", thereafter I was dragged into a wheelchair and deposited into an IMU cell. DICKERSON C.O.

✱ (42) **WHAT HAPPENED NEXT:** Eventually I was taken from ~~the Suicide room~~ MEDICAL to Olympia hospital for consult w/Dr. Dietz and returned to SCCC. (about aneurism)

(43) **WHAT HAPPENED NEXT:** Upon returning to SCCC, the transport C/O's returned me to property thru the door we left from. These C/O's were ordered to return me to IMU, wherin I was placed into a holding cell.

(44) **WHAT HAPPENED NEXT:** While in that holding cell, a C/O came to the door and told me to undress, this holding cell has a window in the door approx 20"x5''wide. I undressed and was standing naked in the 5'X5' holding cell.

(45) **WHAT HAPPENED NEXT:** A female C/O (now known to me as C/O Bronghill) came to the window, where I was totally naked, she made a point to stare into the window without moving her head, looked me over and lifted her eyebrows !!(as if to say "Oh La, La!!!)

(46) **WHAT HAPPENED NEXT:** She asked me my shoe size?... I said 10½. She left and a short time later returned with clothes for me, wherein she gazed at me again... (how could she not notice that I was totally naked!!!) She handed me the cloths and left.

(47) **WHAT HAPPENED NEXT:** After a short time I came to realize that what had just taken place was being subjected to features of a sexual nature as described in the PREA handbook, the longing gaze, the lifting of the eyebrows and the interactions while naked left me feeling humilitaed and I cannot get this Image out of my head.

✱ (48) **WHAT HAPPENED NEXT:** I submitted a greivance about this PREA issue and it is still pending ( I THINK

(49) **WHAT HAPPENED NEXT:** Several days later I was served with an infraction notice involving the above incident about being unable to comply with demands to change cloths, even though I was un-conscience.

(50) **WHAT HAPPENED NEXT;** I wnet for a hearing in IMU, found guilty of not standing for search or complying with directives, even though I was unconscience...I recieved a sanction and credited for time served in IMU.

(51) **WHAT HAPPENED NEXT;** I had a second hearing about what happened on 7-20-16 and was also found guilty and sentenced to 10 days of segragation in IMU. (Talk about a Kangaroo court)During the hearing, the Hearing officer was reading a report that said I was being "disruptive".. I asked him what "being disruptive" meant?, he ignored me until I asked again...He exclaimed **"ITS WHAT YOU ARE DOING RIGHT NOW"!!!**and if you dont like it "I'll Stop this hearing right now....and send youback to your cell"... The hearing continued under duress.

(52) **WHAT HAPPENED NEXT:** I served 15 days total time in IMU, I was released to "G"unit GA24L.

(53) **WHAT HAPPENED NEXT;**I have been demoted to MEDIUM custody and forced to live in a room with a toilet next to my bed, I have recieved no further necessary, proper follow up medical treatment for the aneurism.,this after being asked to move into another prior room that was a clerical or staff error.

(54) **WHAT HAPPENED NEXT;** I gathered up my belongings and moved into a cell that was already inhabited by a guy whose name is _MORRIS BAKER_ , who told me that he had "just came from IMU" After only a couple days, I could tell that this was a bad idea.

(55) **WHAT HAPPENED NEXT; On** the morning of 8-21-16, this roomate came into the cell, woke me up abruptly, yelling "Hollywood, Hollywood, get up to get your breakfast(known as a "BOAT") This was on a Sunday A.M.

(56) **WHAT HAPPENED NEXT;** I asked him to please not wake me and that I am aware of the breakfast and am capable of getting it.

(57) **WHAT HAPPENED NEXT;**To make a long story short; This inmate "snapped" resulting in him kicking me in the chest/sternim area, said he was"going to kill me" and"push my nose into my brain".

(58) **WHAT HAPPENED NEXT;**After he left the cell, I told C/o ELDORALDO what had haapened... Had an interview with a SGT, who said that there would be an investigation, this maniac was moved out of my cell to the other side of the Unit with no punishment of further investigation.

(59) **WHAT HAPPENED NEXT;** Shortly after the kicking incident, I went to medical, they said nothing could be done for pain and made [no attempts to X-ray] or other proper medical treatment, and no follow up was done even though I experianced painful breathing and ongoing pain and bruising after a day or so. +HEY DID DO X-RAY ON MY CHEST

CONTINUED →

*USED TO PUT ME IN I.MU*

*ZACK FINN*

**Placement Referral:**

**MARKS, Paul D (321696)**

Offender Information At Time Of Placement

| | | | |
|---|---|---|---|
| **ERD:** 12/23/2019 | **RLC:** LOW | **Custody Level:** Minimum 3 - Long Term Minimum | **Location:** SCCC-IMU |

Placement Movement

| | | | |
|---|---|---|---|
| * **Initial Placement Date:** | 07/20/2016 | * **Time:** 19:50 | * **Initial Placement Status:** Pre-Hearing Confinement |
| * **Initial Placement Facility:** | SCCC-IMU | * **Initial Placement Living Unit:** F | |
| * **Pre-Placement Location:** | SCCC-H3 | | |

Placement Details

| **Placement Type:** | **Placement Detail:** | **Placement Due Infraction:** |
|---|---|---|
| Threat to Orderliness of Facility | Other | 509 - REFUSE TO PROCEED/DISPERSE AREA |
| | | 717 - REFUSAL/RESISTING/SAFETY |

Placement Narrative

Offender Refused Multiple Directives To Disperse Back To His Living Unit. During The Escort To F Unit, Offender Marks Began To Resist Staff Resulting In A Spontaneous Use Of Force.

**Requesting Staff:** Fenn, Zackary J                                        **Authorizing Staff:** Mainio, Eric W

**Placement Authorization:**

* Authorization Narrative

Concur

◉ Authorize          ○ Deny

| **Authorizing Staff:** | **Serving/Reporting Staff:** | **Superintendent/Designee:** |
|---|---|---|
| Mainio, Eric W | Ericksen, Matthew R | Cotton, Jeneva M |

**Placement Decision:**

**Superintendent/Designee:** Cotton, Jeneva M                    **Date of Decision:** 07/21/2016

**Decision Narrative:**

PHC Approved - WAC 509/717

◉ Approve          ○ Deny


**Department of Corrections**
WASHINGTON STATE

*MY COPY GREW #15*
*FINN*
*1st REPORT*

## INITIAL SERIOUS INFRACTION REPORT

| Date of Infraction 07/20/2016 | Offender Name (Last, First) Marks, Paul | DOC Number 321696 | Housing Assignment H3-010 L |
|---|---|---|---|

| Rule Violation #(s) 509, 717 | | | |
|---|---|---|---|

| Approximate Time Occurred 1752 | Place of Incident (Be Specific) Breezeway in front of A Side Dining | | Date Occurred 07/20/2016 |
|---|---|---|---|

| Witness (1) Henderson, Arthur | Days Off Sat/Sun | Witness (3) N/A | Days Off N/A |
|---|---|---|---|
| Witness (2) Troseth, Jimmy | Days Off Fri/Sat | Witness (4) N/A | Days Off N/A |

### NARRATIVE

State a concise description of the details of the rule violations, covering all elements and answering the questions of When? Where? Who? What? Why? and How?  Describe any injuries, property damage, use of force, etc.  Attach all related reports.

On 7/20/2016 at approximately 1752 hours, I, Sgt. Fenn was supervising mainline. During mainline, Offender Marks, Paul DOC# 321696 was being disruptive on the breezeway. I gave Offender Marks a directive to stand for search. He continued to be disruptive so I gave him a directive that I would be issuing him a sack lunch and that he can return to his unit. Offender Marks continued to argue and be disruptive on the breezeway. I gave Offender Marks 4 more directives to return to his unit and to disperse from my location. All directives were ignored, therefore I notified Stafford Creek Base that I had one refusing to disperse. Offender Henderson responded and applied wrist restraints. During the escort to F Unit, Offender Marks began to resist the escort and was actively trying to pull away from Officer Henderson. Due to him resisting orders, a spontaneous use of force was required to gain control and to stop the offenders actions of resisting staff's escort procedure.

| Reporting Employee/Contract Staff Name (Last, First) (Print Name) Fenn, Zack | | Shift 3rd | Days Off Sat/Sun |
|---|---|---|---|

| Evidence Taken ☒ Yes ☐ No | Evidence Case Number 16-369 | Evidence Locker Number # 4 | Photo/Video Submitted ☒ Yes ☐ No |
|---|---|---|---|

| Description of Evidence 1 DVD | | | |
|---|---|---|---|

| Placed in Pre-Hearing Confinement ☒ Yes ☐ No  Date _____ Administrative Segregation ☐ Yes ☒ No  Date | Recommended Sanction(s) N/A | |
|---|---|---|

### NAME(S) OF ALLEGED VICTIMS OF THIS INCIDENT

| Last, First 1) N/A | ☐ Employee/Contract Staff | ☐ Volunteer/Visitor/Other | ☐ Offender | DOC# N/A |
|---|---|---|---|---|
| Last, First 2) N/A | ☐ Employee/Contract Staff | ☐ Volunteer/Visitor/Other | ☐ Offender | DOC# N/A |

| Related Reports Attached | ☐ Supplemental | ☐ Medical |
|---|---|---|
| | ☐ Employee/Contract Staff Witness Statements | ☐ Other (Specify) |

| Reporting Employee/Contract Staff Signature *Zack Fenn* | Date 7/20/16 |
|---|---|
| Infraction Review Officer Signature and Name (Last/First) *LT. E.H...* MANIO, ERIC | Date 07/25/16 |

The contents of this document may be eligible for public disclosure.  Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.


**Department of Corrections**
WASHINGTON STATE

*MY COPY GRIEV. # (15)*

*TROSETH*

1st REPORT

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 07/20/2016 1752 hours | Offenders Involved: Marks, Paul | DOC Number 321696 | Living Unit H3 |
|---|---|---|---|
| Location Breezeway | Witnesses Involved: NA | | |
| Use of Force Incident? ☒ Yes   ☐ No | | | |
| Description of Incident: Refusing to disperse/Use of Force | Employees/Contract Staff/Volunteers Involved: Officer Troseth II, James, Officer Henderson, Arthur Sgt. Fenn, Zackary | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 07/20/2016 at approximately 1752 hours Sgt. Fenn, Zackary made radio notification of an offender refusing to disperse on the breezeway. I, Officer Troseth II, James, responded. When I arrived I assisted Officer Henderson, Arthur place offender Marks, Paul DOC# 321696 in wrist restraints. Once in wrist restraints Officer Henderson and I escorted offender Marks to F Unit with Sgt. Fenn filming the escort. I had control of offender Marks left side and Officer Henderson had control of offender Marks right side. During the escort offender Marks attempted to pull away from Officer Henderson, Officer Henderson assisted offender Marks to the ground while I maintained control of offender Marks left side. Once offender Marks was on the ground I assisted with putting him in to the recovery position. Once in the recovery position offender Marks stated he could no longer walk to F Unit. A wheelchair was brought from medical. I then assisted with placing offender Marks in to the wheel chair and finished escorting him to F Unit.

**Immediate Action Taken:**

| Signature | 07/20/2016 Date | Corrections Officer Title | James Troseth II Name (Please Print) |
|---|---|---|---|

**TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE**

| Date/Time Received | | | Incident Number |
|---|---|---|---|
| Investigation Assigned To | By | | Date |

**Comments:**

| Signature | Date |
|---|---|

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)

DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390, DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620

Scan Code GM02

**Department of Corrections**
WASHINGTON STATE

*NO EXTRA COPY?*
*ukook*
*MY COPY CO HENDERSON # 15*
*1st REPORT*

## INCIDENT REPORT

☐ Confidential

| Date/Time of Incident 07-20-2016 1751 | Offenders Involved: Marks,Paul | DOC Number 321696 | Living Unit H3 |
|---|---|---|---|
| Location outside the dinning hall | Witnesses Involved: Sgt. Fenn C/O Troseth | | |
| Use of Force Incident? ☒ Yes ☒ No | | | |
| Description of Incident: | Employees/Contract Staff/Volunteers Involved: | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7-20-16 at approx. 1751 outside of the dinning hall I C/O Henderson observed Sgt. Fenn give I/M Marks, Paul 321696 multiple directives to disperse and return to his unit. I/M Marks ignored all directives and continued to ignore directives and started to become tense. I C/O Henderson gave him verbal directives to cuff up and after multiple commands he was placed in restraints by myself and C/O Troseth. During the escort, offender Marks became tense and caused a spontaneous use of force due to him resisting the escort and attempting to pull away from my control. He was placed in the grass, ankle restraints were applied, and he was taken to F Unit in a wheel chair.

Immediate Action Taken: Placed in restraints

| Signature | 07-20-2016 Date | C/O 2 Title | Henderson,A Name (Please Print) |
|---|---|---|---|

### TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE

| Date/Time Received | | | Incident Number |
|---|---|---|---|
| Investigation Assigned To | | By | Date |

Comments:

Signature                                   Date

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential Information and will be redacted In the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14....

Distribution: ORIGINAL-Superintendent        COPY- Chief Investigator

DOC 21-917 (Rev. 10/23/15)        DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390, DOC 420.500, DOC 420.550, DOC 620.200, DOC 620.555

#13   2nd REPORT

# OFFENDER COPY



Department of
## Corrections
WASHINGTON STATE

**SERIOUS INFRACTION REPORT**

Facility: SCCC-IMU

Infraction Group Number: 26

| EMPLOYEE REPORT | | |
|---|---|---|

Name: MARKS, Paul D.          DOC #: 321696          Date: 7/20/2016

Number of rule(s) violated:   717 - REFUSAL/RESISTING/SAFETY          Time: 17:52
                              509 - REFUSE TO PROCEED/DISPERSE AREA

Place: Food Services

Details in full:  On 7/20/2016 at approximately 1752 hours, I, Sgt. Fenn was supervising mainline. During mainline, Offender AMrks, Paul DOC # 321696 was being disruptive on the breezeway. I gave the Offender Marks a directive to stand for search. He continued to be disruptive so I gave him a directive that I would be issueing him a sack lunch and that he can return to hs unit. Offender MArks continued to argue and be disruptive on the breezeway. I gave Offender MArks 4 more directives to return to his unit and disperse from my location. All directives were ignored, therefore I notified Stafford Creek Base that I had one refusing to disperse. Offender Henderson responded and applied wrist restraints. During the escort to F Unit, Offender Marks began to resist the escort and was actively trying to pull away from Officer Henderson. Due to him resisting orders, a spontaneous use of force was required to gain control and to stop the offenders actions of resisting staff's escort procedure.
Witnesses: Henderson, Arthur L.
Troseth, James M.

ZACKARY J. FENN
_____
Reporting Employee (Print)                              Reporting Employee Signature

| FACT FINDING DURING HEARING | | |
|---|---|---|

Was offender informed of right to remain silent? ☒Yes ☐No          Date of Hearing: 8/4/2016

PLEA:   GUILTY

        NOT GUILTY   717, 509

        NO PLEA

Did the offender make statement after being informed of his/her rights? ☒ Yes ☐ No

If so, what? At 5:30 H3 was called to dinner. I was walking to the chow hall, the Sgt he was a C/O in H4, my cellie struck a relationship with Fenn, that I/M and Sgt Fenn infracted me 3 times for being under the blanket. Sgt, Fenn saw me and told me to stand for search. There was no one to search me. Then I was told to go back to my Unit. Before I could move I was attacked by there C/O's. I have a back problem that causes my leg to go numb. I fell on the ground and the C/O's fell on top of me.

| DECISION | | |
|---|---|---|

FINDING: GUILTY   717, 509

         NOT GUILTY

         DISMISSED

         REDUCED

Facts and evidence found:Based upon I/M statement, physical evidence (DVD) and  Staff's written testimony
Sanction(s): 10 days segregation applied
10 days loss of good conduct time applied

Reason for sanction(s): Credit time served
Recommendations (Non-Sanction): 1st infraction of this kind. Within 320.150 Policy

L'Heureux, Thomas                    *Thomas L'Heureux*                    08-04-16
_____   _____   _____
Hearing Officer (Print)              Hearing Officer Signature              Date

Van Ogle, Dan                                    08-04-16
Superintendent/designee (Print)       Superintendent/designee Signature         Date

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and
will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

OFFENDER COPY

tHE FoLLowING ARe COMPLAIntS I MADE

that WEAt NOWARE. ~~KANGR~~ KANGAROO CouRt

HEARING AND APPEAL LettSR I Sent tHAt WENt

NOWARE

DOC 460.000

SUE LINDUX
DOC

**Department of Corrections**
WASHINGTON STATE

LOG I.D. NUMBER

16616720

OFFENDER COMPLAINT

CHECK ONE: ☒ Initial ☐ Emergency ☒ Appeal ☐ Rewrite

**RESIDENTIAL FACILITIES:** Send completed form to the Grievance Coordinator. Explain what happened, when, where, and who was involved or which policy/procedure is being grieved. Be as brief as possible, but include the necessary facts. Use only one complaint form. A formal grievance begins on the date the typed grievance forms are signed by the Coordinator. Contact a Department employee to report an emergency situation or to initiate an emergency complaint. Please attempt to resolve all complaints through the appropriate Department employee(s) before pursuing a grievance.

**NOTE:** Complaints must be filed within 20 working days of the incident. Appeals must be filed within 5 working days of receiving the response. Include log ID # on rewrite or response being appealed.

| Last Name | First | Middle | DOC Number | Facility/Office | Unit/Cell |
|-----------|-------|--------|------------|-----------------|-----------|
| MARKS | PAUL | DAVID | 321696 | SCCC | GA74 |

**COMMUNITY SUPERVISION:** Send completed copies to the directly to Grievance Program Manager, Offender Grievance Program Department of Corrections, P.O. Box 41129, Olympia WA 98504-1129.

| MAILING ADDRESS: STREET OR P.O. BOX | CITY, STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|

**COMPLAINT:** STAFF MISCONDUCT ███ 8-4-16 I HAD A SO CALLED HEARING. THOMAS L'EUREX WAS READING THE INFRACTION REPORT TO ME. I WAS IN 'FUN' AT THE TIME. ONE OF THE STATEMENTS WAS I WAS BEING DISRUPTIVE ON THE BREEZE WAY GOING TO CHOW. I ASKED WHAT DISRUPTIVE MEANT. HE IGNORED ME. I ASKED AGAIN. HE REPLIED " IT'S WHAT YOU ARE DOING NOW." I SAID "I'M JUST ASKING A QUESTION." HIS REPLY WAS

**SUGGESTED REMEDY:** IF YOU DON'T LIKE IT I'LL STOP THE HEARING NOW AND RETURN YOU TO YOUR CELL. THE HEARING WAS HELD UNDER DURESS

Mandatory ☐ Signature [signature] Date 8-4-16

**GRIEVANCE COORDINATOR'S RESPONSE**
Your complaint is being returned because:
☒ It is not a grievable issue.
☐ You requested to withdraw the complaint.
☐ You failed to respond to callout (sheet) on _____
☐ Administratively Withdrawn
☐ The formal grievance/appeal paperwork is being prepared.

Facility/Office SCCC     Date Received 8/25/16

☐ The complaint was resolved informally.
☐ Additional information and/or rewriting needed. (See below.)
     Return within 5 working days or by: _____
☐ No rewrite received
☐ Sent to _____ (facility) on _____ (date).

**EXPLANATION:** The disciplinary appeals process is available to you if you believe your rights were violated. Also remember 1 page per complaint

**D. Dahne CSIII**
Coordinator's Name (print)

Coordinator's Signature [signature]     Date 8/24/16

DOC 05-165 Front (Rev. 02/14/13)     DOC 310.100, DOC 550.100

PG



Department of
**Corrections**
WASHINGTON STATE

SUP
LABOR

## Confidential
## Offender Copy

LOG I.D. NUMBER
11610116720

**OFFENDER COMPLAINT**

CHECK ONE: ☑ Initial      ☐ Emergency      ☑ Appeal      ☐ Rewrite

**RESIDENTIAL FACILITIES:** Send completed form to the Grievance Coordinator. Explain <u>what happened</u>, <u>when</u>, <u>where</u>, and <u>who</u> was involved or which policy/procedure is being grieved. Be as brief as possible, but include the necessary facts. Use only one complaint form. A formal grievance begins on the date the typed grievance forms are signed by the Coordinator. Contact a Department employee to report an emergency situation or to initiate an emergency complaint. Please attempt to resolve all complaints through the appropriate Department employee(s) before pursuing a grievance.

**NOTE:**   Complaints must be filed within <u>20 working days</u> of the incident.  Appeals must be filed within <u>5 working days</u> of receiving the response. Include log ID # on rewrite or response being appealed.

| Last Name | First | Middle | DOC Number | Facility/Office | Unit/Cell |
|---|---|---|---|---|---|
| MARKS | PAUL | DAVID | 321696 | SCCC | G-A24 |

**COMMUNITY SUPERVISION:** Send completed copies of this form directly to Grievance Program Manager, Offender Grievance Program, Department of Corrections, P.O. Box 41129, Olympia, WA 98504-1129.

MAILING ADDRESS   STREET OR P.O. BOX          CITY, STATE          ZIP CODE      TELEPHONE

**COMPLAINT:**

AND ANY FINDINGS UNDER THESE CIRCUMSTANCES
~~ARE~~ (DURESS, TAKEN BACK to CELL IN IMU "F"UNIT) ARE
UNCONSTUTIONAL AND ILEGAL AND UNFAIR AND PREJUDICIAL
LISTEN TO THE TAPE!! IF THIS ISN'T STAFF MISCONDUCT
THEN WHAT IS IT

**SUGGESTED REMEDY:**



Mandatory   *Paul Marks*      8-4-16
            Signature            Date

| GRIEVANCE COORDINATOR'S RESPONSE | Facility/Office | Date Received |
|---|---|---|
| Your complaint is being returned because: | | |
| ☒ It is not a grievable issue. | ☐ The complaint was resolved informally. | |
| ☐ You requested to withdraw the complaint. | ☐ Additional information and/or rewriting needed. (See below.) | |
| ☐ You failed to respond to callout (sheet) on _____ | Return within 5 working days or by: _____ | |
| ☐ Administratively Withdrawn | ☐ No rewrite received _____ | |
| ☐ The formal grievance/appeal paperwork is being prepared. | ☐ Sent to _____ (facility) on _____ (date). | |

**EXPLANATION:**

| Coordinator's Name (print) | Coordinator's Signature | Date |
|---|---|---|
| | | |

**Confidential**
**Offender Copy**

*Back to your Cell*
*L'Heureux*

**Department of Corrections**
WASHINGTON STATE

| LOG I.D. NUMBER |
| --- |
| 11de1106023 |

**OFFENDER COMPLAINT**

**CHECK ONE:** ☑ Initial  ☐ Emergency  ☑ Appeal  ☐ Rewrite

**RESIDENTIAL FACILITIES:** Send completed form to the Grievance Coordinator. Explain what happened, when, where, and who was involved or which policy/procedure is being grieved. Be as brief as possible, but include the necessary facts. Use only one complaint form. A formal grievance begins on the date the typed grievance forms are signed by the Coordinator. Contact a Department employee to report an emergency situation or to initiate an emergency complaint. Please attempt to resolve all complaints through the appropriate Department employee(s) before pursuing a grievance.

**NOTE:** Complaints must be filed within 20 working days of the incident. Appeals must be filed within 5 working days of receiving the response. Include log ID # on rewrite or response being appealed.

| Last Name | First | Middle | DOC Number | Facility/Office | Unit/Cell |
| --- | --- | --- | --- | --- | --- |
| MARKS | PAUL | DAVID | 321696 | SCCC | GA24 |

**COMMUNITY SUPERVISION:** Send completed copies of this form directly to: Grievance Program Manager, Offender Grievance Program, Department of Corrections, P.O. Box 41129, Olympia WA 98504-1129

| MAILING ADDRESS – STREET OR PO BOX | CITY/STATE | ZIP CODE | TELEPHONE |
| --- | --- | --- | --- |

**COMPLAINT:** #4 GRIEVABLE Items.

I HAD A HEARING ON 84-16 BEFORE the HEARING STARTED I ASKED THOMAS L'HEUREUX WHAT "ACTING UP" MENT I ASKED HIM TWICE. HE RETORTED TO ME "it's WHAT YOU ARE DOING NOW AND IF YOU DON'T LIKE IT I'll STOP THE HEARING NOW AND HAVE YOU RETURNED to YOUR CELL. THIS WAS RETALIATION IN its DUREST FORM FOR ASKING A QUESTION. I'll SEND YOU BACK to YOUR CELL

**SUGGESTED REMEDY:** GET RID OF HIM. HE IS NOT QUALIFIED TO Be A HEARING OFFICER. PERSONAL ANIMOSITY TOWARDS INMATES

Signature / Mandatory    8-17-16

**GRIEVANCE COORDINATOR'S RESPONSE**
Your complaint is being returned because:
☑ It is not a grievable issue.
☐ You requested to withdraw the complaint.
☐ You failed to respond to callout (sheet) on ___
☐ Administratively Withdrawn ___
☐ The formal grievance/appeal paperwork is being prepared.

Facility/Office SCCC   Date Received 8/19/16

☐ The complaint was resolved informally.
☐ Additional information and/or rewriting needed. (See below.)
   Return within 5 working days or by: ___
☐ No rewrite received ___
☐ Sent to ___ (facility) on ___ (date).

**EXPLANATION:** You may address your issues through the disciplinary Appeals process

| Coordinator's Name (print) | Coordinator's Signature | Date |
| --- | --- | --- |
| D. Dahne CSIII | | 8/24/16 |

DOC 05-165 Front (Rev. 02/14/13)    DOC 310.100, DOC 550.100

 STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS

DISCIPLINARY HEARING APPEAL

FROM: **PAUL MARKS**
Offender Name (Print)

**321696**
DOC Number

**8-5-16**
Date

I am appealing the decision of my  ☒ serious infraction / WAC number (s) __509,556, 717__

☐ general infraction / WAC number (s) _____

hearing held on **8-4-16** at **SCC** by **Thomas L'Heureux**
Date          Location          Hearing Officer

The reason(s) for this appeal are:

I have been singled out for harrassment by SGT Fenn. and on
7/20/2016, while on my way to chow I was stpped and told to
stand for search... wherein I complied by outstretching my arms
and spreading my legs... I stood at this position for what seemed
like close to one minute and no pat search was initiated...
I can only asume that this was an attempt at comedy by the SGT
in front of the other oficers... When it became apparent that I
was to be detained, I compleied with all commands and was escourted
to "F" unit. I was manhandled while being walked to "F" unit and
I could not comply with instructions as my arms were being twised
and my head/neck were being forced into a painful position(see
video created/filmed by SGT Fenn on 7/20/16) This incident has
resulted in my ribs being bruised from numerous "knee kicks"
and hospitilization from a siezure brought on by the mistreatment

*It is recommended that no more than 2 pages are submitted, however, additional pages may be attached, if necessary.*

**(pg 1 of 2)**

X• Serious infraction appeals must be submitted to the Superintendent within 15 working days, after receiving notice
of the hearing officer's decision per WAC 137-28-380.

• Minor infraction appeals must be submitted within 24 hours after receiving notice of the action taken per
WAC 137-28-350. Attach a copy of the General Infraction Report with this appeal.

• Sanctions WILL NOT BE STAYED pending the outcome of an appeal.

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14

cont from pg 1....

on 7/20/16... (see medical out-trip to Aberden Medical center)I was treated for injuries sustained during the officer's excessive force. I assert that I am not guilty of these major infractions and that officers created this situation for entertainment and retaliation for prior grievance(s) relating to my purported failure to comply with vauge or overbroad instruction or my hearing loss. Please note that I was born in 1945 and cannot be expected to comply quickly with any complicated instructions. Thank you for your consideration in hearing this appeal. Also please note: I was unconscience and could not comply!! when I "laid down on the floor".....556

respectfully Submitted,

_Paul Marks_

Paul Marks 321696


Attachment(s)
WAC 137-28-380


pg 2 of 2

| LOG I.D. NUMBER |
| --- |
| 16661dob8 |

**Department of Corrections**
WASHINGTON STATE

Confidential Offender Copy

**OFFENDER COMPLAINT**

**CHECK ONE:** ☒ Initial    ☐ Emergency    ☒ Appeal    ☒ Rewrite

**RESIDENTIAL FACILITIES:** Send completed form to the Grievance Coordinator. Explain what happened, when, where, and who was involved or which policy/procedure is being grieved. Be as brief as possible, but include the necessary facts. Use only one complaint form. A formal grievance begins on the date the typed grievance forms are signed by the Coordinator. Contact a Department employee to report an emergency situation or to initiate an emergency complaint. Please attempt to resolve all complaints through the appropriate Department employee(s) before pursuing a grievance.

**NOTE:** Complaints must be filed within 20 working days of the incident. Appeals must be filed within 5 working days of receiving the response. Include log ID # on rewrite or response being appealed.

| Last Name | First | Middle | DOC Number | Facility/Office | Unit/Cell |
| --- | --- | --- | --- | --- | --- |
| MARKS | PAUL | DAVID | 321696 | SCCC | GA 24 |

**COMMUNITY SUPERVISION:** Send completed copies of this form directly to: Grievance Program Manager, Offender Grievance Program, Department of Corrections, P.O. Box 41129, Olympia WA 98504-1129.

| MAILING ADDRESS: STREET OR P.O. BOX | CITY STATE | ZIP CODE | TELEPHONE |
| --- | --- | --- | --- |

**COMPLAINT:** ON 7-20-16 ZACK FINN A SGT AT SCCC AT ABOUT 5:30 TOLD ME TO STAND FOR ~~QUIET~~ SURCH. I COMPLYED HE THEN ORDERED ME TO RETURN TO MY UNIT. BEFOR I COULD REACT I WAS ASSULTED BY OTHER CO'S

QUESTION 1. WHY ~~WAS~~ AS I SINGLED OUT 2. WHAT DOES DISRUPTIVE ON BREEZWAY MEAN? SEE INITIAL SERIOUS INFRACTION REPORT ATTACHMENT

THIS WAS A RETALATION, PREMATED, TO CAUSE INJURY TO ME

INITIAL SERIOUS INFRACTION REPORT IS ALL LIES. IF YOU ARE A GOOD INVESTAGATOR, ASK THE PROPER QUESTIONS!

**SUGGESTED REMEDY:** SGT ZACK FINN

FIRE HIM TODAY

Mandatory _Paul Mars_ (Signature)    8-17-20 (Date)

**GRIEVANCE COORDINATOR'S RESPONSE**
Your complaint is being returned because:

☒ It is not a grievable issue.
☐ You requested to withdraw the complaint.
☐ You failed to respond to callout (sheet) on _____
☐ Administratively Withdrawn
☐ The formal grievance/appeal paperwork is being prepared.
☐ Not accepted

| Facility/Office | Date Received |
| --- | --- |
| SCCC | 8/19/16 |

☐ The complaint was resolved informally.
☐ Additional information and/or rewriting needed. (See below.)
    Return within 5 working days or by: _____
☐ No rewrite received _____
☐ Sent to _____ (facility) on _____ (date).

**EXPLANATION:** Incident adjudicated through disciplinary process you may appeal through that process

(IGN 26)

Coordinator's Name (print) **D. Dahne CSIII**

Coordinator's Signature _____

Date 8/24/16

DOC 05-165 Front (Rev. 07/26/16)    DOC 310.100, DOC 550.100

Department of
**Corrections**
WASHINGTON STATE

Confidential
Offender Copy

**LOG I.D. NUMBER**

11del1de17

**OFFENDER COMPLAINT**

**CHECK ONE:** ☒ Initial   ☐ Emergency   ☒ Appeal   ☒ Rewrite

**RESIDENTIAL FACILITIES:** Send completed form to the Grievance Coordinator.  Explain <u>what happened</u>, <u>when</u>, <u>where</u>, and <u>who</u> was involved or which policy/procedure is being grieved.  Be as brief as possible, but include the necessary facts.  Use only one complaint form.  A formal grievance begins on the date the typed grievance forms are signed by the Coordinator.  Contact a Department employee to report an emergency situation or to initiate an emergency complaint.  Please attempt to resolve all complaints through the appropriate Department employee(s) before pursuing a grievance.

**NOTE:** <u>Complaints</u> must be filed within <u>20 working days</u> of the incident.  <u>Appeals</u> must be filed within <u>5 working days</u> of receiving the response.  Include log ID # on rewrite or response being appealed.

| Last Name MARKS | First PAUL | Middle DAVID | DOC Number 321696 | Facility/Office SCCC | Unit/Cell GA24 |
|---|---|---|---|---|---|

**COMMUNITY SUPERVISION:** Send completed copies of this form directly to: Grievance Program Manager Offender Grievance Program, Department of Corrections, P.O. Box 41129, Olympia WA 98504-1129

| MAILING ADDRESS - STREET OR P.O. BOX | CITY/STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|

**COMPLAINT:** ABout CO. TROSETH - SEE INCIDENT REPORT WAS HE WHO KNEED ME IN MY STOMAC AND TWISTED MY HEAD AND NECK? INVESTAGATER ASKS RIGHT QUESTIONS

**SUGGESTED REMEDY:** CO. TROSETH
FIRE HIM TODAY

Mandatory _(signature)_          8-17-16
Signature                                 Date

---

**GRIEVANCE COORDINATOR'S RESPONSE**

| Facility/Office SCCC | Date Received 8/19/16 |
|---|---|

Your complaint is being returned because:
- ☒ It is not a grievable issue.
- ☐ You requested to withdraw the complaint.
- ☐ You failed to respond to callout (sheet) on _____.
- ☐ Administratively Withdrawn _____
- ☐ The formal grievance/appeal paperwork is being prepared.

- ☐ The complaint was resolved informally.
- ☐ Additional Information and/or rewriting needed.  (See below.)
  Return within 5 working days or by: _____
- ☐ No rewrite received _____
- ☐ Sent to _____ (facility) on _____ (date).

**EXPLANATION:** You were infracted in regard to this incident. It hAs been Appropriately adjudicated through the disciplinary process. (See IGN 26)

| Coordinator's Name (print) **D. Dahne CSIII** | Coordinator's Signature  | Date 8/22/16 |
|---|---|---|

DOC 05-165 Front (Rev. 02/14/13)                                        DOC 310.100, DOC 550.100



Department of
**Corrections**
WASHINGTON STATE

**Confidential**
**Offender Copy**

LOG I.D. NUMBER

16616616

**OFFENDER COMPLAINT**

CHECK ONE: ☒ Initial   ☐ Emergency   ☐ Appeal   ☒ Rewrite

**RESIDENTIAL FACILITIES:** Send completed form to the Grievance Coordinator. Explain what happened, when, where, and who was involved or which policy/procedure is being grieved. Be as brief as possible, but include the necessary facts. Use only one complaint form. A formal grievance begins on the date the typed grievance forms are signed by the Coordinator. Contact a Department employee to report an emergency situation or to initiate an emergency complaint. Please attempt to resolve all complaints through the appropriate Department employee(s) before pursuing a grievance.

**NOTE:** Complaints must be filed within 20 working days of the incident. Appeals must be filed within 5 working days of receiving the response. Include log ID # on rewrite or response being appealed.

| Last Name | First | Middle | DOC Number | Facility/Office | Unit/Cell |
|---|---|---|---|---|---|
| MARKS | PAUL | DAVID | 321696 | SCCC | G-A24 |

**COMMUNITY SUPERVISION:** Send completed copies of this form directly to Grievance Program Manager, Offender Grievance Program, Department of Corrections, P.O. Box 41129, Olympia, WA 98504-1129.

| MAILING ADDRESS: STREET OR PO BOX | CITY, STATE | ZIP CODE | TELEPHONE |
|---|---|---|---|
| | | | |

**COMPLAINT:** ABOUT C/O HENDERSON SEE ATTACHMENT AT 5:30 H3 UNIT WAS CALLED tu ~~touch~~ DINNER SGT FINN TOLD ME TO COME TO HIS LOCATION. I COMPLYED. HE SAID "STAND FOR SURCH I DID THEN I WAS TOLD TO GO TO MY UNIT BEFOR I COULD REACT CO. HENDERSON ATTACKED ME PUT ME IN CUFFS AND ASSULTED ME. SEE INCIDENT REPORT. ALL LIES.

A GOOD INVESTAGATOR ASKS ALL THE RIGHT QUESTIONS
KNEED ME IN STOMAC
TWISTED MY HEAD & NECK

**SUGGESTED REMEDY:** C.O. HENDERSON

FIRE HIM toDAY

Mandatory ___[signature]___  8-17-16
Signature                    Date

---

**GRIEVANCE COORDINATOR'S RESPONSE**
Your complaint is being returned because:
☒ It is not a grievable issue.
☐ You requested to withdraw the complaint.
☐ You failed to respond to callout (sheet) on _____
☐ Administratively Withdrawn
☐ The formal grievance/appeal paperwork is being prepared.

Facility/Office: SCCC   Date Received: 8/19/16

☐ The complaint was resolved informally.
☐ Additional information and/or rewriting needed. (See below.)
   Return within 5 working days or by: _____
☐ No rewrite received _____
☐ Sent to _____ (facility) on _____ (date).

**EXPLANATION:** Not Grievable. This incident resulted in an infraction for which you were found guilty and will not be addressed through the grievance process (See IGN #216)

**D. Dabne CSIII**
Coordinator's Printed Name

Coordinator's Signature ___[signature]___   Date 8/24/16

DOC 05-165 Front (Rev. 02/14/13)                     DOC 310.100, DOC 550.100



**Department of**
# Corrections
WASHINGTON STATE

**DISCIPLINARY HEARING MINUTES AND FINDINGS**

Infraction Group Number: 26

| Offender Name(Last, First) | | | DOC Number | | |
|---|---|---|---|---|---|
| MARKS, Paul D. | | | 321696 | | |
| Date of Hearing 7/25/2016 ~~8/4/16~~ | Time of Hearing 1000 ~~1107~~ | Violation Date 7/20/2016 | Waived 24 Hours Notice | ☑ Yes | ☐ No |
| | | | Waived Appearance | ☐ Yes | ☑ No |

Offender's Plea:  Guilty                    Not Guilty  *509, 717*

| | | | |
|---|---|---|---|
| Hearing Impaired: | ☐ Yes | ☑ No | |
| Interpreter: | ☐ Yes | ☑ No | Name: |
| Competency Concerns: | ☐ Yes | ☑ No | |
| Department Advisor: | ☐ Yes | ☑ No | Name: |
| Confidential Information: | ☐ Yes | ☑ No | |
| Witness Statement Returned: | ☐ Yes | ☑ No | ☐ N/A |
| Witness Statement Denied: | ☐ Yes | ☑ No | ☐ N/A |
| Reason: | | | |

OF~~FENDER~~ ~~C~~OPY

**Hearing Summary** List Witnesses Testifying / Evidence Used / Reasons for Continuances, Video Review Summary/Any Relevant information:

at 5:30 H3 was called to diner. I was walking to the chow hall, the SGT, he was a c/o in H4, my cellie struck a relationship with Fern That I/m & SGT Fern infracted me 3 times for being under the blanket then SGT Fern sais me & told me to stand for search, to search me

**LIST EACH WAC 137-28 RULE VIOLATION SEPARATELY**

| VIOLATION NO. | FINDING | | | | REASON |
|---|---|---|---|---|---|
| | Guilty | Not Guilty | Dismissed | Reduced | |
| 509 | ✓ | | | | Based upon I/m's statement, physical evidence (DVD), & staff's written testimony |
| 717 | ✓ | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Sanction(s):** ~~10 day LOB~~ 10 days dseg CFTS

**Reason for sanction(s):** ~~10 day LOB~~ 3 infractions of this kind

then I was told to go to my unit. Before I could incue I was attack by the s c/o's. I have a back proble that cause my leg to be numb. I fell on the ground; the c/o fell top of me.

**Recommendations (Non-Sanction):**

**I Have Received a Copy of this Form:**

| X Unable to sign | C/O Shan | 8/4/16   1128 |
|---|---|---|
| Offender or Employee Witness (Print) | Offender or Employee Witness Signature | Date      Time |
| Thomas L'Heureux | Thomas L'Heureux | 4 aug 16   1128 hrs. |
| Hearing Officer (Print) | Hearing Officer Signature | Date      Time |

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

| PAGE | 1 OF 2 |
|---|---|

**Department of Corrections**
WASHINGTON STATE

**DISCIPLINARY HEARING MINUTES AND FINDINGS**

Infraction Group Number: 26

| Offender Name(Last, First)<br>MARKS, Paul D. | | | DOC Number<br>321696 | | |
|---|---|---|---|---|---|
| Date of Hearing<br>7/25/2016 | Time of Hearing<br>1000 | Violation Date<br>7/20/2016 | Waived 24 Hours Notice | ☑ Yes | ☐ No |
| | | | Waived Appearance | ☐ Yes | ☑ No |

8/4/16    1107

Offender's Plea:   Guilty _____   Not Guilty   509, 717

| Hearing Impaired: | ☐ Yes ☑ No | |
|---|---|---|
| Interpreter: | ☐ Yes ☑ No | Name: |
| Competency Concerns: | ☐ Yes ☑ No | |
| Department Advisor: | ☐ Yes ☑ No | Name: |
| Confidential Information: | ☐ Yes ☑ No | |
| Witness Statement Returned: | ☐ Yes ☑ No | ☐ N/A |
| Witness Statement Denied: | ☐ Yes ☑ No | ☐ N/A |
| Reason: | | |

OFFENDER COPY

Hearing Summary List Witnesses Testifying / Evidence Used / Reasons for Continuances, Video Review Summary/Any Relevant information:

at 5:30 H3 was called to dinner. I was walking to the chowhall, the SGT, he was a c/o in H4, my cellie struck a relationship with Fern That I'm & SGT Fenn infracted me 3 times for being under the blanket. There was an SGT Fenn saw me & told me to stand for search. to search me

LIST EACH WAC 137-28 RULE VIOLATION SEPARATELY

| VIOLATION NO. | FINDING | | | | REASON |
|---|---|---|---|---|---|
| | Guilty | Not Guilty | Dismissed | Reduced | |
| 509 | ✓ | | | | Based upon I/m's statement, |
| 717 | ✓ | | | | physical evidence (DVD), & |
| | | | | | staff's written testimony |
| | | | | | |
| | | | | | |
| | | | | | |

Sanction(s):   10 days LGD   60 days deg CFTS

Reason for sanction(s):   3 infractions of this kind

Recommendations (Non-Sanction):

then I was told to go to my unit. Before I could move I was attack by the s c/o's. I have a back problem that cause my leg to be numb. I fell on the ground & the c/o fell top of me.

I Have Received a Copy of this Form:

X Unable to sign
Offender or Employee Witness (Print)

C/o Phares
Offender or Employee Witness Signature

8/4/16    1128
Date    Time

Thomas L'Heureux
Hearing Officer (Print)

Thomas L'Heureux
Hearing Officer Signature

4 aug 16    1128 hrs,
Date    Time

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

PAGE  1  OF  2

About 2nd Imu trip



STATE OF WASHINGTON
DEPARTMENT OF CORRECTIONS

DISCIPLINARY HEARING APPEAL

FROM: **PAUL MARKS**     **321696**     **8-5-16**
        Offender Name (Print)   **RECEIVED**   DOC Number        Date

                                   SEP 09 2016

I am appealing the decision of my ☒ serious infraction / WAC number (s)   **509,556, 717**

                              ☐ general infraction / WAC number (s) _____

                              SCCC HEARINGS DEPARTMENT

hearing held on. **8-4-16** at **SCC** by **Thomas L'Heureux**
                    Date          Location          Hearing Officer

The reason(s) for this appeal are:

I have been singled out for harrasment by SGT Fenn. and on
7/20/2016, while on my way to chow I was stpped and told to
stand for search... wherein I complied by outstretching my arms
and spreading my legs... I stood at this position for what seemed
like close to one minute and no pat search was initiated...
I can only asume that this was an attempt at comedy by the SGT
in front of the other oficers... When it became apparent that I
was to be detained, I compleied with all commands and was escourted
to "F" unit. I was manhandled while being walked to "F" unit and
I could not comply with instructions as my arms were being twised
and my head/neck were being forced into a painful position(see
video created/filmed by SGT Fenn on 7/20/16) This incident has
resulted in my ribs being bruised from numerous "knee kicks"
and hospitilization from a siezure brought on by the mistreatment

*It is recommended that no more than 2 pages are submitted, however, additional pages may be attached, if necessary.

X. **(pg 1 of 2)**
   Serious infraction appeals must be submitted to the Superintendent within 15 working days, after receiving notice
   of the hearing officer's decision per WAC 137-28-380.

   • Minor infraction appeals must be submitted within 24 hours after receiving notice of the action taken per
     WAC 137-28-350. Attach a copy of the General Infraction Report with this appeal.

   • Sanctions WILL NOT BE STAYED pending the outcome of an appeal.

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be
redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14

Distribution: ORIGINAL-Central File   COPY- Hearing file: Offender
DOC 17-071 (Rev. 8/17/07)

DOC 460.006



# Department of Corrections
WASHINGTON STATE

## DISCIPLINARY HEARING NOTICE/APPEARANCE WAIVER

Infraction Group Number: 26

| Offender Name<br>MARKS, Paul D. | DOC Number<br>321696 | Facility<br>SCCC-IMU | Date<br>7/22/2016 |
|---|---|---|---|
| Type of Review | Hearing Scheduled Date<br>7/25/2016 | Location<br>SCCC-IMU | Time<br>1000 |
| ☒ Disciplinary | | | |

**Reason For Hearing** (Include all Allegations of Misconduct, if Appropriate)
717 - Causing a threat of injury to another person by resisting orders, assisted movement, or physical efforts to restrain
509 - Refusing a direct order by any staff member to proceed to or disperse from a particular area

OFFENDER COPY

Interpreter Name/Date _____

☐ I Have Been Provided A Certified Sign Language Interpreter
☐ I Have Been Provided With A Spanish Translation Of The Charges Against Me On

_____ AT _____ _____
Date          Time          Offender Signature

**Offender Rights:**

☒ You have the right to remain silent at the hearing. If you choose to remain silent, your silence may be used against you and the decision will be based on the evidence presented.

☒ You may waive your appearance at the hearing.

☒ You do not have a right to cross examine witnesses, have the infracting staff present at the hearing, have access to video, have access to audio from the offender phone system, or have a polygraph or other supplemental test(s).

☒ You may request witness statements and/or that staff, offenders, or other persons be present as witnesses, unless it is determined by the hearing officer that doing so would be unduly hazardous to facility safety or security:  (list witnesses below)

| EMPLOYEE NAME | STATEMENT | WITNESS | POSITION | OFFENDER NAME | STATEMENT | WITNESS | DOC NUMBER |
|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | | | ☐ | ☐ | |
| | ☐ | ☐ | | | ☐ | ☐ | |
| | ☐ | ☐ | | | ☐ | ☐ | |
| | ☐ | ☐ | | | ☐ | ☐ | |

☒ Criminal charges may be pending. Anything you say henceforth may be used against you in a court of law.

**Status Of Criminal Charges:** ☐ None   ☒ Unknown   ☐ Pending in _____
                                                                    County          Charges

☒ You have the right to review all related reports and a summary of any confidential information.

☒ You may request a Department advisor.                                              ☒ Requested   ☐ Waived

☒ You may request an interpreter if you are unable to read, speak, or understand English.   ☐ Requested   ☒ Waived

☒ You may request a certified sign language interpreter if you are hearing impaired.   ☐ Requested   ☒ Waived

☒ You may appeal the decision and/or sanctions to the superintendent/facility supervisor within 15 working days.

☒ If you are an indeterminate sentence case and within 60 days of an established release date, a guilty finding could result in the cancellation of your release date.

☒ I, X̲ ̲P̲a̲u̲l̲ ̲M̲a̲r̲k̲s̲, DOC # 321696 waive my right to the required 24 hours notice prior to being seen by the Disciplinary Hearing Officer and authorize the Disciplinary Hearing Officer to make a disposition regarding the information and evidence presented to the Disciplinary Hearing Officer as pertains to my particular situation.

☒ I, _____, DOC # _____ waive my right to attend this scheduled hearing. I Understand that the hearing will be held in my absence.

Copy of this form and infraction, with attachments received.

X ̲P̲a̲u̲l̲ ̲M̲a̲r̲k̲s̲  8-4-16  1010          C/O Crane  8-4-16  1010

Offender/Witness Signature      Date      Time          Employee Signature      Date      Time

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

Distribution:   **ORIGINAL** – Imaging System/Central File          **COPY**- Hearing Officer , Offender
DOC 05-093 (Rev. 12/08/15) E-Form                                    DOC 450.500, DOC 460.000
Scan Code: Packet (IF01), Individual (SD07)                          [4-4236]



**DISCIPLINARY HEARING NOTICE/APPEARANCE WAIVER**

Department of
**Corrections**
WASHINGTON STATE

Infraction Group Number: 26

| Offender Name | DOC Number | Facility | Date |
|---|---|---|---|
| MARKS, Paul D. | 321696 | SCCC-IMU | 7/22/2016 |

| Type of Review | Hearing Scheduled Date | Location | Time |
|---|---|---|---|
| ☐ Disciplinary | 7/25/2016 | SCCC-IMU | 1000 |

**Reason For Hearing** (Include all Allegations of Misconduct, if Appropriate)
717 - Causing a threat of injury to another person by resisting orders, assisted movement, or physical efforts to restrain
509 - Refusing a direct order by any staff member to proceed to or disperse from a particular area

OFFENDER COPY

Interpreter Name/Date

☐ I Have Been Provided A Certified Sign Language Interpreter
☐ I Have Been Provided With A Spanish Translation Of The Charges Against Me On

_____ Date _____ AT _____ Time _____ Offender Signature

**Offender Rights:**

☑ You have the right to remain silent at the hearing. If you choose to remain silent, your silence may be used against you and the decision will be based on the evidence presented.

☑ You may waive your appearance at the hearing.

☑ You do not have a right to cross examine witnesses, have the infracting staff present at the hearing, have access to video, have access to audio from the offender phone system, or have a polygraph or other supplemental test(s).

☑ You may request witness statements and/or that staff, offenders, or other persons be present as witnesses, unless it is determined by the hearing officer that doing so would be unduly hazardous to facility safety or security:  (list witnesses below)

| EMPLOYEE NAME | STATEMENT | WITNESS | POSITION | OFFENDER NAME | STATEMENT | WITNESS | DOC NUMBER |
|---|---|---|---|---|---|---|---|
| | ☐ | ☐ | | | ☐ | ☐ | |
| | ☐ | ☐ | | | ☐ | ☐ | |
| | ☐ | ☐ | | | ☐ | ☐ | |
| | ☐ | ☐ | | | ☐ | ☐ | |

☑ Criminal charges may be pending.  Anything you say henceforth may be used against you in a court of law.

**Status Of Criminal Charges:**   ☐ None   ☑ Unknown   ☐ Pending in _____ _____
                                                                                           County            Charges

☑ You have the right to review all related reports and a summary of any confidential information.

☑ You may request a Department advisor.                                                     ☑ Requested   ☐ Waived

☑ You may request an interpreter if you are unable to read, speak, or understand English.   ☐ Requested   ☐ Waived

☑ You may request a certified sign language interpreter if you are hearing impaired.        ☐ Requested   ☑ Waived

☑ You may appeal the decision and/or sanctions to the superintendent/facility supervisor within 15 working days.

☑ If you are an indeterminate sentence case and within 60 days of an established release date, a guilty finding could result in the cancellation of your release date.

☑ I, _X Paul Marks_ , DOC # _321696_ waive my right to the required 24 hours notice prior to being seen by the Disciplinary Hearing Officer and authorize the Disciplinary Hearing Officer to make a disposition regarding the information and evidence presented to the Disciplinary Hearing Officer as pertains to my particular situation.

☑ I, _____ , DOC # _____ waive my right to attend this scheduled hearing.  I Understand that the hearing will be held in my absence.

Copy of this form and infraction, with attachments received.

X _Paul Marks_  8-4-16  1010          C/O _Crane_  8-4-16  1010
Offender/Witness Signature   Date   Time          Employee Signature   Date   Time

The contents of this document may be eligible for public disclosure.  Social Security Numbers are considered confidential information and will be redacted in the event of such a request.  This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

Distribution:   ORIGINAL – Imaging System/Central File          COPY- Hearing Officer , Offender
DOC 05-093 (Rev. 12/08/15) E-Form                                                    DOC 450.500, DOC 460.000
Scan Code: Packet (IF01), Individual (SD07)                                          [4-4236]

2ND IMU TRIP

cont from pg 1....

on 7/20/16... (see medical out-trip to Aberden Medical
center)I was treated for injuries sustained during the
officer's excessive force. I assert that I am not guilty
of these major infractions and that officers created this
situation for entertainment and retaliation for prior
grievance(s) relating to my purported failure to comply
with vauge or overbroad instruction or my hearing loss.
Please note that I was born in 1945 and cannot be expected
to comply quickly with any complicated instructions.
Thank you for your consideration in hearing this appeal.
Also please note: I was unconscience and could not comply!!
when I "laid down on the floor"....556

                              respectfully Submitted,


**RECEIVED**

SEP 09 2016

SCCC HEARINGS DEPARTMENT

                              Paul Marks 321696



Attachment(s)
 WAC 137-28-380




                    pg 2 of 2

**Department of
Corrections**
WASHINGTON STATE

**DISCIPLINARY HEARING APPEAL DECISION**

Infraction Group Number: 26

| To<br>MARKS, Paul D. | DOC #<br>321696 | Date<br>9/9/2016 | |
| From<br>Hearing Dept | Superintendent/Designee<br>Assoc Supt Jeneva Cotton | | |

# OFFENDER COPY

On **8/4/2016**, a Department Hearing was held for the WAC violation(s) listed:

717 - Causing a threat of injury to another person by resisting orders, assisted movement, or physical efforts to restrain

509 - Refusing a direct order by any staff member to proceed to or disperse from a particular area

The Hearing Officer found you guilty of committing one or more violations and imposed the following

sanction (s): 
10 days segregation applied
10 days loss of good conduct time applied

On **9/9/2016**, an appeal of this hearing was received from you in which you requested review of the Hearing Officer's decision and/or sanction.

You appealed:

☒ The finding(s) of guilt
☐ The sanction(s) imposed

In summary, your appeal states:

That you complied with all commands while being escorted to F Unit and that you were "mistreated". You also state you were "born in 1945 and cannot be expected to comply quickly with any complicated instructions."

In reviewing your appeal, I have made the following determination(s):

☒ The disciplinary hearing process was conducted in accordance with Due Process requirements and WAC 137-28.
☒ At least 24 hours advance written notice was provided or you waived the 24 hour advance notice in writing/with witness.
☒ You were provided an opportunity to call witnesses and present documentary evidence on your behalf.  If witness(es) were denied, the Hearing Officer provided you with written reason(s) for the denial.
☒ The finding was made by an impartial (i.e., not viewed as biased or having witnessed the incident being heard) Hearing Officer.
☒ A written statement of the finding(s) and sanction(s) imposed was provided to you and includes the evidence relied upon and the reason(s) for the decision.
☒ Sanction(s) are in accordance with DOC Presumptive Sanction Guidelines and WAC 137-28.

If confidential information was submitted, I have confirmed:

☐ The Hearing Officer made an independent determination regarding reliability of the confidential source(s), credibility of the information, and safety concerns that justify non-disclosure of the confidential source(s) of information.
☐ The above information was documented on DOC 17-072 Confidential Information Review Checklist.

On behalf of the Superintendent, I have investigated your appeal and find that:

**All pertinent information has been collected and reviewed.  The information received and video evidence supports the findings of guilt for the violation of WAC 717 and WAC 509 and the sanctions are within established guidelines. You did not comply with directives and therefore the guilty finding for both violations is affirmed.**

☒ You were found guilty as explained above.
☐ There was insufficient evidence for a finding of guilt as explained below.
☐ A procedural error occurred as explained below.
☒ The sanction was appropriate, and you were provided with the Hearing Officer's written report.
☐ Other:

AND THEREFORE, the decision of the Hearing Officer is:

☒ Affirmed
☐ Remanded for a new hearing. (You will be notified of the hearing date).
☐ Reversed
☐ Reduced
☐ Modified as follows:

The contents of this document may be eligible for public disclosure.  Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

Distribution: Original –Offender        COPY–Superintendent, Imaging System/Central File, Hearing Officer
DOC 09-197 (Rev. 12/08/15) E-Form                                                                DOC 460.000
Scan Code: Packet (IF01), Individual (HR04)

7-20-16

# 2 ND EVENT

+

MEDICAL RECORDS
OF 7-20-16
TO 7-22-16 ?

+

PUBLIC DISCLOSURE
DOCUMENTS

PUBLIC

DISCLOSURE

RADIO
SPEAKERS PHONE 9, RECORDING
5:15 - 6:15 INSIDE IMU



STATE OF WASHINGTON
# DEPARTMENT OF CORRECTIONS
P.O. Box 41100 • Olympia, Washington 98504-1100

November 15, 2016

Paul Marks, DOC#321696
Stafford Creek Corrections Center
IMU – FA05
191 Constantine Way
Aberdeen, WA  98520

Mr. Marks:

We received your payment of $4.87 for the 1st installment of your public records request, **PRU-43634**, for any and all incident reports, including but not limited to use of force against you on or about July 20, 2016, all related reports that directly or indirectly involve the events that led to your transportation to the outside hospital.  This request also includes the times and dates you were transported to and from Stafford Creek Corrections Center facility, from July 20, 2016 to July 28, 2016.

Enclosed is the 1st installment of 22 pages responsive to your request. Redactions have been made as appropriate per statute and are noted on the denial form, which is also enclosed. Please note that we provided these documents to you in accordance with the Public Records Act. By making agency documents available to you, the Department is not responsible for your use of the information or for any claims or liabilities that may result from your use or further dissemination.

We will now begin processing the next installment of your request, and will update you on the status within 61 business days, *on or before* February 13, 2017.

Sincerely,

*Mara Rivera*
Public Disclosure Specialist
Department of Corrections
Public Disclosure Unit
P.O. Box 41118
Olympia, WA 98504

MR: PRU-43634

*" Working Together for SAFE Communities"*

recycled paper

**STATE OF WASHINGTON**
**DEPARTMENT OF**
**CORRECTIONS**

**AGENCY DENIAL FORM / EXEMPTION LOG**

Date:   11/15/2016                Tracking Number:   PRU-43634 1st Installment

Requestor Name and
Address:
                Paul Marks, DOC#321696
                Stafford Creek Corrections Center
                IMU – FA05
                191 Constantine Way
                Aberdeen, WA  98520

Denial of Disclosure Decided by (Name/Title):    Mara Rivera, Public Records Specialist

YOUR REQUEST FOR DISCLOSURE OF THE RECORDS IDENTIFIED WITHIN THE CORRESPONDING
MATERIALS HAS BEEN DENIED TO THE EXTENT AND FOR THE REASON(S) SET FORTH BELOW.

Each exemption applied to the records is associated with a number in the **EXEMPTIONS SECTION** below, which
explains the exemption(s) relied upon to make redactions to the records.

## EXEMPTIONS SECTION

The following section identifies and explains the exemptions relied upon in the above table(s):

**5-COMPUTER SECURITY AND INMATE PERSONAL IDENTIFICATION (IPIN) NUMBERS** – These
records contain computer access paths, codes, IPIN telephone access codes, or similar information, the release of which
may compromise the security of the computer and/or telecommunication systems and information, and have been
redacted per the following citation:

RCW 42.56.420(4) - "Information regarding the infrastructure and security of computer and telecommunications
networks, consisting of security passwords, security access codes and programs, access codes for secure software
applications, security and service recovery plans, security risk assessments, and security test results to the extent that
they identify specific system vulnerabilities."

## APPEAL FORM

You may appeal all or any portion of this decision to the **DOC Appeals Office** by completing the following portion of this form and mailing it to the address designated.

1.  A public disclosure appeal may be submitted if you believe a public disclosure decision should be considered for reversal due to legal considerations.

2.  Only the original requestor may appeal a public disclosure response.

3.  Only one public disclosure request may be appealed per form.

4.  An inquiry about timeframes on a pending request does not constitute an appeal, but will be addressed as an inquiry.

5.  This appeal form may not contain a new public disclosure request.  Any new request must be sent to the Public Disclosure Unit per WAC 137-08-090.


PDU Tracking Number:  _____


Requestor Name:  _____         DOC # (if applicable):  _____


Mailing Address:  _____

_____

_____


Describe the specific exemption(s) and/or specific page(s) you wish to appeal:
(include why you disagree with the original denial decision)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____


Mail completed form to:        Public Disclosure Agency Appeals Office
                               Post Office Box 41103
                               Olympia, WA  98504-1103

OMNI: IMRS - Search Incident Report                                Page 1 of 2

Printed by: Eric Mainio

**Incident Information**

| | |
|---|---|
| Incident Number: | 16-46460 |
| Facility : | SCCC |
| Location : | Breezeway |
| Place : | Breezeway |
| Confidential ? : | No |
| Facility Lockdown ? : | No |
| Restricted Movement ? : | No |
| STG Incident ? : | No |
| Property Damage ? : | No |
| Date and Time of Incident : | 07/20/2016 17:52 |
| Reporting Staff : | Mainio, Eric W |
| Date and Time Submitted : | 07/20/2016 21:09 |
| Creating Staff: | Mainio, Eric W |

**Primary Incident Type**

| | | |
|---|---|---|
| Primary Incident Category : | Offender | |
| Primary Incident Type : | Use of Force | |
| | Physical | Yes |
| | OC | No |
| Modifiers : | EID/Taser | No |
| | Specialty Impact | No |
| | Unholstered Firearm | No |
| Mandarory Confidential : | N | |

**Involved Offenders**

| | | | | |
|---|---|---|---|---|
| Doc Nb : 321696 | Name : MARKS, Paul D | Gender : Male | Race : White | STG Group: |
| Community Concerns: No | Active Warrant: No | Injured ? : No | Hospitalized ? : No | |

**Involved Staff**

| Name | Position Description | Injured ? : | Hospitalized ? : |
|---|---|---|---|
| Name : Fenn, Zackary J | Position Description : Corrections/Custody Officer 3 | No | No |
| Name : Henderson, Arthur L | Position Description : Corrections/Custody Officer 2 | No | No |
| Name : Troseth, James M II | Position Description : Corrections/Custody Officer 2 | No | No |
| Name : Malone, Kimberly L | Position Description : Registered Nurse 2 | No | No |

**Other Participants**

Type : Gender: Last name : First name : Comment : Injured ? : No Hospitalized ? : No

**Other Agencies Contacted**

OMNI: IMRS - Search Incident Report                                          Page 2 of 2

| Agency Type | Agency Name | Date Contacted | Time Contacted | Comments |
|-------------|-------------|----------------|----------------|----------|

**Narrative**

| Date | Narrative |
|------|-----------|
| 07/20/2016 | On 07/20/16 at approximately 1752 hours, Sgt. Fenn directed Offender Marks #321696 to stand for search on the breezeway in front of the dining halls. During the process Marks became verbally disruptive and was given multiple directives to return to his unit. Marks refused all directives and Sgt. Fenn made notification of an offender refusing to disperse. Staff on scene placed Marks into restraints without incident. Sgt. Fenn began video recording and directed Officers Henderson and Troseth to escort Marks to Segregation. During the escort Marks tried to pull away from Officer Henderson and resist his escorted movement. Henderson used force by maintaining control of Marks right arm. His control was failing and Henderson applied a soft knee strike to his right side in an attempt to distract and keep him from pulling away. At this point Marks complied and followed directives from Sgt. Fenn to stop resisting. Marks was placed on his knees at which time he said he could not walk. A wheelchair was requested and Marks was transported by wheelchair for the remainder of the escort. In F-unit Marks was assessed by RN Malone and she could not identify any injuries from the Use of Force. Marks remained non-compliant and his restraints were removed in the holding cell. Marks made no comment on the use of force. Documentation gathered and Duty Officer Jean Anderson was notified. |

(b)



Department of
**Corrections**
WASHINGTON STATE

**SHIFT COMMANDER / UNIT SUPERVISOR
USE OF FORCE REPORT**

| Offender(s) Name | | | DOC Number(s) | |
|---|---|---|---|---|
| Marks, Paul | | | 321696 | |
| Facility/Location | | Date | Time | |
| SCCC / Breezeway | | 07/20/16 | 1752 Hours | |
| IMRS Number | | Emergent | OC Used | |
| 16-46460 | | ☒ Yes  ☐ No | ☐ Yes  ☒ No | |

VERBAL
DISR ✱ ✱

### DETAILED DESCRIPTION OF INCIDENT
*(Include actions occurring before, during, and after force was used)*

On 07/20/16 at approximately 1752 hours, Sgt. Fenn directed Offender Marks #321696 to stand for search on the breezeway in front of the dining halls. During the process Marks became verbally disruptive and was given multiple directives to return to his unit. Marks refused all directives and Sgt. Fenn made notification of an offender refusing to disperse. Officer Henderson was on scene and placed Marks into restraints without incident. Sgt. Fenn began video recording and directed Officers Henderson and Troseth to escort Marks to Segregation. During the escort Marks tried to push into and pull away from Officer Henderson and resist his escorted movement. Henderson used force by applying upward pressure to Marks right arm in an attempt to keep him from pulling away. This attempt at control failed and Henderson applied a soft knee strike to Marks' right side mid-section in an attempt to distract and keep him from pulling away. At this point Marks complied and followed directives from Sgt. Fenn to stop resisting. Marks was placed on his knees at which time he said he could not walk and refused all further staff directives. A wheelchair was requested and Marks was transported by wheelchair for the remainder of the escort. In F-unit Marks was assessed by RN Malone and she could not identify any injuries from the Use of Force. Marks remained non-compliant and his restraints were removed in the holding cell. Marks made no comment on the use of force. Documentation gathered and Duty Officer Jean Anderson was notified.

### DESCRIPTION OF WHAT FORCE WAS USED

✱→ Officer Henderson had control of Marks' right wrist and elbow during the escort. As Marks attempted to pull away from Henderson's control, Henderson applied upward pressure on Marks right arm in an attempt to stop his aggressive movements. Henderson's attempt to maintain control was ineffective so he delivered a soft knee strike to Marks' mid-section. Once Marks was in a kneeling position, ←✱ Henderson placed his hands on the back of Marks' head and held his head in a position to face forward.

### OFFENDER COMMENTS

Offender Marks would not comment on the use of force.

### INJURIES

No injuries were noted for Offender Marks or the staff involved.

| Restraints Used | ☒ Yes  ☐ No | Type: Mechanical Wrist and Ankle Restraints | |
|---|---|---|---|
| Checked by Health Services | ☒ Yes  ☐ No | Time | Health Services Employee/Contract Staff Name(s) |
| | | 1800 Hours | RN Malone |

✱

DOC 21-425 (Rev. 06/29/16)   DOC 410.200, DOC 420.250, DOC 460.000, DOC 630.540, DOC 630.180

PDU-43634 1st Installment  000003

## NAME(S) OF EMPLOYEES DIRECTLY INVOLVED

| NAME | TITLE | INVOLVEMENT |
|---|---|---|
| Zack Fenn | Shift Sergeant / QRST Leader | Strike Team Leader / Supervisor Use of Force |
| Arthur Henderson | Quick Response Strike Team | Escort Officer / Used force |
| James Troseth III | Quick Response Strike Team | Escort Officer |
| | | |
| | | |

## MISCELLANEOUS

| | | Date | Time Hours |
|---|---|---|---|
| Approval for force option(s) obtained | ☐ Yes ☒ No ☐ N/A | | |
| Approval received from | Name / Title | | |
| Reported to the Superintendent/Facility Duty Officer | ☒ Yes ☐ No ☐ N/A | Date 07/20/16 | Time 1900 Hours |
| Reported to the Assistant Secretary for Prisons/ Headquarters Duty Officer | ☐ Yes ☒ No ☐ N/A | Date | Time Hours |

| | | |
|---|---|---|
| Photographs Taken | ☐ Yes ☒ No | Photographer's Name |
| Video Recorded | ☒ Yes ☐ No | Camera Operator's Name Zack Fenn | Reason Not Recorded |
| Property Damage | ☐ Yes ☒ No | Description |
| Law Enforcement Notified | ☐ Yes ☒ No | Date / Time Hours | Name |

## PREVENTATIVE AND/OR CORRECTIVE ACTIONS SUGGESTED

In review of the escort video it is evident the wrist restraints were applied improperly, the escort officer was utilizing an improper escort contact point, and he was not utilizing required Personal Protective Equipment (PPE) i.e. gloves.

The officer also responded to the offender's resistance with ineffective control techniques; which are not part of the staff Use of Force Training curriculum, and are likely a partial result as to why the officer elevated his force options.

I suggest the officer involved receive remedial or additional In-Service Use of Force training (Control Impedance Tactics). The above errors and proper procedures are all covered in the current In-Service training for Custody Staff.

## SIGNATURES

### SHIFT COMMANDER / UNIT SUPERVISOR

☐ I have reviewed the actions of the employees involved and find that they have acted in accordance with all Department policies.

☒ I do not concur with actions of the employees involved and I recommend that an investigation of the incident be initiated.

Comments:
When reviewing the exact nature of this incident and considering the totality of circumstances facing the staff on scene, I find the use of impedance tactics unnecessary for the level of resistance exhibited by the offender. This conclusion is based upon my experience and level of training. It is also my conclusion that the officer increased his level of force due to improper and failed Control Tactics and his only intent was to regain control.

LT. ERIL MANO
Shift Commander/CUS Signature (Print Name)

Shift Commander/CUS Signature

07/25/16
Date

DOC 21-425 (Rev. 06/29/16)

Page 2 of 4

DOC 410.200, DOC 420.250, DOC 460.000, DOC 630.540, DOC 830.180

## CAPTAIN

☐ I have reviewed the actions of the employees involved and find that they have acted in accordance with all Department policies. .

☒ I do not concur with actions of the employees involved and I recommend that an investigation of the incident be initiated.

Comments: *I concur with Lt. Mainio's Assessment. The level of resistance offered by the offender did not justify the level of force used.*

_Frank Rivert_
Captain Signature (Print Name)

_[signature]_
Captain Signature

7/26/16
Date

DOC 21-425 (Rev. 06/29/16)

DOC 410.200, DOC 420.250, DOC 460.000, DOC 630.540, DOC 830.180

PDU-43634 1st Installment  000005

⑨

| ASSOCIATE SUPERINTENDENT |
|---|
| ☐ I have reviewed the actions of the employees involved and find that they have acted in accordance with all Department policies. |
| ☒ I do not concur with actions of the employees involved and I recommend that an investigation of the incident be initiated. |

Comments:

*I concur with the Lt. and Captains assessment. Force used was excessive.-*

 

 

Dan Van Ogle
_____
Associate Superintendent (Print Name)

DVO
_____
Associate Superintendent Signature

7-27-16
_____
Date

The contents of this document may be eligible for public disclosure. This form is governed by executive Order 0-03, RCW 42.56, and RCW 40.

Distribution:  ORIGINAL - Superintendent          COPY - Shift Commander/Unit Supervisor

DOC 21-425 (Rev. 06/29/16)

Page 4 of 3

DOC 410.200, DOC 420.250, DOC 460.000, DOC 630.540, DOC 830.180

(10)



**Department of**
# Corrections
WASHINGTON STATE

**USE OF FORCE REPORT**

| Date/Time of Incident<br>07-20-2016  1755 Hours | Offender(s) Involved:<br>Marks,Paul | DOC Number(s)<br>321696 | Living Unit/Cell<br>H-3 010L |
|---|---|---|---|
| Facility/Location<br>SCCC on the Breezeway | Employees Involved: Henderson, Arthur | | |
| OC Used? ☐ Yes.   ☒ No | Other Witnesses: Sgt. Fenn, Zack and Officer Troseth, James II | | |
| Were you injured? ☒ Yes ☒ No | | | |

**DETAILED DESCRIPTION OF INCIDENT**

(Include a summary of the situation leading up to the use of force and your actions taken to mitigate the need to use force. Attach additional sheets, if necessary.)

On 7-20-2016 at approximately 1755 while doing an escort to F Unit Offender Marks, Paul DOC# 321696 became resistive during the escort. He started to tense up and pull away. He was given multiple directives to stop resisting and continue to look forward. Offender Marks continued to resist the escort and verbal directives form myself and Sgt. Fenn were ignored. Offender Marks again started to pull away from my control and at this time I attempted to give a soft knee strike to his side in order to gain control but it failed and the offender was still resistive and pulling away. Sgt. Fenn at this time gave a directive to place the offender on the grass. Offender Marks complied and sat on the grass while myself and Officer Troseth controlled him. Leg restraints were then applied and the offender was escorted to F Unit where he was placed in a holding cell.

**DETAILED DESCRIPTION OF OFFENDER RESISTANCE AND FORCE OPTION USED**

(Include the level of resistance displayed by the offender(s) and the exact force option(s) you used to overcome the resistance. Attach additional sheets, if necessary.)

During the escort, I was controlling offender Marks, Paul DOC# 321696 right side when he began to tense his right arm and body and began to pull away from my control. Due to him pulling away, I attempted to pull on his right hand side by his elbow which was ineffective in stopping him pulling away from my grasp, so I delivered a soft knee strike to his mid section. Once he was compliant, I assisted him on the ground in the grass. Offender Marks continued to try to turn his head to face me and ignored directives to face forward, therefore I maintained control of his head until he was placed in to a wheelchair and escorted to F Unit.

| Henderson, Arthur | 07-20-2016 | Correctional Officer 2 | |
|---|---|---|---|
| Name (Print) | Date | Title | Signature |

DOC 21-424 (Rev. 10/23/15)                    DOC 410.200, DOC 410.205, DOC 410.210, DOC 410.230, DOC 420.255

| TO BE COMPLETED BY SHIFT COMMANDER / UNIT SUPERVISOR | |
|---|---|
| Date/Time Received<br>07/20/16   2030 hours | IMRS Number<br>16-46460 |

Comments:
*The use of impedance tactics to address an offender exhibiting Active Resistance is in line with DOC 410.200 Use of Force Options Guidelines.  However based on the exact nature of this incident, I cannot find the use of a knee strike (impedance tactics) reasonably necessary for the level of resistance exhibited by the offender. This conclusion is based upon my experience and level of training. It is also my conclusion though that the officer increased his level of force due to improper and failed Control Tactics and his only intent was to regain control.*

| Lt. Eric Malnio | 07/25/16 | Lieutenant | |
|---|---|---|---|
| Name (Print) | Date | Title | Signature |

**The contents of this document may be eligible for public disclosure. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.**

Distribution: ORIGINAL - Superintendent        COPY - Shift Commander/Unit Supervisor, Employee
DOC 21-424 (Rev. 10/23/15)                                    DOC 410.200, DOC 410.205, DOC 410.210, DOC 410.230, DOC 420.255

PDU-43634 1st Installment  000008




Department of
**Corrections**
WASHINGTON STATE

## INCIDENT REPORT

☐ Confidential

| Date/Time of Incident<br>07/20/2016 at 1755 hours | Offenders Involved:<br>Marks, Paul | DOC Number<br>321696 | Living Unit<br>H3 |
|---|---|---|---|
| Location<br>Breezeway | Witnesses Involved: N/A | | |
| Use of Force Incident? ☒ Yes    ☐ No | | | |
| Description of Incident: Spontaneous<br>Use of Force due to offender resisting<br>escort | Employees/Contract Staff/Volunteers Involved: Sgt. Zack Fenn, Officer<br>Henderson, Arthur, and Officer Troseth, James II | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 07/20/2016 at approximately 1755 hours, I, Sgt. Fenn was supervising and recording via video camera the escort to F Unit that included Officer Henderson, Officer Troseth, and Offender Marks, Paul DOC# 321696. Offender Marks was being escorted to F Unit for refusing to disperse. During the escort, approximately 200 feet from Master Control, Offender Marks began to resist the escort by pulling away from Officer Henderson. Officer Henderson used force in an attempt to gain compliance and to maintain control of the offender. Multiple directives were given to Offender Marks to stop resisting. Once Offender Marks stopped resisting, I asked him if he could walk, which he stated no. I then directed my staff to walk him to the grass where we had the offender sit on his bottom. Marks continued to turn his head to face staff and more directives were given to face forward. Marks continued to try to turn his head towards staff, and to prevent injury to his wrists, Offender Marks was placed in the "recovery position" (on his side) until ankle restraints could be applied and a wheel chair arrived. Once ankle restraints and the wheel chair arrived, offender Marks was escorted to F Unit with no other issues. In the wheel chair, the offender became unresponsive to staff and refused to talk. F Unit staff took over the escort once inside F Unit. In F Unit, I conducted a Use of Force debrief with all staff involved.

| Immediate Action Taken: I began video taping the escort, and supervised staff on the escort and during the use of force. |
|---|

| Signature | Date<br>07/20/2016 | Title<br>Correctional Sergeant | Name (Please Print)<br>Zack Fenn |
|---|---|---|---|

### TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

| Comments: |
|---|

| Signature | Date |
|---|---|

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)          DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
                                    DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620
Scan Code GM02



**Department of**
**Corrections**
WASHINGTON STATE

# INCIDENT REPORT

☐ Confidential

| Date/Time of Incident | Offenders Involved: Marks,Paul | DOC Number | Living Unit |
|---|---|---|---|
| 07-20-2016 1751 | | 321696 | H3 |
| Location | Witnesses Involved: Sgt. Fenn C/O Troseth | | |
| outside the dinning hall | | | |
| Use of Force Incident? ☐ Yes    ☒ No | | | |
| Description of Incident: | Employees/Contract Staff/Volunteers Involved: | | |
| | | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7-20-16 at approx. 1751 outside of the dinning hall I C/O Henderson observed Sgt. Fenn give I/M Marks, Paul 321696 multiple directives to disperse and return to his unit. I/M Marks ignored all directives and continued to ignore directives and started to become tense. I C/O Henderson gave him verbal directives to cuff up and after multiple commands he was placed in restraints by myself and C/O Troseth. During the escort, offender Marks became tense and caused a spontaneous use of force due to him resisting the escort and attempting to pull away from my control. He was placed in the grass, ankle restraints were applied, and he was taken to F Unit in a wheel chair.

| Immediate Action Taken:Placed in restraints |
|---|
| |

| Signature | 07-20-2016 | C/O 2 | Henderson,A |
|---|---|---|---|
| | Date | Title | Name (Please Print) |

TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

| Comments: |
|---|
| |

| Signature | Date |
|---|---|

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

Distribution:  ORIGINAL-Superintendent          COPY- Chief Investigator

DOC 21-917 (Rev. 10/23/15)          DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
                                     DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620

Scan Code GM02





**Department of**
# Corrections
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 07/20/2016 1752 hours | Offenders Involved: Marks, Paul | DOC Number 321696 | Living Unit H3 |
|---|---|---|---|
| Location Breezeway | Witnesses Involved: NA | | |
| Use of Force Incident? ☒ Yes   ☐ No | | | |
| Description of Incident: Refusing to disperse/Use of Force | Employees/Contract Staff/Volunteers Involved: Officer Troseth II, James, Officer Henderson, Arthur Sgt. Fenn, Zackary | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 07/20/2016 at approximately 1752 hours Sgt. Fenn, Zackary made radio notification of an offender refusing to disperse on the breezeway. I, Officer Troseth II, James, responded. When I arrived I assisted Officer Henderson, Arthur place offender Marks, Paul DOC# 321696 in wrist restraints. Once in wrist restraints Officer Henderson and I escorted offender Marks to F Unit with Sgt. Fenn filming the escort. I had control of offender Marks left side and Officer Henderson had control of offender Marks right side. During the escort offender Marks attempted to pull away from Officer Henderson, Officer Henderson assisted offender Marks to the ground while I maintained control of offender Marks left side. Once offender Marks was on the ground I assisted with putting him in to the recovery position. Once in the recovery position offender Marks stated he could no longer walk to F Unit. A wheelchair was brought from medical. I then assisted with placing offender Marks in to the wheel chair and finished escorting him to F Unit.

**Immediate Action Taken:**

| Signature | 07/20/2016 Date | Corrections Officer Title | James Troseth II Name (Please Print) |
|---|---|---|---|

**TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE**

| Date/Time Received | | Incident Number | |
|---|---|---|---|
| Investigation Assigned To | By | Date | |

**Comments:**

Signature                    Date

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)    DOC 390.360, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.380, DOC 420.500, DOC 420.550, DOC 620.200, DOC 830.550, DOC 890.620
Scan Code GM02



 Department of
**Corrections**
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 7/20/2016  1800 | Offenders Involved: MARKS, Paul | DOC Number 321696 | Living Unit F |
|---|---|---|---|
| Location F Unit Holding Cell #3 | Witnesses Involved: | | |
| Use of Force Incident? ☒ Yes    ☐ No | | | |
| Description of Incident: Nursing Assessment Following Use of Force | Employees/Contract Staff/Volunteers Involved: Kimberly Malone | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

At approximately 1800, Offender Marks, Paul (DOC #321696) was escorted to F Unit in a wheelchair following a Use of Force on the Breezeway. Offender Marks stated he is currently unable to stand due to numbness in his leg which he stated was due to a chronic medical condition. At this time, Offender Marks stated no injuries and I noted no injuries.

Immediate Action Taken: Assessment and documentation.

| _K. Malone, RN_ | 7/20/2016 | RN2 | K. Malone, RN2 |
|---|---|---|---|
| Signature | Date | Title | Name (Please Print) |

**TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE**

| Date/Time Received | | | Incident Number |
|---|---|---|---|
| Investigation Assigned To | By | | Date |

Comments:

| | |
|---|---|
| Signature | Date |

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)        DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390, DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620

Scan Code GM02





**INITIAL SERIOUS INFRACTION REPORT**

| Date of Infraction 07/20/2016 | Offender Name (Last, First) Marks, Paul | DOC Number 321696 | Housing Assignment H3-010 L |
|---|---|---|---|

| Rule Violation #(s) 509, 717 |
|---|

| Approximate Time Occurred 1752 | Place of Incident (Be Specific) Breezeway in front of A Side Dining | | Date Occurred 07/20/2016 |
|---|---|---|---|

| Witness (1) Henderson, Arthur | Days Off Sat/Sun | Witness (3) N/A | Days Off N/A |
|---|---|---|---|
| Witness (2) Troseth, Jimmy | Days Off Fri/Sat | Witness (4) N/A | Days Off N/A |

### NARRATIVE

State a concise description of the details of the rule violations, covering all elements and answering the questions of When? Where? Who? What? Why? and How? Describe any injuries, property damage, use of force, etc. Attach all related reports.

On 7/20/2016 at approximately 1752 hours, I, Sgt. Fenn was supervising mainline. During mainline, Offender Marks, Paul DOC# 321696 was being disruptive on the breezeway. I gave Offender Marks a directive to stand for search. He continued to be disruptive so I gave him a directive that I would be issuing him a sack lunch and that he can return to his unit. Offender Marks continued to argue and be disruptive on the breezeway. I gave Offender Marks 4 more directives to return to his unit and to disperse from my location. All directives were ignored, therefore I notified Stafford Creek Base that I had one refusing to disperse. Offender Henderson responded and applied wrist restraints. During the escort to F Unit, Offender Marks began to resist the escort and was actively trying to pull away from Officer Henderson. Due to him resisting orders, a spontaneous use of force was required to gain control and to stop the offenders actions of resisting staff's escort procedure.

| Reporting Employee/Contract Staff Name (Last, First) (Print Name) Fenn, Zack | | Shift 3rd | Days Off Sat/Sun |
|---|---|---|---|

| Evidence Taken ☒ Yes ☐ No | Evidence Case Number 16-369 | Evidence Locker Number # 4 | Photo/Video Submitted ☒ Yes ☐ No |
|---|---|---|---|

| Description of Evidence 1 DVD |
|---|

| Placed in Pre-Hearing Confinement ☒ Yes ☐ No   Date _____ Administrative Segregation ☐ Yes ☐ No   Date | Recommended Sanction(s) N/A |
|---|---|

### NAME(S) OF ALLEGED VICTIMS OF THIS INCIDENT

| Last, First 1) N/A | | | DOC# N/A |
|---|---|---|---|
| | ☐ Employee/Contract Staff | ☐ Volunteer/Visitor/Other | ☐ Offender |
| Last, First 2) N/A | | | DOC# N/A |
| | ☐ Employee/Contract Staff | ☐ Volunteer/Visitor/Other | ☐ Offender |

| Related Reports Attached | ☐ Supplemental | ☐ Medical |
|---|---|---|
| | ☐ Employee/Contract Staff Witness Statements | ☐ Other (Specify) |

| Reporting Employee/Contract Staff Signature _Zack Fenn_ | Date 7/20/16 |
|---|---|
| Infraction Review Officer Signature and Name (Last/First) | Date |

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

Distribution:  ORIGINAL - Imaging System/Central File        COPY - Hearing Officer, Offender, Board
DOC 17-076 (Rev. 05/11/16)                                                                      DOC 460.000, DOC 580.655
Scan Code IS01                                                                                   [4.4223] [4.4236]

PDU-43634 1st Installment  000013

viewSegregation                                                                 Page 1 of 1

## Placement Referral:

**MARKS, Paul D (321696)**

**Offender Information At Time Of Placement**
ERD: 12/23/2019      RLC: LOW      Custody Level: Minimum 3 - Long Term Minimum                 Location: SCCC-IMU

**Placement Movement**

* **Initial Placement Date:**      07/20/2016      * **Time:**   19:50      * **Initial Placement Status:**      Pre-Hearing Confinement
* **Initial Placement Facility:**   SCCC-IMU         * **Initial Placement Living Unit:**  F
* **Pre-Placement Location:**      SCCC-H3

**Placement Details**

| Placement Type: | Placement Detail: | Placement Due Infractions: |
|---|---|---|
| Threat to Orderliness of Facility | Other | 509 - REFUSE TO PROCEED/DISPERSE AREA |
|  |  | 717 - REFUSAL/RESISTING/SAFETY |

**Placement Narrative**

Offender Refused Multiple Directives To Disperse Back To His Living Unit. During The Escort To F Unit, Offender Marks Began To Resist Staff Resulting In A Spontaneous Use Of Force.

Requesting Staff: Fenn, Zackary J                                                Authorizing Staff: Mainio, Eric W

## Placement Authorization:

**Authorization Narrative:**

Concur

⦿ Authorize      ◯ Deny

**Authorizing Staff:**          **Serving/Reporting Staff:**          **Superintendent/Designee:**
   Mainio, Eric W                 Ericksen, Matthew R                    Cotton, Jeneva M

PDU-43634 1st Installment  000014





**SUPERINTENDENT**
**USE OF FORCE ASSESSMENT**

| Offender(s) Name<br>Marks, Paul | | DOC Number(s)<br>321696 |
| --- | --- | --- |
| Facility/Location<br>SCCC / Breezeway | Date of Incident<br>7/20/16 | Time of Incident<br>1752 Hours |
| IMRS Number<br>16-46460 | | |

| NAME(S) OF EMPLOYEES DIRECTLY INVOLVED | | |
| --- | --- | --- |
| NAME | TITLE | INVOLVEMENT |
| Fenn, Zackary | Correctional Officer III | Team leader |
| Henderson, Arthur | Correctional Officer II | Applied force |
| Troseth, James | Correctional Officer II | Applied restraints/Escort |
| Malone, Kimberly | Registered Nurse II | Medical assessement |
| | | |
| | | |
| | | |

| DOCUMENTATION | | | |
| --- | --- | --- | --- |
| DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report | ☒ Yes | ☐ No | ☐ N/A |
| DOC 21-424 Use of Force Report (from all employees involved) | ☒ Yes | ☐ No | ☐ N/A |
| IMRS Incident Report | ☒ Yes | ☐ No | ☐ N/A |
| Video and/or Pictures | ☒ Yes | ☐ No | ☐ N/A |
| Infraction Reports | ☒ Yes | ☐ No | ☐ N/A |
| Medical Reports | ☒ Yes | ☐ No | ☐ N/A |
| Use of Force Checklist (preplanned) | ☐ Yes | ☐ No | ☒ N/A |
| Additional Documentation | ☐ Yes | ☒ No | ☐ N/A |
| Comments: | | | |

| USE OF FORCE REPORTS | | | |
|---|---|---|---|
| Complete and accurate | ☒ Yes | ☐ No | ☐ N/A |
| Provide a description of the incident leading up to the use of force | ☒ Yes | ☐ No | ☐ N/A |
| Provide a description of actions taken to mitigate the need to use force | ☒ Yes | ☐ No | ☐ N/A |
| Provide a description of offender resistance and force options used | ☒ Yes | ☐ No | ☐ N/A |
| Written individually by each involved employee | ☒ Yes | ☐ No | ☐ N/A |
| Accurately reflect what is seen in the video | ☒ Yes | ☐ No | ☐ N/A |
| Employee(s) trained/qualified for the force option | ☒ Yes | ☐ No | ☐ N/A |
| Do the reports support one another | ☒ Yes | ☐ No | ☐ N/A |
| Comments: | | | |

| NOTIFICATIONS / APPROVALS | | | |
|---|---|---|---|
| Emergent Situation | ☒ Yes | ☐ No | ☐ N/A |
| Approval for force option(s) obtained | ☐ Yes | ☐ No | ☒ N/A |
| Was Health Services consulted | ☐ Yes | ☐ No | ☒ N/A |
| Reported to the Superintendent/Facility Duty Officer | ☒ Yes | ☐ No | ☐ N/A |
| Reported to the Assistant Secretary for Prisons/Headquarters Duty Officer | ☐ Yes | ☐ No | ☒ N/A |
| Law Enforcement Notified | ☐ Yes | ☐ No | ☒ N/A |
| Comments: | | | |

| MEDICAL REPORTS | | | |
|---|---|---|---|
| Report for each offender | ☒ Yes | ☐ No | ☐ N/A |
| Accurately reflect what is written in the Use of Force Reports | ☒ Yes | ☐ No | ☐ N/A |
| Accurately reflect what is seen in the video | ☒ Yes | ☐ No | ☐ N/A |
| Were Health Services employees on scene (preplanned) | ☒ Yes | ☐ No | ☐ N/A |
| Are injuries consistent with application of force and force options | ☒ Yes | ☐ No | ☐ N/A |
| Comments: | | | |

(20)

| RECORDING / PHOTOGRAPHS | | | |
|---|---|---|---|
| Clear Introduction (who, what, where, when) | ☐ Yes | ☒ No | ☐ N/A |
| Statement on why force is necessary | ☒ Yes | ☐ No | ☐ N/A |
| Description of events leading up to authorizing force | ☒ Yes | ☐ No | ☐ N/A |
| Name of all employees involved | ☐ Yes | ☒ No | ☐ N/A |
| Name of the person authorizing force option | ☐ Yes | ☒ No | ☐ N/A |
| Statement from Health Services concerning force option | ☐ Yes | ☒ No | ☐ N/A |
| Direct order issued to offender to comply | ☒ Yes | ☐ No | ☐ N/A |
| Was offender provided an opportunity to comply | ☒ Yes | ☐ No | ☐ N/A |
| Force used was necessary and reasonable | ☐ Yes | ☒ No | ☐ N/A |
| Can each employee be clearly identified | ☒ Yes | ☐ No | ☐ N/A |
| Was appropriate personal protective equipment used | ☒ Yes | ☐ No | ☐ N/A |
| Was the camera focused on the offender throughout | ☒ Yes | ☐ No | ☐ N/A |
| Record the complete incident, including: introduction, force application, medical examinations, decontamination process, final placement of the offender, and removal of restraints | ☐ Yes | ☒ No | ☐ N/A |
| At the conclusion of the incident, is there a clear summary, including: time/date/location, offenders involved, employees involved, description of offender resistance and force options used, all injuries noted, offenders current location and behavior | ☒ Yes | ☐ No | ☐ N/A |

Comments:
Incident was a spontaneous use of force so there was no introduction.  During the escort the offender resisted movement. The officers use of impedence tactics was not reasonable nor necessary based on the offenders level of resistance.

| OFFENDER DEMEANOR |
|---|

Comments:
Non-compliant and resistive during the escort to segregation.

| APPROPRIATENESS OF FORCE APPLIED |
|---|

Comments:
Force used by the officer was not appropriate.  The use of impedence tatctics to control a offender who was resisting escort is excessive and not reasonable.

| OVERALL IMPRESSIONS OF INCIDENT |
|---|

Comments:
Staff used excessive force in this incident.

| ADDITIONAL REVIEWERS | |
|---|---|
| NAME | TITLE |
| | |
| | |
| | |

Comments:

## REVIEWER RECOMMENDATION

| | |
|---|---|
| I concur with the actions of all employees involved. | ☐ |
| I DO NOT concur with the actions of all employees involved. | ☒ |

Comments:
The staff member used impedence tactics to control a offender who was resisting escorted movement.  These action were unnecessary and and excessive based on the level of resistance offered by the offender.  Recommend further investigation into the officer's actions and force used.

Dan Van Ogle, Associate Superintendent
Reviewer Completing Assessment (Print Name / Title)      Signature            Date  7-27-16

## SUPERINTENDENT APPROVAL

| | |
|---|---|
| I have reviewed all the documentation provided. | ☒ |
| I have reviewed the actions of all employees involved. | ☒ |
| I concur with the actions of all employees involved. | ☒ |
| I DO NOT concur with the actions of all employees involved. | ☐ |
| I recommend the following actions: | ☐ |

| | |
|---|---|
| ☐ Internal Fact Finding | ☐ External Critical Incident Review (CIR) |
| ☐ Headquarters Review | ☐ Just Cause Investigation |

The following actions (policy, procedures, revision, modifications, etc.) shall be taken:

Comments:

Margaret Gilbert
Superintendent/designee (Print Name)      Superintendent/designee Signature      Date 7/29/16

The contents of this document may be eligible for public disclosure. This form is governed by executive Order 0-03, RCW 42.56, and RCW 40.

Distribution:  ORIGINAL - Superintendent       COPY - Deputy Director

DOC 21-426 (Rev. 08/26/14)       PDU-43834 4th Installment 000018       DOC 410.200, DOC 410.215, DOC 410.230

 **Department of Corrections**
WASHINGTON STATE



**SUPERINTENDENT
USE OF FORCE ASSESSMENT**

| Offender(s) Name Marks, Paul | | DOC Number(s) 321696 |
|---|---|---|
| Facility/Location SCCC / Breezeway | Date of Incident 7/20/16 | Time of Incident 1752 Hours |
| IMRS Number 16-46460 | | |

### NAME(S) OF EMPLOYEE DIRECTLY INVOLVED

| NAME | TITLE | INVOLVEMENT |
|---|---|---|
| Fenn, Zackary | Correctional Officer III | Team leader |
| Henderson, Arthur | Correctional Officer II | Applied force |
| Troseth, James | Correctional Officer II | Applied restraints/Escort |
| Malone, Kimberly | Registered Nurse II | Medical assessement |
| | | |
| | | |

### DOCUMENTATION

| | | |
|---|---|---|
| DOC 21-425 Shift Commander/Unit Supervisor Use of Force Report | | ☐ Yes ☐ No ☐ N/A |
| DOC 21-424 Use of Force Report (from all employees involved) | | ☐ Yes ☐ No ☐ N/A |
| IMRS Incident Report | | ☐ Yes ☐ No ☐ N/A |
| Video and/or Pictures | | ☐ Yes ☐ No ☐ N/A |
| Infraction Reports | | ☐ Yes ☐ No ☐ N/A |
| Medical Reports | | ☐ Yes ☐ No ☐ N/A |
| Use of Force Checklist (preplanned) | | ☐ Yes ☐ No ☐ N/A |
| Additional Documentation | | ☐ Yes ☐ No ☐ N/A |

Comments:

| [HEADER] | | | |
|---|---|---|---|
| Complete and accurate | ☐ Yes | ☐ No | ☐ N/A |
| Provide a description of the incident leading up to the use of force | ☐ Yes | ☐ No | ☐ N/A |
| Provide a description of actions taken to mitigate the need to use force | ☐ Yes | ☐ No | ☐ N/A |
| Provide a description of offender resistance and force options used | ☐ Yes | ☐ No | ☐ N/A |
| Written individually by each involved employee | ☐ Yes | ☐ No | ☐ N/A |
| Accurately reflect what is seen in the video | ☐ Yes | ☐ No | ☐ N/A |
| Employee(s) trained/qualified for the force option | ☐ Yes | ☐ No | ☐ N/A |
| Do the reports support one another | ☐ Yes | ☐ No | ☐ N/A |

Comments:

| [HEADER] | | | |
|---|---|---|---|
| Emergent Situation | ☐ Yes | ☐ No | ☐ N/A |
| Approval for force option(s) obtained | ☐ Yes | ☐ No | ☐ N/A |
| Was Health Services consulted | ☐ Yes | ☐ No | ☐ N/A |
| Reported to the Superintendent/Facility Duty Officer | ☐ Yes | ☐ No | ☐ N/A |
| Reported to the Assistant Secretary for Prisons/Headquarters Duty Officer | ☐ Yes | ☐ No | ☐ N/A |
| Law Enforcement Notified | ☐ Yes | ☐ No | ☐ N/A |

Comments:

| [MEDICAL REPORT] | | | |
|---|---|---|---|
| Report for each offender | ☐ Yes | ☐ No | ☐ N/A |
| Accurately reflect what is written in the Use of Force Reports | ☐ Yes | ☐ No | ☐ N/A |
| Accurately reflect what is seen in the video | ☐ Yes | ☐ No | ☐ N/A |
| Were Health Services employees on scene (preplanned) | ☐ Yes | ☐ No | ☐ N/A |
| Are injuries consistent with application of force and force options | ☐ Yes | ☐ No | ☐ N/A |

Comments:

| | | |
|---|---|---|
| Clear Introduction (who, what, where, when) | ☐ Yes ☐ No | ☐ N/A |
| Statement on why force is necessary | ☐ Yes ☐ No | ☐ N/A |
| Description of events leading up to authorizing force | ☐ Yes ☐ No | ☐ N/A |
| Name of all employees involved | ☐ Yes ☐ No | ☐ N/A |
| Name of the person authorizing force option | ☐ Yes ☐ No | ☐ N/A |
| Statement from Health Services concerning force option | ☐ Yes ☐ No | ☐ N/A |
| Direct order issued to offender to comply | ☐ Yes ☐ No | ☐ N/A |
| Was offender provided an opportunity to comply | ☐ Yes ☐ No | ☐ N/A |
| Force used was necessary and reasonable | ☐ Yes ☐ No | ☐ N/A |
| Can each employee be clearly identified | ☐ Yes ☐ No | ☐ N/A |
| Was appropriate personal protective equipment used | ☐ Yes ☐ No | ☐ N/A |
| Was the camera focused on the offender throughout | ☐ Yes ☐ No | ☐ N/A |
| Record the complete incident, including: introduction, force application, medical examinations, decontamination process, final placement of the offender, and removal of restraints | ☐ Yes ☐ No | ☐ N/A |
| At the conclusion of the incident, is there a clear summary, including: time/date/location, offenders involved, employees involved, description of offender resistance and force options used, all injuries noted, offenders current location and behavior | ☐ Yes ☐ No | ☐ N/A |

Comments:




Comments:




Comments:




Comments:

ADDITIONAL REVIEWERS

| NAME | TITLE |
|---|---|
|  |  |
|  |  |
|  |  |

Comments:

| | |
|---|---|
| I concur with the actions of all employees involved. | ☐ |
| I DO NOT concur with the actions of all employees involved. | ☐ |

Comments:

Dan Van Ogle, Associate Superintendent
Reviewer Completing Assessment (Print Name / Title)         Signature                              Date

| | |
|---|---|
| I have reviewed all the documentation provided. | ☐ |
| I have reviewed the actions of all employees involved. | ☐ |
| I concur with the actions of all employees involved. | ☐ |
| I DO NOT concur with the actions of all employees involved. | ☐ |
| I recommend the following actions: | ☐ |

☐ Internal Fact Finding                          ☐ External Critical Incident Review (CIR)

☐ Headquarters Review                          ☐ Just Cause Investigation

The following actions (policy, procedures, revision, modifications, etc.) shall be taken:

Comments:

Margaret Gilbert
Superintendent/designee (Print Name)         Superintendent/designee Signature            Date

The contents of this document may be eligible for public disclosure. This form is governed by executive Order 0-03, RCW 42.56, and RCW 40.

Distribution: ORIGINAL - Superintendent         COPY - Deputy Director



STATE OF WASHINGTON
# DEPARTMENT OF CORRECTIONS
P.O. Box 41100 • Olympia, Washington 98504-1100

*July 20th BEFOR ASSULT & HOSP TRIP*

*W. H. N.*

March 17, 2017

Paul Marks, DOC#321696
Cedar Creek Corrections Center
EB261L
P.O. Box 37
Littlerock WA  98556

Mr. Marks:

This letter is in regards to your public records request, **PRU-43634**, for any and all incident reports, including but not limited to use of force against you on or about July 20, 2016, all related reports that directly or indirectly involve the events that led to your transportation to the outside hospital. This request also includes the times and dates you were transported to and from Stafford Creek Corrections Center facility, from July 20, 2016 to July 28, 2016.

Enclosed is the 2nd and final installment of 23 pages and 1 CD of 2 video footages responsive to your request. Redactions have been made as appropriate per statute and are noted on the denial form, which is also enclosed. Please note that we provided these documents to you in accordance with the Public Records Act. By making agency documents available to you, the Department is not responsible for your use of the information or for any claims or liabilities that may result from your use or further dissemination. This request is now closed.

Sincerely,

*Mara Rivera*

Public Disclosure Specialist
Department of Corrections
Public Disclosure Unit
P.O. Box 41118
Olympia, WA 98504

MR: PRU-43634

*" Working Together for SAFE Communities"*

recycled paper

**STATE OF WASHINGTON**
**DEPARTMENT OF**
**CORRECTIONS**                              **AGENCY DENIAL FORM / EXEMPTION LOG**

Date:   3/17/2017                              Tracking Number:   PRU-43634 2nd/final installment

Requestor Name and
Address:

          Paul Marks, DOC#321696
          Cedar Creek Corrections Center
          EB261L
          P.O. Box 37
          Littlerock WA  98556

Denial of Disclosure Decided by (Name/Title):   Mara Rivera, Public Records Specialist

YOUR REQUEST FOR DISCLOSURE OF THE RECORDS IDENTIFIED WITHIN THE CORRESPONDING
MATERIALS HAS BEEN DENIED TO THE EXTENT AND FOR THE REASON(S) SET FORTH BELOW.

Each exemption applied to the records is associated with a number in the **EXEMPTIONS SECTION** below, which
explains the exemption(s) relied upon to make redactions to the records.

## EXEMPTIONS SECTION

The following section identifies and explains the exemptions relied upon in the above table(s):

**5-COMPUTER SECURITY AND INMATE PERSONAL IDENTIFICATION (IPIN) NUMBERS** – These
records contain computer access paths, codes, IPIN telephone access codes, or similar information, the release of which
may compromise the security of the computer and/or telecommunication systems and information, and have been
redacted per the following citation:

RCW 42.56.420(4) - "Information regarding the infrastructure and security of computer and telecommunications
networks, consisting of security passwords, security access codes and programs, access codes for secure software
applications, security and service recovery plans, security risk assessments, and security test results to the extent that
they identify specific system vulnerabilities."

# APPEAL FORM

You may appeal all or any portion of this decision to the **DOC Appeals Office** by completing the following portion of this form and mailing it to the address designated.

1. A public disclosure appeal may be submitted if you believe a public disclosure decision should be considered for reversal due to legal considerations.

2. Only the original requestor may appeal a public disclosure response.

3. Only one public disclosure request may be appealed per form.

4. An inquiry about timeframes on a pending request does not constitute an appeal, but will be addressed as an inquiry.

5. This appeal form may not contain a new public disclosure request. Any new request must be sent to the Public Disclosure Unit per WAC 137-08-090.

PDU Tracking Number: _____

Requestor Name: _____   DOC # (if applicable): _____

Mailing Address: _____

_____

_____

Describe the specific exemption(s) and/or specific page(s) you wish to appeal:
(include why you disagree with the original denial decision)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Mail completed form to:    Public Disclosure Agency Appeals Office
                           Post Office Box 41103
                           Olympia, WA  98504-1103

OMNI: IMRS - Search Incident Report

Printed by: Eric Mainio

## Incident Information

| | |
|---|---|
| Incident Number: | 16-46460 |
| Facility : | SCCC |
| Location : | Breezeway |
| Place : | Breezeway |
| Confidential ? : | No |
| Facility Lockdown ? : | No |
| Restricted Movement ? : | No |
| STG Incident ? : | No |
| Property Damage ? : | No |
| Date and Time of Incident : | 07/20/2016 17:52 |
| Reporting Staff : | Mainio, Eric W |
| Date and Time Submitted : | 07/20/2016 21:09 |
| Creating Staff: | Mainio, Eric W |

## Primary Incident Type

| | | |
|---|---|---|
| Primary Incident Category : | Offender | |
| Primary Incident Type : | Use of Force | |
| | Physical | Yes |
| | OC | No |
| Modifiers : | EID/Taser | No |
| | Specialty Impact | No |
| | Unholstered Firearm | No |
| Mandarory Confidential : | N | |

## Involved Offenders

| | | | | |
|---|---|---|---|---|
| Doc Nb : 321696 | Name : MARKS, Paul D | Gender : Male | Race : White | STG Group: |
| Community Concerns: No | Active Warrant: No | Injured ? : No | Hospitalized ? : No | |

## Involved Staff

| Name : Fenn, Zackary J | Position Description : Corrections/Custody Officer 3 | Injured ? : No | Hospitalized ? : No |
|---|---|---|---|
| Name : Henderson, Arthur L | Position Description : Corrections/Custody Officer 2 | Injured ? : No | Hospitalized ? : No |
| Name : Troseth, James M II | Position Description : Corrections/Custody Officer 2 | Injured ? : No | Hospitalized ? : No |
| Name : Malone, Kimberly L | Position Description : Registered Nurse 2 | Injured ? : No | Hospitalized ? : No |

## Other Participants

Type : Gender: Last name : First name : Comment : Injured ? : No Hospitalized ? : No

## Other Agencies Contacted

PRU-43634 2nd Installment 000001

| Agency Type | Agency Name | Date Contacted | Time Contacted | Comments |
|---|---|---|---|---|

**Narrative**

| Date | Narrative |
|---|---|
| 07/20/2016 | On 07/20/16 at approximately 1752 hours, Sgt. Fenn directed Offender Marks #321696 to stand for search on the breezeway in front of the dining halls. During the process Marks became verbally disruptive and was given multiple directives to return to his unit. Marks refused all directives and Sgt. Fenn made notification of an offender refusing to disperse. Staff on scene placed Marks into restraints without incident. Sgt. Fenn began video recording and directed Officers Henderson and Troseth to escort Marks to Segregation. During the escort Marks tried to pull away from Officer Henderson and resist his escorted movement. Henderson used force by maintaining control of Marks right arm. His control was failing and Henderson applied a soft knee strike to his right side in an attempt to distract and keep him from pulling away. At this point Marks complied and followed directives from Sgt. Fenn to stop resisting. Marks was placed on his knees at which time he said he could not walk. A wheelchair was requested and Marks was transported by wheelchair for the remainder of the escort. In F-unit Marks was assessed by RN Malone and she could not identify any injuries from the Use of Force. Marks remained non-compliant and his restraints were removed in the holding cell. Marks made no comment on the use of force. Documentation gathered and Duty Officer Jean Anderson was notified. |

PRU-43634 2nd Installment  000002

OMNI: IMRS - Search Incident Report

Printed by: Eric Malnio

## Incident Information

| | |
|---|---|
| Incident Number: | 16-46461 |
| Facility : | SCCC-IMU |
| Location : | Holding Cell |
| Place : | Holding Cell |
| Confidential ? : | No |
| Facility Lockdown ? : | No |
| Restricted Movement ? : | No |
| STG Incident ? : | No |
| Property Damage ? : | No |
| Date and Time of Incident : | 07/20/2016 18:05 |
| Reporting Staff : | Malnio, Eric W |
| Date and Time Submitted : | 07/20/2016 21:35 |
| Creating Staff: | Malnio, Eric W |

## Primary Incident Type

| | |
|---|---|
| Primary Incident Category : | Offender |
| Primary Incident Type : | Medical Emergency |
| Modifiers : | |
| Mandatory Confidential : | N |

## Additional Incident Types

| Incident Category | Incident Type | Incident Type Modifiers | Mandatory Confidential |
|---|---|---|---|
| Offender | Emergency Medical Transport/Offender | Transport Type Ambulance | |

## Involved Offenders

| | | | | |
|---|---|---|---|---|
| Doc Nb : 321696 | Name : MARKS, Paul D | Gender : Male | Race : White | STG Group: |
| Community Concerns: No | Active Warrant: No | Injured ? : No | Hospitalized ? : No | |

## Involved Staff

| Name | Position Description | Injured ? : | Hospitalized ? : |
|---|---|---|---|
| Name : Malone, Kimberly L | Position Description : Registered Nurse 2 | No | No |
| Name : Ericksen, Matthew R | Position Description : Corrections/Custody Officer 3 | No | No |
| Name : Phipps, John E | Position Description : Corrections/Custody Officer 2 | No | No |
| Name : Troseth, James M II | Position Description : Corrections/Custody Officer 2 | No | No |
| Name : Mcginnis, James R | Position Description : Corrections/Custody Officer 2 | No | No |
| Name : Wayman, Jody A | Position Description : Registered Nurse 2 | | |

PRU-43634 2nd Installment  000003

|  |  | Injured ? :<br>No | Hospitalized ? :<br>No |
| --- | --- | --- | --- |
| Name : Bolden, Mitchell L | Position Description : Corrections/Custody<br>Officer 3 | Injured ? :<br>No | Hospitalized ? :<br>No |
| Name : Cline, Charles F | Position Description : Corrections/Custody<br>Officer 2 | Injured ? :<br>No | Hospitalized ? :<br>No |

**Other Participants**

Type : Gender: Last name : First name : Comment : Injured ? : No Hospitalized ? : No

**Other Agnencies Contacted**

| Agency Type | Agency Name | Date Contacted | Time Contacted | Comments |
| --- | --- | --- | --- | --- |
| Hospital | Grays Harbor Community Hospita | 07/20/2016 | 18:30 | |

**Narrative**

| Date | Narrative |
| --- | --- |
| 07/20/2016 | On 07/20/16 at approximately 1805 hours, RN Malone attempted to complete an intake assessment on Offender Marks #321696 in the Segregation Holding cell. Marks was slumped over and not responding to her questioning. She could see he was breathing but nonresponsive. She notified Sgt. Ericksen who also attempted to gain a response. Shift Lieutenant Mainio was notified and directed an emergent entry into the cell. F-unit staff entered the cell and placed Marks into restraints. Marks was completely passive and offered no resistance. RN Malone assessed him and then reported her findings to FMD S. Smith. Per Dr. Smith an ambulance was requested to transport Marks to Grays Harbor Community Hospital for further evaluation. Aberdeen Fire arrived onsite at 1844 hours. Sgt. Bolden and Officer Cline were assigned to the escort. The trip departed SCCC at 1919 hours. Documentation gathered and Duty Officer Jean Anderson was notified. |

PRU-43634 2nd Installment  000004



**Department of**
# Corrections
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 7/20/2016  1800 | Offenders Involved: MARKS, Paul | DOC Number 321696 | Living Unit F |
|---|---|---|---|
| Location F Unit Holding Cell #3 | Witnesses Involved: | | |
| Use of Force Incident? ☐ Yes   ☒ No | | | |
| Description of Incident: Medical Emergency | Employees/Contract Staff/Volunteers Involved: Kimberly Malone | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

At approximately 1805, I, RN Malone, went to Holding Cell #3 to conduct the segregation intake, Offender Marks, Paul (DOC #321696) did not respond. Sgt. Fenn and Sgt. Ericksen both attempted to get Offender Marks to respond with negative results. It was noted at this time that he was breathing but not responsive. Offender Marks was assessed by nursing, vitals obtained. Dr. Sara Smith, FMD was contacted regarding Offender Marks' condition and it was decided that he would need to be transferred to GHCHED for further evaluation. Offender Marks was taken from the holding cell and placed first in a wheelchair but it was determined that he was unable to sit in the wheelchair and was placed on the backboard. At this time his clothes were cut off and he was readied for the arrival of the paramedics. Offender Marks remained unresponsive yet breathing until and after the paramedics arrived. Offender Marks was transported to GHCHED via aid car.

Immediate Action Taken: Assessment, treatment, and documentation.

| _K. Malone, RN_ | 7/20/2016 | RN2 | K. Malone, RN2 |
|---|---|---|---|
| Signature | Date | Title | Name (Please Print) |

**TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE**

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

| Comments: |
|---|
| |

| Signature | | Date |
|---|---|---|

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)

Scan Code GM02

DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390, DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620

**Mainio, Eric W. (DOC)**

| | |
|---|---|
| **From:** | Wayman, Jody A. (DOC) |
| **Sent:** | Wednesday, July 20, 2016 6:35 PM |
| **To:** | DOC DL SCCC EMERGENCY MED OUT; DOC DL SCCC SHIFT LIEUT |
| **Subject:** | EMO:  MARKS, PAUL  #321696   7/20/2016 |



Medical Out
Order-.doc

 Emergency/Routine/Urgent top of page, from drop down menu

1



## STAFFORD CREEK CORRECTIONS CENTER
## ESCORTED LEAVE AUTHORIZATION

TO:        Shift/Transport Staff

FROM:     Records Supervisor or Designee          _____
                                                                            Signature

DATE:     **07/20/16**

RE:        **Marks, Paul**        DOC# **321696**        Unit# **F-Unit**

The above listed offender(s) will leave the institution at **1900** on **07/20/19** to go to
**GRAYS HARBOR COMMUNITY HOSPITAL, 915 ANDERSON DRIVE, ABERDEEN,
WA** in the custody of:

☒     Stafford Creek Corrections Center Transport Officers

☐     Law Enforcement:

**The agency indicated above will retain custody of the offender at all times,
until their return to the institution.**

Time trip Started_____ Time Returned_____

Transport Officer Signature_____

## ******** ESCORTING STAFF, please return signed form to the Records Office upon return from trip.

Stafford Creek Corrections Center

**MEDICAL OUT ORDER**

Classification Reviewer Initials:

# EMERGENCY

TO:   Correctional Captain
FROM:   HEALTH CARE UNIT                                 DATE:   07/20/16

**IT IS REQUESTED THAT THE OFFENDER LISTED BELOW LEAVE THE FACILITY AS FOLLOWS:**

| OFFENDER NAME: | DOC #: | DOB: | HOUSING ASSIGN: | OFFENDER TO LEAVE FROM: |
|---|---|---|---|---|
| MARKS, PAUL | 321696 | 1945 | F | SCCC F |
| DAY OF TRIP: | DATE: | LEAVE: | APPT: | DURATION: |
| Wednesday | 7/20/16 | ASAP | Unknown | TBD |

| LOCATION OF VISIT: | DEPARTMENT/PROVIDER: |
|---|---|
| Grays Harbor Community Hospital<br>915 Anderson Drive<br>Aberdeen, WA 98520<br>(360) 532-8330 | GHCH-ER |

REASON:
                               possible seizure

## OFFENDER MUST BE ROUTED BACK THROUGH THE OUTPATIENT CLINIC UPON RETURN TO FACILITY.

ORDER REQUESTED BY (PHYSICIAN, P.A.-C, ETC.):   Sara Smith, MD

*INFORMATION THAT MUST ACCOMPANY OFFENDER:*

### PLEASE PICK UP PAPERWORK IN MEDICAL AT THE NURSE'S STATION.

| Priority Code:<br>☐ 1 (Hi) ☒ 2 (Med) ☐ 3 (Low) | PREPARED BY:<br>Jody Wayman, RN2 | APPROVED BY: Sara Smith,<br>MD, FMD |
|---|---|---|

## CUSTODY USE:  To be completed by custody officers.

| MXD:<br>LIFE | ERD:<br>12/23/19 | CUST:<br>M13 | SPECIAL NEEDS? (Le Wheelchair, interpreter needed etc) |
|---|---|---|---|
| ASSIGNED OFFICERS:<br>1.) CLINE<br>2.) BOGDEN | | START TIME: | END TIME: |
| | | Transportation Type:<br>Ambulance | |

DISTRIBUTION: (5 COPIES) Records, Master Control, Shift Office, Medical OA3 (original), Medical Records, Intake/Discharge

SIGNATURE OF TRANSPORTING OFFICER: _____

TRANSPORT OFFICERS:  RETURN THIS FORM TO THE TRANSPORT OFFICE WHEN TRANSPORT IS COMPLETED.  **NOTIFY HEALTH CARE UNIT AT 537-2089 OR Ext. 4079 IF OFFENDER REFUSES TREATMENT AT PROVIDERS**.

APPROVED BY: _LT. SGT_____MANNS___   DATE: _07/20/18_
(Correctional Captain/C.P.M. or Lieutenant)

PRU-43634 2nd Installment  000008

Control Card Report - Report Viewer

Page 1 of 1

| I◄ | ◄ | 1 | of 1 | ► | ►I | | 100% | ▼ | | | Find | Next | | | | |

Washington State
**Department of Corrections**

# CONTROL CARD

## General Information

| | | | | | |
|---|---|---|---|---|---|
| DOC No:  321698 | SSN: | | Custody Level:  Minimum 3 | | |
| FBI No:  0469753L2 | SID No: | 23563577 | STG Group:  None | | |
| Date of Birth: | 1945 | Place of Birth:  Hollywood, CA | | | |

| Race:  White | ProviderOne No:  200645904WA |
|---|---|
| Last Known Address: | |

**Gender:**
Male

**Height:**
6' 1"

**Weight:**
160 lbs

| Emergency Contact:   Virgina Ashmore      (206)385-3490 |
|---|
| Aliases: |
| MARKS, Paul David |
| MARKS, Paul |

**Eye Color:**
Hazel

**Hair Color:**
Gray

**Complexion:**
Light

**MARKS, Paul D**
Earned Release Date: 12/23/2019

## Judgment & Sentence Information

| Current Offense Categories: | No. of Counts: | County of Conviction: |
|---|---|---|
| Other Violation Child Sex | 4 | King |

Printed By: DOC1\ewmainio

Printed Date: 7/20/2016 6:41:47 PM



**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 07/20/2016 1800 hours | Offenders Involved: Marks, Paul | DOC Number 321696 | Living Unit H3 |
|---|---|---|---|
| Location F Unit | Witnesses Involved: NA | | |
| Use of Force Incident? ☐ Yes   ☒ No | | | |
| Description of Incident: Medical Emergency | Employees/Contract Staff/Volunteers Involved: Officer Troseth II, James, Sgt. Fenn, Zackary | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 07/20/2016 at approximately 1800 hours I, Officer Troseth II, James, was in F unit after completing an escort of offender Marks, Paul DOC# 321696. Offender Marks was in a holding cell, the nurse in F Unit asked if I would look in to check on offender Marks because she was not tall enough to see in. I checked on offender Marks and he was laying at the base of the door, doubled over and not responding to me calling his name. I notified the F unit staff that offender Marks was unresponsive. They then took over calling his name and attempting to get offender Marks to respond. I was then directed to video tape the F Unit staf enter the holding cell in an attempt to check on offender Marks. Offender Marks appeared non responsive and shaking. I continued to videotape until the camera died.

**Immediate Action Taken:**

| | 07/20/2016 | Corrections Officer | James Troseth II |
|---|---|---|---|
| Signature | Date | Title | Name (Please Print) |

**TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE**

| Date/Time Received | | | Incident Number |
|---|---|---|---|
| Investigation Assigned To | | By | Date |

| Comments: | | |
|---|---|---|

| | |
|---|---|
| Signature | Date |

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)     DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390, DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620

Scan Code GM02



Department of
**Corrections**
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 07/20/2016 1805 hours | Offenders Involved: Marks, Paul | DOC Number 321696 | Living Unit F |
|---|---|---|---|
| Location F Unit Holding Cell #4 | Witnesses Involved: | | |
| Use of Force Incident? ☐ Yes  ☒ No | | | |
| Description of Incident: Medical Cell Entry | Employees/Contract Staff/Volunteers Involved: Officer Troseth, J; Officer McGinnis, J; Officer Phipps, J; Officer Sherman, G, RN Malone | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

At approximatley 1800 hours Offender Marks, Paul #321696 was brought in to F Unit as an intake from General Population. Offender Marks had stated that he was unable to stand due to numbness in his legs so staff placed him in Holding cell # 4 sitting in an upright position, removed the restraints and secured the door. At 1805 hours Offender Marks became unresponsive and was slumped over. I, Sergeant Ericksen, Matthew got approval from Shift Lt. Mainio to do an emergent cell entry on Offender Marks so a medical evaluation could be done. At approximately 1810 a cell entry team entered the cell and applied wrist restraints to aid medical in evaluating Offender Marks. He was then placed in a wheel chair but medical determined that he was unable to sit in a wheel chair so he was placed on a back board. Offender Marks clothing was then removed except for underwear and he was placed in waist and ankle restraints to prepare for transport. Aid Car was on site at approximately 1852 hours and was taken out of F Unit at approximately 1900 hours.

Immediate Action Taken:

| Signature | 07/20/2016 Date | Sergeant Title | Ericksen, Matthew Name (Please Print) |
|---|---|---|---|

TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE

| Date/Time Received | | | Incident Number |
|---|---|---|---|
| Investigation Assigned To | By | | Date |

Comments:

| Signature | Date |
|---|---|

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)          DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
                                     DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620
Scan Code GM02



**Department of Corrections**
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident<br>7-20-16 at 1805 | Offenders Involved: Marks, Paul | DOC Number<br>321696 | Living Unit<br>F unit |
|---|---|---|---|
| Location<br>F unit holding cell #4 | Witnesses Involved: n/a | | |
| Use of Force Incident? ☐ Yes   ☐ No | | | |
| Description of Incident: | Employees/Contract Staff/Volunteers Involved: Sgt. Ericksen, M; Officer Phipps, J; Officer Reid, B; Officer McGinnis, J; RN Malone | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7-20-16 at approximately 1805 hours, I C/O McGinnis, James was assisting with a placement of Offender Marks, Paul #321696 into the holding cell of F unit. After the offender was placed in the holding cell, I continued with my regular duties. Sgt Ericksen then called all floor staff back to the holding cell because offender Marks was lying on the floor, unresponsive. I was assigned to be the shield officer for an emergent entry into the holding cell. Offender Marks was then placed in wrist restraints and brought into the f unit back corridor. I then assisted in placing Offender Marks on a backboard in order to aid his breathing. I then stood by while awaiting paramedics. Paramedics arrived and offender Marks was transported to GHCH via ambulance.

Immediate Action Taken: assisted in restraining offender, assisted in placing offender on backboard

| Signature | 7/20/16<br>Date | Correctional Officer 2<br>Title | McGinnis, James<br>Name (Please Print) |
|---|---|---|---|

**TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE**

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

Comments:

| Signature | | Date |
|---|---|---|

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

Distribution: ORIGINAL-Superintendent          COPY- Chief Investigator

DOC 21-917 (Rev. 10/23/15)          DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
                                    DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620

Scan Code GM02



Department of
# Corrections
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 7-20-16  1805HRS | Offenders Involved: Marks, Paul | DOC Number 321696 | Living Unit F-Unit |
|---|---|---|---|
| Location F-Unit Holding Cell #4 | Witnesses Involved: | | |
| Use of Force Incident? ☐ Yes   ☒ No | | | |
| Description of Incident: Medical Emergency | Employees/Contract Staff/Volunteers Involved: Sgt. Ericksen, M; Officer Sherman, G; Officer Reid, B; Officer McGinnis, J; RN Malone | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7-20-16 at approximately 1805HRS I Officer Phipps, J  assisted with a Segregation placement of offender Marks, P #321696. Sgt. Ericksen called IMU floor staff to report back to holding cell #4. Where we found offender Marks unresponsive. Sgt Ericksen then assigned an emergency cell entry team where I was assigned Upper controle. We made entry into the holding cell and found offender Marks still unresponsive. I assisted placing offender Marks in wrist restraints and assisted Officer Sherman in getting offender Marks into a sitting position so RN Malone could get the offenders vitals. I then assisted in the application of waist restraints so offender Marks could be transported.

Immediate Action Taken: Completed Incident report

| Signature | 7-20-16 | CO2 | Phipps, J |
|---|---|---|---|
| | Date | Title | Name (Please Print) |

**TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE**

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

Comments:

Signature                                                                 Date

The contents of this document may be eligible for public disclosure.  Social Security Numbers are considered confidential information and will be redacted in the event of such a request.  This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)      DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
                                                   DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620
Scan Code GM02



**Department of**
# Corrections
**WASHINGTON STATE**

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident<br>7-20-16/ approximately 1805 hours | Offenders Involved: Marks, Paul | DOC Number<br>321696 | Living Unit<br>F-Unit |
|---|---|---|---|
| Location<br>F-Unit Holding Cell #4 | Witnesses Involved: | | |
| Use of Force Incident? ☐ Yes    ☒ No | | | |
| Description of Incident: Medical<br>Emergency | Employees/Contract Staff/Volunteers Involved: Sgt. Ericksen, M; Officer<br>Phipps, J; Officer Reid, B; Officer McGinnis, J; RN Malone | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7-20-16 at approximately 1805 hours I (Officer Sherman, G) assisted with a Segregation placement of offender Marks, P #321696. Sgt. Ericksen called IMU floor staff to report back to holding cell #4. Where we found offender Marks unresponsive. Sgt Ericksen then assigned an emergency cell entry team where I was assigned equipment. We made entry into the holding cell and found offender Marks still unresponsive. I placed offender Marks in wrist restraints and assisted Officer Phipps in getting offender Marks into a sitting position so RN Malone could get the offenders vitels. I then assisted in the application of waist restraints so offender Marks could be transported.

Immediate Action Taken:

| Signature | Date<br>7-20-16 | Title<br>Officer | Name (Please Print)<br>Sherman, G |
|---|---|---|---|

TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE

| Date/Time Received | | Incident Number | |
|---|---|---|---|
| Investigation Assigned To | By | Date | |

Comments:

| Signature | Date |
|---|---|

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)        DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
                                  DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620

Scan Code GM02

SEE 2ND/IMU

TRIP

7-20-16        NURS WILSON
                2-2, mo tRiD



Department of
# Corrections
WASHINGTON STATE

**DISCLOSURE STATEMENT**

TO:   Marks, Paul                                    DATE:   September 12, 2016

FROM:   Stafford Creek Correction Center            WA DOC #:   321696
         191 Constantine Way
         Aberdeen, WA 98520

PATIENT'S NAME:   Marks, Paul                                          :

### Attached is the health information you have been authorized to receive.

☒ **General release of information:** This information is intended for the person to whom it is addressed and for the stated purpose only. It is disclosed to you from records whose confidentiality is protected by state law and may not be disclosed further without the specific consent of the person to whom it pertains or as permitted by law.

☐ **This information is not to be disclosed to the patient** without authorization from the health care professional as authorized under RCW 70.02.090 Patient's request – Denial of examination and copying.

☐ **Sexually transmitted infections, including HIV/AIDS information:** This information has been disclosed to you from records whose confidentiality is protected by state law. State law prohibits you from making any further disclosure of it without the specific written authorization of the person to whom it pertains, or as otherwise permitted by law. A general authorization for the release of medical or other information is NOT sufficient for this purpose.

☐ **Alcohol and drug related information:** This information has been disclosed to you from records protected by federal confidentiality rules (42 CFR part 2). Federal rules prohibit you from making any further disclosure of this information unless further disclosure is expressly permitted by the written consent of the person to whom it pertains or as otherwise permitted by 42 CFR part 2. A general authorization for the release of medical or other information is NOT sufficient for this purpose. The Federal rules restrict any use of this information to criminally investigate or prosecute any alcohol or drug abuse patient.

☐ **You have been provided with the last two years of health care information.** If you require additional information, please contact me.

☐ **Please destroy records when no longer needed.**

☐ **Other:**

*State law (RCW 70.02) and/or federal regulations (42 CFR Part 2) prohibit disclosure of this information without the specific written consent of the person to whom it pertains, or as otherwise permitted by law.*

DOC 13-316 (03/11/2015)                                    ATTACH TO DISCLOSED INFORMATION

7-20-16



August 29, 2016

Paul A Marks #321696
Stafford Creek Correction Center
191 Constantine Way
Aberdeen, WA. 98520

GRAYS HARBOR COMMUNITY HOSPITAL
Attn: Medical Records Department
1006 North H Street
Aberdeen, WA. 98520

RE: Medical Records/Documents from July 20, 2016 to Discharge.

        Please provide me all of my medical records/documents
there is pertaining to my admission July 20, 2016 until
July 23, 2016. This request includes all progress notes,
radiologist reports, doctors findings and recommendations.

                              Thank You
                         S/ _Paul D Marks_____
                              Paul D. Marks # 321696

7-20-16   (3)

DISCHARGE SUMMARY REPORT

## Discharge Summary
**Patient Information:**
Discharge Summary initiated: 07/22/16 at 1311.

**Patient:** MARKS,PAUL D, a 70yo Male admitted on 07/20/16 for seizure.

**Primary Care Provider:** Stafford Creek Infirmary
**Attending Physician:** DONOHOE,SAMUEL  MD

**Reason for stay:**

**Chief Complaint:**
Seizure

**Discharge Diagnoses:**
Seizure, generalized, tonic-clonic
HL
AAA

**History of Present Illness:**
70 y/o M with HL, AAA 5.6 cm dia, sebaceous cyst posterior R ear February 2016, R acute otitis media March 2016, convex scoliosis, no known seizure history, who overnight presented from SCCC for prolonged seizure activity.  Patient currently intubated and sedated.  All history is per ER report.  Briefly, patient yesterday was apparently refusing to move out of a breezeway and then became involved in an altercation with guards with an aggressive take-down.  Patient was then being escorted to solitary confinement when he had a generalized tonic/clonic seizure which persisted for 25+ minutes until EMS attended to patient.  Per their note they found him in status and cyanotic from head down to nipple line.  They susbsequently started supplemental O2 and an IV and administered diazepam 5 mg IV X 2.  Seizure activity persisted.  Patient noted to be hypoxic to low 80's despite BVM with high flow O2.  Subsequently paralyzed and intubated with subsequent resolution of hypoxia with ongoing ventilatory support.  With paralysis physical manifestations of seizure activity of course abated.

Once patient was to our ER he was loaded with phenytoin 825 mg IV then placed on proprofol gtt.  Mechanical ventilation was continued.  With sedation lightened in the ER patient apparently withdrew from painful stimulus

     **\*Electronically Signed\***      07/22/16   1320     SAMUEL DONOHOE, MD

-------------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL      Name:  MARKS,PAUL D
Aberdeen, WA  98520                  DOB:      45
                                     Acct#:              MR#:   M0203326
                           Admission Date:  07/20/16
                           Discharge Date:

7-20-16     (4)

DISCHARGE SUMMARY REPORT

though was not able to follow commands.

Of note, in late June patient had visited a general surgery office in Olympia for re-evaluation of a AAA. Per US it was found to have increased in diameter to 5.6 cm from 5.0 cm on most recent prior imaging in November 2015. He was in the process of being further evaluated in preparation for interventional versus surgical intervention of his progressive AAA.

Otherwise ER notes that parent(s) report that patient's baseline personality/mood is aggressive and labile.

**Hospital course:**
# Seizure.
Unclear etiology. Patient noted remote prior history of seizure though was unable to recall specifics. No AICA on CT head. No abnormalities on MR brain seizure protocol. No marked and/or pertinent laboratory abnormalities. No focal neurologic abnormalities on exam post-extubation. Was intubated PTA for airway protection, subsequently extubated without complications. Dilantin loaded in ER. Continued on Keppra thereafter. Discharged to SCCC on Keppra 500 mg PO BID and instructions to follow up with neurology in outpatient setting to review seizure history, AED dosing henceforth, and consider EEG.

# Bibasilar lung consolidations on imaging.
Noted on CT abd/pelvis but not reported on ensuing CXR. No clear/obvious signs of infection (fever, leukocytosis). Antibiotics deferred.

# AAA.
5.5 cm diameter per CT abd/pelvis here on 7/20/16. Per review of SCCC records and Olympia vascular surgery records is pending intervention in very near future.

# HL.
Resumed on statin at discharge.

**Lab Results:**
Laboratory Tests

**07/22/16 0600:**

    *Electronically Signed*      07/22/16  1320     SAMUEL DONOHOE, MD

--------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL        Name:  MARKS,PAUL D
Aberdeen, WA  98520                     DOB:        45
                                       Acct#:                    MR#:  M0203326
                             Admission Date:  07/20/16
                             Discharge Date:

DISCHARGE SUMMARY REPORT                                      Page 2 of 9

7-20-16   (5)

DISCHARGE SUMMARY REPORT



Serum Bicarbonate 24, Anion Gap 14, Estimated GFR (MDRD) Non-Af Amer > 59, Calcium Level 8.1 L, Calcium Adjusted for Albumin 8.5, Total Bilirubin 0.7, Aspartate Amino Transf (AST/SGOT) 13, Alanine Aminotransferase (ALT/SGPT) 10, Alkaline Phosphatase 60, Total Protein 5.8 L, Albumin 3.5, Albumin/Globulin Ratio 1.5, Red Blood Count 4.76, Mean Corpuscular Volume 85.7, Mean Corpuscular Hemoglobin 28.4, Mean Corpuscular Hemoglobin Concent 33.1, Red Cell Distribution Width 15.5 H, Mean Platelet Volume 12.6 Laboratory Tests

|  | 07/22 0600 |
|---|---|
| Chemistry | |
| Sodium (136 - 145 mEq/L) | 144 |
| Potassium (3.5 - 5.1 mEq/L) | 4.1 |
| Chloride (96 - 107 mEq/L) | 110 H |
| Serum Bicarbonate (22 - 31 mEq/L) | 24 |
| Anion Gap (7 - 18) | 14 |
| BUN (8.0 - 23.0 mg/dL) | 23.0 |
| Creatinine (0.7 - 1.2 mg/dL) | 1.0 |
| Est GFR (MDRD) Non-Af (SEE NOTE SEE NOTE) | > 59 |
| Random Glucose (60 - 140 mg/dL) | 89 |
| Calcium (8.8 - 10.2 mg/dL) | 8.1 L |
| Calcium Adj for Albumin (mg/dL) | 8.5 |
| Total Bilirubin (0.2 - 1.0 mg/dL) | 0.7 |
| AST (10 - 34 U/L) | 13 |
| ALT (10 - 44 U/L) | 10 |
| Alkaline Phosphatase (40 - 129 UL) | 60 |
| Total Protein (6.4 - 8.3 g/dL) | 5.8 L |
| Albumin (3.4 - 4.8 g/dL) | 3.5 |
| Albumin/Globulin Ratio (1 - 1.8) | 1.5 |
| Hematology | |
| WBC (3.6 - 10.8 thou/uL) | 7.2 |

*Electronically Signed*        07/22/16   1320     SAMUEL DONOHOE, MD

------------------------------------------------------------------------------

GRAYS HARBOR COMMUNITY HOSPITAL        Name:   MARKS,PAUL D
Aberdeen, WA   98520                   DOB:       45
                                       Acct#:              MR#:   M0203326
                          Admission Date:   07/20/16
                          Discharge Date:

7-20-16                    (6)

DISCHARGE SUMMARY REPORT

| | |
|---|---|
| RBC (4.21 - 5.94 mill/uL) | 4.76 |
| Hgb (12.5 - 17.1 g/dL) | 13.5 |
| Hct (37.9 - 50.0 %) | 40.8 |
| MCV (78.0 - 97.0 fL) | 85.7 |
| MCH (25.5 - 29.4 pg) | 28.4 |
| MCHC (31.0 - 37.0 g/dL) | 33.1 |
| RDW (11.7 - 14.6 %) | 15.5  H |
| Plt Count (140 - 410 thou/uL) | 171 |
| MPV (9.8 - 13.0 fL) | 12.6 |

**Last Imaging Impressions:**
**MR brain seizure protocol 7/21/16**
    FINDINGS
    MRI imaging of the brain demonstrates no mass, midline shift,
    hydrocephalus, restricted diffusion or abnormal enhancement.  Mild
    generalized atrophy.  There is a minimal amount of periventricular T2
    signal abnormality.  This is commonly described to changes of chronic
    ischemic microangiopathy.  The cerebellum, mid brain, and pons are
    unremarkable.

    Thin section imaging through the temporal lobes demonstrates no
    mesial temporal lobe sclerosis.  No etiology for seizure on current
    examination.

    The optic nerves and chiasm are unremarkable.

    IMPRESSION
    Normal aging brain.  No etiology for seizure on current exam.

**CT head/C-spine non-con 7/20/16**
    FINDINGS
    CT HEAD:  No mass, midline shift, hydrocephalus, or acute


   *Electronically Signed*       07/22/16  1320     SAMUEL DONOHOE, MD

-------------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL       Name:  MARKS,PAUL D
Aberdeen, WA  98520                    DOB:        45
                                      Acct#:  _ _ _ _ _        MR#:  M0203326
                             Admission Date:  07/20/16
                             Discharge Date:

DISCHARGE SUMMARY REPORT  

intracranial hemorrhage.  There is a moderate amount of
periventricular low attenuation.  This is a nonspecific finding
commonly ascribed to changes chronic ischemic microangiopathy.  There
is mild to moderate cortical atrophy.  There is mild bilateral
ethmoid sinus mucosal thickening.  The calvarium is unremarkable.

CT CERVICAL SPINE:  Reversal of the normal cervical curve with the
apex at C3-C4 disc space.  There is advanced multilevel degenerative
disc and facet disease.  No fracture or malalignment.  ET and NG tube
within the neck soft tissues.  The lung apices are unremarkable.

IMPRESSION
1. Moderate nonspecific white matter changes and cortical atrophy.
2. Advanced degenerative disc and facet disease without fracture.
3. Reversal of the normal cervical curve.
4. NG tube coiled within the esophagus.

## CXR 7/21/16
FINDINGS
Scoliosis which distorts the thoracic structures.  Endotracheal tube
tip 3 cm above the carina.  NG tube tip left upper quadrant.  The
heart and mediastinum are normal.  Lungs appear normal, without mass,
consolidation or nodules.

IMPRESSION
1. Endotracheal tube tip 3 cm above the carina.
2. No acute cardiopulmonary changes.
3. Scoliosis.

## CT abd/pelvis 7/20/16
FINDINGS
CT ABDOMEN:  Bibasilar consolidation and small pleural effusions may
represent aspiration.  The heart size stable.  Stable cyst right lobe


  *Electronically Signed*      07/22/16  1320     SAMUEL DONOHOE, MD

--------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL      Name:  MARKS,PAUL D
Aberdeen, WA  98520                   DOB:      45
                                     Acct#:                  MR#:   M0203326
                            Admission Date:  07/20/16
                            Discharge Date:

7-20-16      (8)

DISCHARGE SUMMARY REPORT

of the liver.  Liver otherwise unremarkable.  The gallbladder,
pancreas, spleen and adrenal glands are unremarkable for a
noncontrasted study.  The kidneys are symmetrical without cortical
thinning or calcifications.  No hydronephrosis.  No retroperitoneal
or mesenteric lymphadenopathy.  There is an infrarenal abdominal
aortic aneurysm which is stable in diameter, measuring up to 5.5 cm.
The small and large bowel are normal in caliber.

CT PELVIS:  Foley catheter within the urinary bladder.  There is some
air within the bladder likely iatrogenic.  No lymphadenopathy or
ascites.

No pathological bone lesions.  Scoliotic curve lumbar spine.

NG tube tip within the distal esophagus.

IMPRESSION
1. Bibasilar consolidation possibly representing aspiration.
2. Stable infrarenal abdominal aortic aneurysm.
3. Foley catheter within the urinary bladder.
4. NG tube tip within the distal esophagus and should be advanced
10-15 cm.

**Vital Signs:**

| Date | Temp | Pulse | Resp | B/P | Pulse Ox | FiO2 |
|---|---|---|---|---|---|---|
| 07/21-07/22 | 36.5-37.1 | 65-84 | 18-20 | 83-129/53-85 | 92-96 | |

| Date Time | Temp | Pulse | Resp | B/P | Pulse Ox | O2 Delivery | O2 Flow Rate | FiO2 |
|---|---|---|---|---|---|---|---|---|
| 07/22 1126 | 36.5 | 65 | 18 | 83/53 | 95 | Room Air | | |
| 07/22 0808 | 37.1 | 70 | 20 | 111/70 | 95 | Room Air | | |
| 07/22 0725 | | | | | 94 | Room Air | | |

**\*Electronically Signed\***      07/22/16  1320     SAMUEL DONOHOE, MD

--------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL      Name:  MARKS,PAUL D
Aberdeen, WA  98520                  DOB:         45
                                     Acct#:              MR#:  M0203326
                        Admission Date:  07/20/16
                        Discharge Date:

DISCHARGE SUMMARY REPORT                                Page 6 of 9

7 -20-16

(9)

DISCHARGE SUMMARY REPORT

| | 07/22 0700 |
|---|---|
| Intake Total | 700.00 |
| Output Total | 1400.00 |
| Balance | -700.00 |
| | |
| Intake, Oral | 700.00 |
| Number Unmeasured Voids | 1 |
| Output, Urine | 1400.00 |
| Patient Weight | 77.3 kg |

**Exam:**
**General appearance:** somnolent though easily rousable, oriented X 3, cooperative though cantankerous on exam
**HEENT:** normocephalic, atraumatic, pink conjunctivae, anicteric sclerae, PERRL, EOMI, op clear, mmm
**Neck:** supple, no lymphadenopathy
**Respiratory:** clear auscultation bilat
**Cardiovascular:** regular rate/rhythm, normal S1/S2, no murmurs/rubs/gallops
**Abdominal:** soft, nontender, nondistended, normal bowel sounds, no guarding, no masses, no organomegaly
**Genitourinary:** deferred
**Musculoskeletal:** equal muscle strength
**Extremities:** no cyanosis, no clubbing, no edema
**Skin:** spider angiomata upper chest, shoulders
**Neurologic:** CNs 3-12 intact and symmetric, non-focal neuro exam

## Discharge Instructions
**Discharge Condition:** improved, stable
**Discharge Destination:** Stafford Creek Prison

    *Electronically Signed*        07/22/16   1320      SAMUEL DONOHOE, MD

---------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL        Name:   MARKS,PAUL D
Aberdeen, WA  98520                    DOB:          45
                                       Acct#:                MR#:  M0203326
                           Admission Date:  07/20/16
                           Discharge Date:

DISCHARGE SUMMARY REPORT                                    Page 7 of 9

7-20-16   ⑩

DISCHARGE SUMMARY REPORT

**Avoid Tobacco/Tobacco Products** Avoid Tobacco/Tobacco Products
**Activity at discharge:** as tolerated
**Home Instructions, Activities and Treatments:**

1. You have been prescribed a new medication to prevent
recurrence of seizure: Keppra 500 mg by mouth twice daily.

2. You should be referred to see a neurologist in the
outpatient setting.  When you see the neurologist you can
discuss your seizure prevention medication and specifically
whether you need to continue this indefinitely.  You can
also discuss whether you may benefit from having an EEG
obtained.

3. Your providers at the prison infirmary have been working
diligently to process your referral for your abdominal
aortic aneurysm repair.  This was confirmed through review
of referral notes and per discussion with infirmary staff.

**Diet at discharge:** cardiac/heart healthy
**Symptoms to Report:** chest pain, worsening symptoms, bleeding, confusion
**Allergies**
**Coded Allergies:**
No Known Drug Allergies (07/22/16)

**Prescriptions**
**Continue taking these medications:**
Simvastatin (Simvastatin) 5 MG TABLET
    40 ORAL Daily

**Start taking the following new medications:**
Levetiracetam (Keppra) 500 MG TABLET
    500 MILLIGRAM ORAL Twice daily


   **\*Electronically Signed\***       07/22/16  1320      SAMUEL DONOHOE, MD

--------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL        Name:   MARKS,PAUL D
Aberdeen, WA  98520                     DOB:        45
                                       Acct#:                  MR#:   M0203326
                              Admission Date:  07/20/16
                              Discharge Date:


DISCHARGE SUMMARY REPORT                                    Page 8 of 9

DISCHARGE SUMMARY REPORT

7-20-16     

Days = 30
No Refills

**Copies to:**
STAFFORD CREEK MEDICAL DEPT.

```
    *Electronically Signed*        07/22/16  1320    SAMUEL DONOHOE, MD
-------------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL        Name:   MARKS,PAUL D
Aberdeen, WA  98520                    DOB:            45
                                       Acct#:               MR#:   M0203326
                             Admission Date:  07/20/16
                             Discharge Date:
```

DISCHARGE INSTRUCTIONS REPORT                7-20-16        

## Discharge Instructions
**Activity at discharge:** as tolerated
**Home Instructions, Activities and Treatments:**

1. You have been prescribed a new medication to prevent recurrence of seizure: Keppra 500 mg by mouth twice daily.

2. You should be referred to see a neurologist in the outpatient setting.  When you see the neurologist you can discuss your seizure prevention medication and specifically whether you need to continue this indefinitely.  You can also discuss whether you may benefit from having an EEG obtained.

3. Your providers at the prison infirmary have been working diligently to process your referral for your abdominal aortic aneurysm repair.  This was confirmed through review of referral notes and per discussion with infirmary staff.

**Diet at discharge:** cardiac/heart healthy
**Symptoms to Report:** chest pain, worsening symptoms, bleeding, confusion
**Patient Instructions** Levetiracetam (By mouth)

   *Electronically Signed*      07/22/16  1310      SAMUEL DONOHOE, MD
---------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL              Name:   MARKS, PAUL D
Aberdeen, WA  98520                          DOB:        45
                                             Acct#:                    MR#:
M0203326

                                  Admission Date:  07/20/16
                                  Discharge Date:

DISCHARGE INSTRUCTIONS                                      Page 1 of 1

(13)

7-20-16

HISTORY AND PHYSICAL REPORT    07/20/16

## Patient Information
**Patient data:**
History and Physical Exam initiated:07/21/16 at 0959.

**Primary care Provider:** Stafford Creek CC
**Hospitalist:** Dr. Samuel Donohoe MD

Patient: MARKS,PAUL D, a 70yo Male admitted on 07/20/16.

**Chief Complaint:** Seizure

## HPI
**History of Present Illness:**
70 y/o M with HL, AAA 5.6 cm dia, sebaceous cyst posterior R ear February 2016, R acute otitis media March 2016, convex scoliosis, no known seizure history, who overnight presented from SCCC for prolonged seizure activity.  Patient currently intubated and sedated.  All history is per ER report.  Briefly, patient yesterday was apparently refusing to move out of a breezeway and then became involved in an altercation with guards with an aggressive take-down.  Patient was then being escorted to solitary confinement when he had a generalized tonic/clonic seizure which persisted for 25+ minutes until EMS attended to patient.  Per their note they found him in status and cyanotic from head down to nipple line.  They susbsequently started supplemental O2 and an IV and administered diazepam 5 mg IV X 2.  Seizure activity persisted.  Patient noted to be hypoxic to low 80's despite BVM with high flow O2.  Subsequently paralyzed and intubated with subsequent resolution of hypoxia with ongoing ventilatory support.  With paralysis physical manifestations of seizure activity of course abated.

Once patient was to our ER he was loaded with phenytoin 825 mg IV then placed on proprofol gtt.  Mechanical ventilation was continued.  With sedation lightened in the ER patient apparently withdrew from painful stimulus though was not able to follow commands.

Of note, in late June patient had visited a general surgery office in Olympia for re-evaluation of a AAA.  Per US it was found to have increased in diameter to 5.6 cm from 5.0 cm on most recent prior imaging in November 2015.  He was in the process of being further evaluated in preparation for interventional versus surgical intervention of his progressive AAA.

```
     *Electronically Signed*      07/21/16   1030     SAMUEL DONOHOE, MD
------------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL        Name:   MARKS,PAUL D
Aberdeen,  WA  98520                    DOB:        45
                                       Acct#:                MR#:   M0203326
                                  Admit Date:  07/20/16       Loc:   CCU
```



HISTORY AND PHYSICAL REPORT   07/20/16

Otherwise ER notes that parent(s) report that patient's baseline personality/mood is aggressive and labile.

**ROS:**
Unable to assess

**Past Medical History:**
HL
AAA 5.6 cm dia
Convex scoliosis
Sebaceous cyst R posterior auricular region
Acute OM R ear

**Past Surgical History:**
Unknown

**Family History:**
Unknown

**Social History:**
Currently incarcerated at SCCC.  Unknown tobacco use.  Ostensibly no EtOH, MJ, or illicit drug use.

## Past Med/Surg/Psych/Fam/Subst
**Allergies**
**Coded Allergies:**
Unable to Obtain Allergy Info (07/20/16)

**Medications**
**Reported Medications**
Simvastatin 40  PO DAILY

```
   *Electronically Signed*      07/21/16   1030    SAMUEL DONOHOE, MD
----------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL       Name:   MARKS,PAUL D
Aberdeen,  WA  98520                  DOB:        45
                                      Acct#:                MR#:  M0203326
                                      Admit Date:  07/20/16  Loc:  CCU
```



HISTORY AND PHYSICAL REPORT    07/20/16                     7-20-16

## Substance Use:
   **Patient smoking status:** Unknown if Ever Smoked
   **Alcohol use:** No

## Physical Exam

## Physical examination general:
**Current Vital Signs, I&Os:**

| Date | Temp | Pulse | Resp | B/P | Pulse Ox | FiO2 |
|------|------|-------|------|-----|----------|------|
| 07/20-07/21 | 0.0-36.5 | 49-77 | 14-20 | 80-184/61-131 | 60-100 | 50-70 |

| Date Time | Temp | Pulse | Resp | B/P | Pulse Ox | O2 Delivery | O2 Flow Rate | FiO2 |
|-----------|------|-------|------|-----|----------|-------------|--------------|------|
| 07/21 0736 |  |  |  |  | 100 |  |  |  |
| 07/21 0600 |  | 52 | 17 | 121/87 | 99 |  |  |  |
| 07/21 0530 |  | 50 | 18 | 139/96 | 98 |  |  |  |
| 07/21 0500 |  | 49 | 17 | 141/99 | 100 |  |  |  |
| 07/21 0430 |  | 50 | 17 | 130/88 | 99 |  |  |  |
| 07/21 0423 |  |  |  |  | 100 | Ventilator |  | 50 |
| 07/21 0400 |  | 57 | 17 | 81/61 | 98 |  |  |  |
| 07/21 0330 |  | 58 | 17 | 80/62 | 99 |  |  |  |
| 07/21 0315 |  | 59 | 18 | 80/61 | 99 |  |  |  |
| 07/21 0300 |  | 57 | 17 | 88/66 | 99 |  |  |  |
| 07/21 0245 |  | 57 | 17 | 91/67 | 99 |  |  |  |
| 07/21 0230 |  | 56 | 17 | 96/71 | 100 |  |  |  |

|  | 07/21 0700 |
|--|-----------|
| Intake Total | 2149.00 |
| Output Total | 1250.00 |
| Balance | 899.00 |
|  |  |
| Intake, IV | 2149.00 |

   **\*Electronically Signed\***        07/21/16   1030      SAMUEL DONOHOE, MD

------------------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL          Name:   MARKS,PAUL D
Aberdeen,  WA  98520                     DOB:       45
                                         Acct#:                  MR#:  M0203326
                                         Admit Date:  07/20/16   Loc:  CCU



7-20-16

HISTORY AND PHYSICAL REPORT    07/20/16

| Output, Urine | 1250.00 |
|---|---|
| Patient Weight | 77.3 kg |

**General appearance:** intubated, sedated
**HEENT:** normocephalic, atraumatic, pink conjunctivae, anicteric sclerae, PERRL, ETT and NGT in-situ
**Neck:** supple, no lymphadenopathy
**Respiratory:** clear auscultation bilat
**Cardiovascular:** regular rate/rhythm, normal S1/S2, no murmurs/rubs/gallops
**Abdominal:** soft, nontender, nondistended, normal bowel sounds, no guarding, no masses, no organomegaly
**Genitourinary:** clear yellow urine, Foley catheter
**Musculoskeletal:** sedated, unable to assess
**Extremities:** no cyanosis, no clubbing, no edema
**Skin:** spider angiomata upper chest, shoulders
**Neurologic:** not alert
**Current labs:**

07/21/16 0530:



8.9 > 13.9 / 41.0 < 173          140 | 103 | 16.0 < 97
                                 4.2 |     | 0.8

07/20/16 2000:



6.4 > 14.2 / 42.1 < 195          138 | 105 | 18.0 < 104
                                 4.8 |     | 0.9

Laboratory Tests

|  | 07/21 | 07/21 | 07/20 | 07/20 |
|---|---|---|---|---|

    *Electronically Signed*      07/21/16  1030    SAMUEL DONOHOE, MD

-----------------------------------------------------------------------

GRAYS HARBOR COMMUNITY HOSPITAL        Name:   MARKS,PAUL D
Aberdeen,  WA  98520                   DOB:         45
                                       Acct#:                  MR#:  M0203326
                               Admit Date:  07/20/16   Loc:  CCU

HISTORY AND PHYSICAL REPORT    07/20/16       7-20-16       

| | 0715 | 0530 | 2003 | 2000 |
|---|---|---|---|---|
| **Blood Gas** | | | | |
| pCO2 (32 - 45 mmHg) | 27 L | | | |
| pO2 (75 - 100 mmHg) | 101 H | | | |
| Bicarbonate Standard (22 - 29 mmol/L) | 21 L | | | |
| O2 Sat Specimen (85 - 100 %) | 98 | | | |
| ABG pH (7.35 - 7.45) | 7.51 H | | | |
| ABG Base Excess (-2 - 3 mmol/L) | -0 | | | |
| Modified Allen Test | POS (PASS) | | | |
| O2 Delivery Device | VENT | | | |
| Vent Rate | 70/550/18/5 | | | |
| **Chemistry** | | | | |
| POC Sodium (138 - 146 mEq/L) | | | 141 | |
| Sodium (136 - 145 mEq/L) | | 140 | | |
| POC Potassium (3.5 - 4.5 mEq/L) | | | 4.8 H | |
| Potassium (3.5 - 5.1 mEq/L) | | 4.2 | | |
| POC Chloride (96 - 108 mEq/L) | | | 107 | |
| Chloride (96 - 107 mEq/L) | | 103 | | |
| POC Total CO2 (24 - 29 mEq/L) | | | 21 L | |
| Serum Bicarbonate (22 - 31 mEq/L) | | 21 L | | |
| Anion Gap (7 - 18) | | 20 H | | |
| POC BUN (7.8 - 21.4 mg/dL) | | | 20.0 | |
| BUN (8.0 - 23.0 mg/dL) | | 16.0 | | |
| Creatinine (0.7 - 1.2 mg/dL) | | 0.8 | | |
| POC Creatinine (0.7 - 1.2 mg/dL) | | | 0.9 | |
| Est GFR (MDRD) Non-Af (SEE NOTE SEE NOTE) | | > 59 | | |
| POC Glucose (60 - 121 mg/dL) | | | 105 | |
| Random Glucose (60 - 140 mg/dL) | | 97 | | |
| Lactic Acid (0.5 - 2.0 mmol/L) | | | | 1.5 |
| Calcium (8.8 - 10.2 mg/dL) | | 8.3 L | | |
| Calcium Adj for Albumin (mg/dL) | | 8.5 | | |
| POC Ioniz Calcium Meas (4.6 - 5.2 mg/dL) | | | 4.2 L | |
| Total Bilirubin (0.2 - 1.0 mg/dL) | | 1.0 | | |
| AST (10 - 34 U/L) | | 14 | | |

**\*Electronically Signed\***      07/21/16   1030     SAMUEL DONOHOE, MD

--------------------------------------------------------------

GRAYS HARBOR COMMUNITY HOSPITAL        Name:   MARKS,PAUL D
Aberdeen,  WA  98520                   DOB:         45
                          Acct#:                    MR#:   M0203326
                     Admit Date:   07/20/16     Loc:   CCU

HISTORY AND PHYSICAL REPORT   07/20/16      

| | | | |
|---|---|---|---|
| ALT (10 - 44 U/L) | | 10 | |
| Alkaline Phosphatase (40 - 129 UL) | | 60 | |
| Total Protein (6.4 - 8.3 g/dL) | 5.9 L | | |
| Albumin (3.4 - 4.8 g/dL) | 3.7 | | |
| Albumin/Globulin Ratio (1 - 1.8) | 1.7 | | |
| Hematology | | | |
| WBC (3.6 - 10.8 thou/uL) | | 8.9 | |
| RBC (4.21 - 5.94 mill/uL) | | 4.74 | |
| Hgb (12.5 - 17.1 g/dL) | | 13.9 | |
| POC Hgb (14.0 - 18.0 g/dL) | | | 14.6 |
| Hct (37.9 - 50.0 %) | | 41.0 | |
| POC Hct (42 - 52 %) | | | 43.0 |
| MCV (78.0 - 97.0 fL) | | 86.5 | |
| MCH (25.5 - 29.4 pg) | | 29.3 | |
| MCHC (31.0 - 37.0 g/dL) | | 33.9 | |
| RDW (11.7 - 14.6 %) | | 15.1 H | |
| Plt Count (140 - 410 thou/uL) | | 173 | |
| MPV (9.8 - 13.0 fL) | | 12.4 | |

| | 07/20 2000 | 07/20 2000 | 07/20 1957 |
|---|---|---|---|
| Blood Gas | | | |
| pCO2 (32 - 45 mmHg) | | | 31 L |
| pO2 (75 - 100 mmHg) | | | 338 H |
| Bicarbonate Standard (22 - 29 mmol/L) | | | 21 L |
| O2 Sat Specimen (85 - 100 %) | | | 99 |
| ABG pH (7.35 - 7.45) | | | 7.45 |
| ABG Base Excess (-2 - 3 mmol/L) | | | -2 |
| Modified Allen Test | | | POS (PASS) |
| O2 Delivery Device | | | VENT |
| Vent Rate | | | 100/550/20/5 |
| Chemistry | | | |
| Sodium (136 - 145 mEq/L) | | 138 | |
| Potassium (3.5 - 5.1 mEq/L) | | 4.8 | |

*Electronically Signed*     07/21/16   1030     SAMUEL DONOHOE, MD

---------------------------------------------------------------------------

GRAYS HARBOR COMMUNITY HOSPITAL          Name:  MARKS,PAUL D
Aberdeen,  WA   98520                    DOB:   .   . 45
                    Acct#:                        MR#:  M0203326
                    Admit Date:  07/20/16          Loc:  CCU

7-20-16          (19)

HISTORY AND PHYSICAL REPORT   07/20/16

| | | | |
|---|---|---|---|
| Chloride (96 - 107 mEq/L) | | 105 | |
| Serum Bicarbonate (22 - 31 mEq/L) | | 23 | |
| Anion Gap (7 - 18) | | 15 | |
| BUN (8.0 - 23.0 mg/dL) | | 18.0 | |
| Creatinine (0.7 - 1.2 mg/dL) | | 0.9 | |
| Est GFR (MDRD) Non-Af (SEE NOTE SEE NOTE) | | > 59 | |
| Random Glucose (60 - 140 mg/dL) | | 104 | |
| Calcium (8.8 - 10.2 mg/dL) | | 7.9 L | |
| Calcium Adj for Albumin (mg/dL) | | 8.0 | |
| Total Bilirubin (0.2 - 1.0 mg/dL) | | 0.9 | |
| AST (10 - 34 U/L) | | 14 | |
| ALT (10 - 44 U/L) | | 11 | |
| Alkaline Phosphatase (40 - 129 UL) | | 60 | |
| Troponin T (<0.01 ng/mL) | | < 0.01 | |
| B-Natriuretic Peptide (0 - 900 pg/mL) | 75 | | |
| Total Protein (6.4 - 8.3 g/dL) | | 6.5 | |
| Albumin (3.4 - 4.8 g/dL) | | 3.9 | |
| Albumin/Globulin Ratio (1 - 1.8) | | 1.5 | |
| Coagulation | | | |
| PT (11.3 - 14.6 sec) | | 14.3 | |
| INR | | 1.06 | |
| Hematology | | | |
| WBC (3.6 - 10.8 thou/uL) | | 6.4 | |
| RBC (4.21 - 5.94 mill/uL) | | 4.91 | |
| Hgb (12.5 - 17.1 g/dL) | | 14.2 | |
| Hct (37.9 - 50.0 %) | | 42.1 | |
| MCV (78.0 - 97.0 fL) | | 85.7 | |
| MCH (25.5 - 29.4 pg) | | 28.9 | |
| MCHC (31.0 - 37.0 g/dL) | | 33.7 | |
| RDW (11.7 - 14.6 %) | | 14.9 H | |
| Plt Count (140 - 410 thou/uL) | | 195 | |
| MPV (9.8 - 13.0 fL) | | 11.9 | |
| Toxicology | | | |
| Salicylates (<30 mg/dL) | | < 0.3 | |

   **\*Electronically Signed\***       07/21/16   1030     SAMUEL DONOHOE, MD

-----------------------------------------------------------------------------------

GRAYS HARBOR COMMUNITY HOSPITAL          Name:   MARKS,PAUL D
Aberdeen,  WA  98520                     DOB:   11/01/45
                                         Acct#:  G019621986    MR#:  M0203326
                                  Admit Date:  07/20/16    Loc:  CCU

7-20-16 

HISTORY AND PHYSICAL REPORT    07/20/16

| Acetaminophen (<30 ug/mL) | < 5 | |
| Serum Alcohol (<0.01 gm/dL) | < 0.01 | |

## Current imaging:
**CT head/C-spine non-con 7/20/16**

FINDINGS
CT HEAD: No mass, midline shift, hydrocephalus, or acute intracranial hemorrhage. There is a moderate amount of periventricular low attenuation. This is a nonspecific finding commonly ascribed to changes chronic ischemic microangiopathy. There is mild to moderate cortical atrophy. There is mild bilateral ethmoid sinus mucosal thickening. The calvarium is unremarkable.

CT CERVICAL SPINE: Reversal of the normal cervical curve with the apex at C3-C4 disc space. There is advanced multilevel degenerative disc and facet disease. No fracture or malalignment. ET and NG tube within the neck soft tissues. The lung apices are unremarkable.

IMPRESSION
1. Moderate nonspecific white matter changes and cortical atrophy.
2. Advanced degenerative disc and facet disease without fracture.
3. Reversal of the normal cervical curve.
4. NG tube coiled within the esophagus.

**CXR 7/21/16**

FINDINGS
Scoliosis which distorts the thoracic structures. Endotracheal tube tip 3 cm above the carina. NG tube tip left upper quadrant. The heart and mediastinum are normal. Lungs appear normal, without mass, consolidation or nodules.

IMPRESSION
1. Endotracheal tube tip 3 cm above the carina.

**\*Electronically Signed\***     07/21/16   1030     SAMUEL DONOHOE, MD

---

GRAYS HARBOR COMMUNITY HOSPITAL     Name:  MARKS,PAUL D
Aberdeen,  WA  98520                DOB:  11/01/45
                                    Acct#:  G019621986    MR#:  M0203326
                         Admit Date:  07/20/16    Loc:  CCU

7-20-16   (20)

HISTORY AND PHYSICAL REPORT    07/20/16

    2. No acute cardiopulmonary changes.
    3. Scoliosis.

**CT abd/pelvis 7/20/16**
    FINDINGS
    CT ABDOMEN:  Bibasilar consolidation and small pleural effusions may
    represent aspiration.  The heart size stable.  Stable cyst right lobe
    of the liver.  Liver otherwise unremarkable.  The gallbladder,
    pancreas, spleen and adrenal glands are unremarkable for a
    noncontrasted study.  The kidneys are symmetrical without cortical
    thinning or calcifications.  No hydronephrosis.  No retroperitoneal
    or mesenteric lymphadenopathy.  There is an infrarenal abdominal
    aortic aneurysm which is stable in diameter, measuring up to 5.5 cm.
    The small and large bowel are normal in caliber.

    CT PELVIS:  Foley catheter within the urinary bladder.  There is some
    air within the bladder likely iatrogenic.  No lymphadenopathy or
    ascites.

    No pathological bone lesions.  Scoliotic curve lumbar spine.

    NG tube tip within the distal esophagus.

    IMPRESSION
    1. Bibasilar consolidation possibly representing aspiration.
    2. Stable infrarenal abdominal aortic aneurysm.
    3. Foley catheter within the urinary bladder.
    4. NG tube tip within the distal esophagus and should be advanced
    10-15 cm.

## Impressions/Treatment Plan
**Problems/Plan:**

    **\*Electronically Signed\***      07/21/16   1030      **SAMUEL DONOHOE, MD**

---------------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL     Name:   MARKS,PAUL D
Aberdeen,  WA  98520             DOB:   11/01/45
                           Acct#:   G019621986   MR#:   M0203326
                 Admit Date:   07/20/16   Loc:   CCU

7-20-16      

HISTORY AND PHYSICAL REPORT    07/20/16

# Seizure.
Unclear etiology.  No known hx.  No AICA on CT head.  MR brain seizure protocol once off ventilator.  EEG once off sedation.  Dilantin loaded in ER.  Will substitute Keppra for Dilantin for relative ease of dosing and avoid drug level monitoring though need to remain mindful of potential mood changes (aggression, irritability) on Keppra.

# Respiratory alkalosis.
Will adjust ventilator settings.

# Bibasilar lung consolidations on imaging.
Not reported on AM CXR.  No clear/obvious signs of infection (fever, leukocytosis).  Will defer antibiotics and monitor for now.

# AAA.
Pending intervention.

# HL.
Statin non-essential currently.

FEN - NPO, IVFs
PPx - enoxaparin
Full code / Full care

        *Electronically Signed*      07/21/16   1030     SAMUEL DONOHOE, MD

----------------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL         Name:   MARKS,PAUL D
Aberdeen,  WA  98520                     DOB:   11/01/45
                                        Acct#:  G019621986      MR#:  M0203326
                                   Admit Date:  07/20/16        Loc:  CCU


HISTORY AND PHYSICAL REPORT                          Page 10 of 10

7-20-16     (23)

EMERGENCY DEPARTMENT REPORT 07/20/16

# **See Addendum**

## History of Present Illness

## General
**Time Seen by MD:** 1954
**Arrival to unit via:** Stretcher with Security
**Chief Complaint** Seizure
**Source** EMS, Security

## History of Present Illness
**Initial Comments**
Patient is a 70-year-old male with a chief complaint of seizure.
Per security and EMS, the patient was refusing to remove out of the breezeway at Stafford Creek correctional facility.  This ended up with an altercation with the guards, and an aggressive take down.  As the patient was being escorted to a solitary confinement, the patient apparently had a generalized tonic/clonic seizure.  This persisted for at least 25 + minutes.  Patient has no known seizure disorder. Patient was evaluated today for an abdominal aneurysm which measures 5.6 cm.
It is unknown if the patient had any toxic ingestions today.  It is unknown if the patient was altered. Parents report that the patient is normally labile and aggressive.

## PAST HX

**Past History:**
**Medical History:**
Hyperlipidemia
AAA, 5.6 cm
**Medications:**
**Reported Medications**
Simvastatin (Unknown Dose)  PO


**Allergies:**


    **\*Electronically Signed\***      07/20/16  2211    KEVIN J MIERZEJEWSKI, DO

-----------------------------------------------------------------------------------

| | | | |
|---|---|---|---|
| GRAYS HARBOR COMMUNITY HOSPITAL | Name:  MARKS,PAUL D | | |
| Aberdeen, WA  98520 | DOB:  11/01/45 | | |
| | Acct#:  G019621986 | MR#: | M0203326 |
| | Service Date:  07/20/16 | Loc: | ER |

EMERGENCY DEPARTMENT REPORT 07/20/16

7-2016 

**Coded Allergies:**
Unable to Obtain Allergy Info (07/20/16)

## Review of Systems

**Review of Systems**
**Constitutional:**
Reports: unable to obtain.

## Physical Exam
**General appearance comment:**
Exam limited by: Intubated, paralyzed
General appearance: well-nourished, well-developed, no acute distress
HEEENT:head atraumatic,  ENT inspection normal, Moist mucous membranes
Neck: normal inspection,  trachea midline, no JVD
Respiratory: chest non-tender, no respiratory distress, Breath sounds normal
Heart: regular rate and rhythm, no murmur, gallops, rubs
Abdomen: soft, large mass in left lower quadrant which is pulsatile.
Extremities:, normal appearance, no pedal edema.  Patient is currently restrained and backboarded
Neuro:  GCS is 3 T evaluation is currently limited by paralysis,
Psych:  Unable to assess psychological at this time
Skin:  Pallor, warm and dry

## Patient Evaluation
**EKG/XRAY/CT**
   CT
Head/C-spine:  Negative
Abdomen/pelvis without contrast:  No evidence of aneurysmal leak.  Consolidation bilateral lower lung bases.

     *Electronically Signed*      07/20/16  2211    KEVIN J MIERZEJEWSKI, DO

---------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL        Name:   MARKS,PAUL D
Aberdeen, WA  98520                     DOB:   11/01/45
                                       Acct#:  G019621986    MR#:  M0203326
                               Service Date:  07/20/16     Loc:  ER

EMERGENCY DEPARTMENT REPORT 07/20/16

7-20-16

(illegible handwritten marking)

## Clinical Course
**Course:**
   **Time:** 2208
   **Comment:**
Spoke with Dr. Donohoe, willing to accept the patient.

Re-evaluated, under lightened sedation.  Patient is able to withdrawal and localize pain. Still not able to fully follow commands.
**Critical Care Time:** 30-74 minutes
**Critical Care:**
The patient satisfied the definition of criticality in that they had a high probability of imminent deterioration of their condition.  Critical care time includes time spent at the bedside plus, where appropriate: gathering information from family, EMS, old records, caregivers, interpretation of test results, and time spent discussing patient with other physicians.

## Departure
**Completion of Care Time:** 2209
**Clinical Impression:**
**Primary Impression:** Respiratory failure
**Secondary Impressions:** History of abdominal aortic aneurysm, Seizure-like activity
**Disposition** ER ADMIT TO CCU/ICU
**Condition:** Stable
**Patient Instructions** myGHCares Patient Portal, Where should I go for care?
**Departure Forms**
**Durable Medical Equipment**
**Home Medications/Allergy List**
**Routine Aftercare**

**ADDENDUM: MIERZEJEWSKI,KEVIN on 07/20/16 at 2211**

Sinus @ 72. No interval abnormalities. No ST-T wave changes

   *Electronically Signed*      07/20/16   2211      KEVIN J MIERZEJEWSKI, DO

----------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL       Name:  MARKS,PAUL D
Aberdeen, WA  98520                    DOB:  11/01/45
                                      Acct#:  G019621986    MR#:  M0203326
                               Service Date:  07/20/16      Loc:  ER

7-20-16   (26)

EMERGENCY DEPARTMENT REPORT 07/20/16

 

 

     *Electronically Signed*      07/20/16  2211    KEVIN J MIERZEJEWSKI, DO

-------------------------------------------------------------------------------
GRAYS HARBOR COMMUNITY HOSPITAL          Name:  MARKS,PAUL D
Aberdeen, WA  98520                       DOB:  11/01/45
                                        Acct#:  G019621986    MR#:  M0203326
                                 Service Date:  07/20/16       Loc:  ER


EMERGENCY DEPARTMENT REPORT                              Page 4 of 4

```
RUN DATE: 09/07/16                    Grays Harbor Laboratory                    PAGE 1
RUN TIME: 1048              Lab Archive System Summary Report  <<< FINAL >>>
RUN USER: JBYRD               PCI User: JBYRD   Lab Database: LAB.GRY
```

| PATIENT: MARKS,PAUL D | | ACCT #: G019621986 | LOC: 3RD | U #: M0203326 |
|---|---|---|---|---|
| | | AGE/SX: 70/M | ROOM: 316 | REG: 07/20/16 |
| REG DR: DONOHOE,SAMUEL  MD | | STATUS: DIS IN | BED: 02 | DIS: 07/22/16 |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*POINT-OF-CARE TESTING\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| Date | 7/20/16 | | |
|---|---|---|---|
| Time | 2003 | Reference | Units |
| Sodium poc | 141(a) | [138-146] | mEq/L |
| Potassium poc | 4.8(a)  H | [3.5-4.5] | mEq/L |
| Chloride poc | 107(a) | [96-108] | mEq/L |
| Total CO2 poc | 21(a)  L | [24-29] | mEq/L |
| Glu Rand poc | 105(a) | [60-121] | mg/dL |
| BUN poc | 20.0(a) | [7.8-21.4] | mg/dL |
| Creatinine poc | 0.9(a) | [0.7-1.2] | mg/dL |
| Calcium Ion poc | 4.2(b)  L | [4.6-5.2] | mg/dL |
| Hemoglobin poc | 14.6(a) | [14.0-18.0] | g/dL |
| Hematocrit poc | 43.0(a) | [42-52] | % |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*CHEMISTRY\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| Date | 7/22/16 | 7/21/16 | 7/20/16 | | |
|---|---|---|---|---|---|
| Time | 0600 | 0530 | 2000 | Reference | Units |
| Sodium | 144 | 140 | | [136-145] | mEq/L |
| Potassium | 4.1 | 4.2 | | [3.5-5.1] | mEq/L |
| Chloride | 110  H | 103 | | [96-107] | mEq/L |
| Bicarbonate | 24 | 21  L | | [22-31] | mEq/L |
| Anion Gap | 14 | 20  H | | [7-18] | |
| Lactic Acid Ven | | | 1.5 | [0.5-2.0] | mmol/L |
| Glucose Random | 89 | 97 | | [60-140] | mg/dL |
| Urea Nitrogen | 23.0 | 16.0 | | [8.0-23.0] | mg/dL |
| Creatinine | 1.0 | 0.8 | | [0.7-1.2] | mg/dL |
| GFR Est NonAfr | > 59(d) | > 59(d) | | [SEE NOTE] | SEE NOTE |
| Calcium | 8.1  L | 8.3  L | | [8.8-10.2] | mg/dL |
| Alb.adj.Calcium | 8.5 | 8.5 | | | mg/dL |
| Total Protein | 5.8(e)  L | 5.9(e)  L | | [6.4-8.3] | g/dL |
| Albumin | 3.5 | 3.7 | | [3.4-4.8] | g/dL |
| A/G Ratio | 1.5 | 1.7 | | [1-1.8] | |
| Bilirubin Total | 0.7 | 1.0 | | [0.2-1.0] | mg/dL |

```
NOTES:  (a)  GHCH Point of Care Testing
             Performed as point-of-care at Grays Harbor Community Hospital
             915 Anderson Drive, Aberdeen, WA 98520
             Francois Cady, M.D.
        (b)  See (c), (a)
        (c)  Performed on whole blood. Reference range differs from
             serum. No pediatric range.
        (d)  Adult reference range ( >18 yrs of age) for eGFR is
             >59mL/min/1.73sq.meters. This result is for
             non-African Americans. If patient is African American,
             multiply by 1.21 for correct estimate.
        (e)  For recumbent patients: 6.0 - 7.8 is "normal."
             Patients >60y may run about 0.2g lower.
```

| Patient: MARKS,PAUL D | Age/Sex: 70/M | Acct#G019621986 | Unit#M0203326 |
|---|---|---|---|

```
RUN DATE: 09/07/16              Grays Harbor Laboratory                      PAGE 2
RUN TIME: 1048         Lab Archive System Summary Report  <<< FINAL >>>
RUN USER: JBYRD          PCI User: JBYRD  Lab Database: LAB.GRY
```

| Patient: MARKS, PAUL D | #G019621986 | (Continued) |
|---|---|---|

### CHEMISTRY continued...

| Date / Time | 7/22/16 0600 | 7/21/16 0530 | 7/20/16 2000 | Reference | Units |
|---|---|---|---|---|---|
| ALT | 10 | 10 | | [10-44] | U/L |
| Alk Phosphatase | 60 | 60 | | [40-129] | UL |
| AST | 13 | 14 | | [10-34] | U/L |

| Date / Time | 7/20/16 2000 | Reference | Units |
|---|---|---|---|
| Sodium | 138 | [136-145] | mEq/L |
| Potassium | 4.8 | [3.5-5.1] | mEq/L |
| Chloride | 105 | [96-107] | mEq/L |
| Bicarbonate | 23 | [22-31] | mEq/L |
| Anion Gap | 15 | [7-18] | |
| Glucose Random | 104 | [60-140] | mg/dL |
| Urea Nitrogen | 18.0 | [8.0-23.0] | mg/dL |
| Creatinine | 0.9 | [0.7-1.2] | mg/dL |
| GFR Est NonAfr | > 59(f) | [SEE NOTE] | SEE NOTE |
| Calcium | 7.9  L | [8.8-10.2] | mg/dL |
| Alb.adj.Calcium | 8.0 | | mg/dL |
| Total Protein | 6.5(g) | [6.4-8.3] | g/dL |
| Albumin | 3.9 | [3.4-4.8] | g/dL |
| A/G Ratio | 1.5 | [1-1.8] | |
| Bilirubin Total | 0.9 | [0.2-1.0] | mg/dL |
| ALT | 11 | [10-44] | U/L |
| Alk Phosphatase | 60 | [40-129] | UL |
| AST | 14 | [10-34] | U/L |
| Troponin T | < 0.01 | [<0.01] | ng/mL |
| Alcohol Serum | < 0.01(h) | [<0.01] | gm/dL |

### THERAPEUTIC DRUG MONITORING

| Date / Time | 7/20/16 2000 | Reference | Units |
|---|---|---|---|
| Acetaminophen | < 5 | [<30] | ug/mL |
| Salicylates | < 0.3 | [<30] | mg/dL |

```
NOTES:  (f)  Adult reference range ( >18 yrs of age) for eGFR is
             >59mL/min/1.73sq.meters. This result is for
             non-African Americans. If patient is African American,
             multiply by 1.21 for correct estimate.
        (g)  For recumbent patients: 6.0 - 7.8 is "normal."
             Patients >60y may run about 0.2g lower.
        (h)  Values up to 0.050 gm/dL are not indicative of alcohol
             intoxication.
```

| Patient: MARKS,PAUL D | Age/Sex: 70/M | Acct#G019621986 | Unit#M0203326 |
|---|---|---|---|

**Patient:** MARKS,PAUL D                    #G019621986          **(Continued)**

************************************BLOOD GASES & COOXIMETRY*******************************

| Date | 7/21/16 | | 7/20/16 | | Reference | Units |
|------|---------|---|---------|---|-----------|-------|
| Time | 0715 | | 1957 | | | |
| Oxygen Delivery | VENT | | VENT | | | |
| FIO2/VT/Rate? | 70/550/18/5 | | 100/550/20/5 | | | |
| pH, Arterial | 7.51 | H | 7.45 | | [7.35-7.45] | |
| PCO2 | 27 | L | 31 | L | [32-45] | mmHg |
| PO2 | 101 | H | 338 | H | [75-100] | mmHg |
| Bicarbonate | 21 | L | 21 | L | [22-29] | mmol/L |
| Base Excess | -0 | | -2 | | [-2-3] | mmol/L |
| O2 Saturation | 98 | | 99 | | [85-100] | % |

**Patient:** MARKS,PAUL D              **Age/Sex:** 70/M        **Acct#**G019621986      **Unit#**M0203326

```
RUN DATE: 09/07/16                  Grays Harbor Laboratory                    PAGE 4
RUN TIME: 1048          Lab Archive System Summary Report  <<< FINAL >>>
RUN USER: JBYRD            PCI User: JBYRD   Lab Database: LAB.GRY
```

**Patient:** MARKS,PAUL D                 #G019621986        (Continued)

**************************************HEMATOLOGY**************************************

| Date | 7/22/16 | 7/21/16 | 7/20/16 | | |
| Time | 0600 | 0530 | 2000 | Reference | Units |
|---|---|---|---|---|---|
| WBC | 7.2 | 8.9 | 6.4 | [3.6-10.8] | thou/uL |
| RBC | 4.76 | 4.74 | 4.91 | [4.21-5.94] | mill/uL |
| Hemoglobin | 13.5 | 13.9 | 14.2 | [12.5-17.1] | g/dL |
| Hematocrit | 40.8 | 41.0 | 42.1 | [37.9-50.0] | % |
| MCV | 85.7 | 86.5 | 85.7 | [78.0-97.0] | fL |
| MCH | 28.4 | 29.3 | 28.9 | [25.5-29.4] | pg |
| MCHC | 33.1 | 33.9 | 33.7 | [31.0-37.0] | g/dL |
| RDW-CV (aniso) | 15.5 H | 15.1 H | 14.9 H | [11.7-14.6] | % |
| Platelets | 171 | 173 | 195 | [140-410] | thou/uL |
| MPV | 12.6 | 12.4 | 11.9 | [9.8-13.0] | fL |

COAGULATION

| Date | 7/20/16 | | |
| Time | 2000 | Reference | Units |
|---|---|---|---|
| Protime | 14.3 | [11.3-14.6] | sec |
| INR | 1.06(i) | | |

| Test | Day | Date | Time | Result | Reference | Units |
|---|---|---|---|---|---|---|
| NT-proBNP | 1 | JUL 20 | 2000 | 75(j) | [0-900] | pg/mL |
| Mod Allen Test | 2 | JUL 21 | 0715 | POS (PASS) | | |
| Mod Allen Test | 1 | JUL 20 | 1957 | POS (PASS) | | |
| Methamphetamine | 1 | JUL 20 | UNK | Negative | [Negative] | |
| Cocaine | 1 | JUL 20 | UNK | Negative | [Negative] | |
| THC (Marijuana) | 1 | JUL 20 | UNK | Negative | [Negative] | |

```
NOTES:  (i)  INR therapeutic range: 2.0-3.0
             Prosthetic valves & recurrent systemic embolism: 3.0-4.5
             WARNING: Heparin within last 2 hours of collection may cause
             a false elevation. (Not a problem with low-molecular weight
             heparins.)
        (j)  50-75 years of age
             NT-proBNP values <300 pg/mL have a 99% negative predictive
             value for excluding acute congestive heart failure(CHF).
             A cutoff of 1,200 pg/mL for patients with an eGFR <60 yields
             a diagnostic sensitivity and specificity of 89% and 72% for
             acute CHF. A diagnostic NT-proBNP cutoff of 900 pg/mL has
             been suggested in adults 50 to 75 years of age in the
             absence of renal failure.

             References:
             Januzzi JL, et.al. Am J Cardiol 2005;95:948-954.
             Baggish AL, et.al. Crit Pathways in Cardiol 2004;3:171-176.
             DeFilippi C, et.al. Am J Cardiol 2008;101(suppl):82A-88A.
```

**Patient:** MARKS,PAUL D          **Age/Sex:** 70/M     **Acct#**G019621986   **Unit#**M0203326

```
RUN DATE: 09/07/16                    Grays Harbor Laboratory                      PAGE 5
RUN TIME: 1048            Lab Archive System Summary Report   <<< FINAL >>>
RUN USER: JBYRD              PCI User: JBYRD    Lab Database: LAB.GRY
```

| Patient: MARKS,PAUL D | | | | #G019621986 | | (Continued) |
|---|---|---|---|---|---|---|

| Test | Day | Date | Time | Result | Reference | Units |
|---|---|---|---|---|---|---|
| MDMA (Ecstasy) | 1 | JUL 20 | UNK | Negative | [Negative] | |
| Methadone | 1 | JUL 20 | UNK | Negative | [Negative] | |
| Opiates | 1 | JUL 20 | UNK | Negative | [Negative] | |
| Benzodiazepines | 1 | JUL 20 | UNK | (k) Abn | [Negative] | |
| Tricycl Antidep | 1 | JUL 20 | UNK | Negative | [Negative] | |
| Barbiturates | 1 | JUL 20 | UNK | Negative | [Negative] | |
| Phencyclidine | 1 | JUL 20 | UNK | Negative | [Negative] | |
| Amphetamines | 1 | JUL 20 | UNK | Negative | [Negative] | |
| Oxycodone | 1 | JUL 20 | UNK | Negative | [Negative] | |
| Drug Cut-offs | 1 | JUL 20 | UNK | SEE BELOW(m) | | |

```
NOTES:  (k)   POSITIVE Abn
              See also (l)
        (l)   This is a screening test for clinical purposes only. A more
              specific alternate method must be ordered for confirmation.
              Clinical consideration and professional judgment should be
              applied when interpreting this screen. If needed,
              confirmation must be ordered separately.
        (m)   The following cut-off concentrations are established for
              the drug classes screened:
                    PCP   Phencyclidine               25 ng/mL
                    BZO   Benzodiazepines            300 ng/mL
                    COC   Cocaine                    300 ng/mL
                    AMP   Amphetamines              1000 ng/mL
                    THC   Marijuana Metabolites       50 ng/mL
                    OPI   Opiates                    300 ng/mL
                    BAR   Barbiturates               300 ng/mL
                    TCA   Tricyclic Antidepressants 1000 ng/mL
                    OXY   Oxycodone                  100 ng/mL
                    MET   Methamphetamine           1000 ng/mL
                    MTD   Methadone                  300 ng/mL
                    MDMA  Ecstasy                    500 ng/mL
```

| Patient: MARKS,PAUL D | Age/Sex: 70/M | Acct#G019621986 | Unit#M0203326 |
|---|---|---|---|

```
RUN DATE: 09/07/16                  Grays Harbor Laboratory                    PAGE 6
RUN TIME: 1048           Lab Archive System Summary Report   <<< FINAL >>>
RUN USER: JBYRD              PCI User: JBYRD    Lab Database: LAB.GRY
```

| Patient: MARKS,PAUL D | #G019621986 | (Continued) |
|---|---|---|

```
                              MICROBIOLOGY
*******************************BACTERIOLOGY********************************
```

```
Specimen: 16:B0005703R     COMP   Collected: 07/20/16-2300      Received:   07/21/16-0724
                           Source:   NARES          Sp Descrip: BOTH
> MRSA SCREEN                          Final 07/22/16
                                NEGATIVE for Methicillin Resistant Staph.aureus
```

| Patient: MARKS,PAUL D | Age/Sex: 70/M | Acct#G019621986 | Unit#M0203326 |
|---|---|---|---|

```
RUN DATE: 09/07/16              Grays Harbor Laboratory
RUN TIME: 1048       Lab Archive System Summary Report  <<< FINAL >>>
RUN USER: JBYRD            PCI User: JBYRD    Lab Database: LAB.GRY
```

| Patient: MARKS,PAUL D | #G019621986 | (Continued) |
|---|---|---|

**\*\*CANCELLED SPECIMENS\*\***

```
0720:BB00006S     CAN, Coll: 07/20/16-2000 Recd: - (R#01730949) MIERZEJEWSKI,KE
      Ordered: Grp,Type & Scn
      Comment: CANCEL PER DR MIERZEJEWSKI
```

| Patient: MARKS,PAUL D | Age/Sex: 70/M | Acct#G019621986 | Unit#M0203326 |
|---|---|---|---|

7-20-16    34

Patient Name: MARKS,PAUL D
     Unit No: M0203326


TYPE/EXAM
000842423 MR/MRI BRAIN W/WO CON
   HOW IS PATIENT TO BE TRANSPORTED? WC - WHEELCHAIR
   Is patient pregnant?
   Does the patient have a pacemaker? N - NO
      CLINICAL HISTORY: Seizure
      **Rule Out is not a clinical history.**?

PROCEDURE: MRI OF THE BRAIN WITH & WITHOUT CONTRAST

COMPARISON:          None.

INDICATIONS:          Seizure.

TECHNIQUE
Multiplanar multisequence MRI imaging of brain performed before and
after administration of 7 mL Gadavist.

FINDINGS
MRI imaging of the brain demonstrates no mass, midline shift,
hydrocephalus, restricted diffusion or abnormal enhancement.  Mild
generalized atrophy.  There is a minimal amount of periventricular T2
signal abnormality.  This is commonly described to changes of chronic
ischemic microangiopathy.  The cerebellum, mid brain, and pons are
unremarkable.

Thin section imaging through the temporal lobes demonstrates no
mesial temporal lobe sclerosis.  No etiology for seizure on current
examination.

The optic nerves and chiasm are unremarkable.

IMPRESSION
Normal aging brain.  No etiology for seizure on current exam.


Dictated by:  RYAN FARRER, DO on 7/21/2016 at 15:12




PAGE 1              Signed Report Printed From PCI      (CONTINUED)


**Grays Harbor Community Hospital**
*Diagnostic Imaging Department*
*915 Anderson Dr * Aberdeen, WA 98520*

Name: MARKS,PAUL D
Phys: DONOHOE,SAMUEL  MD
DOB: 11/01/1945 Age: 70      Sex: M
Acct No: G019621986 Loc: 316 02
Exam Date: 07/21/2016 Status: DIS IN
Unit No: M0203326

7-20-16

(35)

Patient Name: MARKS,PAUL D
     Unit No: M0203326


TYPE/EXAM
000842423 MR/MRI BRAIN W/WO CON
  HOW IS PATIENT TO BE TRANSPORTED? WC - WHEELCHAIR
  Is patient pregnant?
  Does the patient have a pacemaker? N - NO
    CLINICAL HISTORY: Seizure
    **Rule Out is not a clinical history.**?
  <Continued>

Transcribed by: MMTD on 7/21/2016 at 15:15
Approved by:   RYAN FARRER, DO on 7/21/2016 at 15:35


         ** REPORT SIGNED IN OTHER VENDOR SYSTEM 07/21/2016 **
         Reported By: RYAN FARRER, D.O.


CC: SAMUEL DONOHOE MD; PATIENT UNABLE

Transcribed Date/Time: 07/21/2016 (1515)
Transcriptionist: MMTDISMUKE
Printed Date/Time: 09/07/2016 (1048)

PAGE 2              Signed Report Printed From PCI


*Grays Harbor Community Hospital*
*Diagnostic Imaging Department*
*915 Anderson Dr * Aberdeen, WA 98520*

Name: MARKS,PAUL D
Phys: DONOHOE,SAMUEL   MD
DOB: 11/01/1945 Age: 70       Sex: M
Acct No: G019621986 Loc: 316 02
Exam Date: 07/21/2016 Status: DIS IN
Unit No: M0203326

Patient Name: MARKS, PAUL D
Unit No: M0203326

*7-20-16*

*(36)*

TYPE/EXAM
000842338 XR/PORTABLE CHEST
  HOW IS PATIENT TO BE TRANSPORTED? P - PORTABLE
  Is patient pregnant?
  IS PATIENT ABLE TO STAND? Y
    CLINICAL HISTORY: INTUBATED
    IS THE PATIENT SOB? N
    IS THE PATIENT HAVING CHEST PAIN? N
    ROOM EXAM NEEDED IN/? C - CCU

PROCEDURE: PORTABLE CHEST X-RAY

COMPARISON:      Grays Harbor Community Hospital, CR, PORTABLE CHEST,
7/20/2016, 20:12.

INDICATIONS:      Intubated.

FINDINGS
Scoliosis which distorts the thoracic structures.  Endotracheal tube
tip 3 cm above the carina.  NG tube tip left upper quadrant.  The
heart and mediastinum are normal.  Lungs appear normal, without mass,
consolidation or nodules.

IMPRESSION
1. Endotracheal tube tip 3 cm above the carina.
2. No acute cardiopulmonary changes.
3. Scoliosis.

Dictated by:  RYAN FARRER, DO on 7/21/2016 at 9:01
Transcribed by: MMMB on 7/21/2016 at 9:05
Approved by:  RYAN FARRER, DO on 7/21/2016 at 13:43

            ** REPORT SIGNED IN OTHER VENDOR SYSTEM 07/21/2016 **
            Reported By: RYAN FARRER, D.O.

CC: SAMUEL DONOHOE MD; PATIENT UNABLE

Transcribed Date/Time: 07/21/2016 (0906)
Transcriptionist: MMMBALESTR
Printed Date/Time: 09/07/2016 (1048)

PAGE 1            Signed Report Printed From PCI

*Grays Harbor Community Hospital*
*Diagnostic Imaging Department*
*915 Anderson Dr * Aberdeen, WA 98520*

Name: MARKS, PAUL D
Phys: DONOHOE, SAMUEL  MD
DOB: 11/01/1945 Age: 70      Sex: M
Acct No: G019621986 Loc: 316 02
Exam Date: 07/21/2016 Status: DIS IN
Unit No: M0203326

7-20-16

(37)

Patient Name: MARKS,PAUL D
         Unit No: M0203326


TYPE/EXAM
000842319 CT/CT ABD/PEL W/O
    CLINICAL HISTORY: AAA 5.6 cm found today, now seizure and coma
    **Rule Out is not a clinical history.**?
    COMMENT:

PROCEDURE: CT OF THE ABDOMEN AND PELVIS WITHOUT CONTRAST

COMPARISON:      Grays Harbor Community Hospital, CT, CT ABD/PEL
ANGIOGRAPHY, 2/04/2015, 9:37.

INDICATIONS:      Abdominal aortic aneurysm, 5.6 cm found today, now
seizure and coma.

TECHNIQUE
Noncontrast CT images of the abdomen and pelvis were obtained in the
prone position to evaluate for urinary collecting system calculus.
Coronal and sagittal reconstructed images were performed.  Dose
reduction techniques were utilized.

FINDINGS
CT ABDOMEN:  Bibasilar consolidation and small pleural effusions may
represent aspiration.  The heart size stable.  Stable cyst right lobe
of the liver.  Liver otherwise unremarkable.  The gallbladder,
pancreas, spleen and adrenal glands are unremarkable for a
noncontrasted study.  The kidneys are symmetrical without cortical
thinning or calcifications.  No hydronephrosis.  No retroperitoneal
or mesenteric lymphadenopathy.  There is an infrarenal abdominal
aortic aneurysm which is stable in diameter, measuring up to 5.5 cm.
The small and large bowel are normal in caliber.

CT PELVIS:  Foley catheter within the urinary bladder.  There is some
air within the bladder likely iatrogenic.  No lymphadenopathy or
ascites.

No pathological bone lesions.  Scoliotic curve lumbar spine.

NG tube tip within the distal esophagus.

IMPRESSION
1. Bibasilar consolidation possibly representing aspiration.
2. Stable infrarenal abdominal aortic aneurysm.
3. Foley catheter within the urinary bladder.
4. NG tube tip within the distal esophagus and should be advanced
10-15 cm.

PAGE 1              Signed Report Printed From PCI      (CONTINUED)

**Grays Harbor Community Hospital**
*Diagnostic Imaging Department*
*915 Anderson Dr * Aberdeen, WA 98520*

Name: MARKS,PAUL D
Phys: MIERZEJEWSKI,KEVIN J  DO
DOB: 11/01/1945 Age: 70      Sex: M
Acct No: G019621986 Loc: 316 02
Exam Date: 07/20/2016 Status: DIS IN
Unit No: M0203326

Patient Name: MARKS,PAUL D
     Unit No: M0203326

7-20-16 (38)

TYPE/EXAM
000842319 CT/CT ABD/PEL W/O
    CLINICAL HISTORY: AAA 5.6 cm found today, now seizure and coma
    **Rule Out is not a clinical history.**?
    COMMENT:
  <Continued>

5. Preliminary results were called by Dr. Carrie Harvey of Nightshift
Radiology and sent to the ER at 2154 hours.

Dictated by:  RYAN FARRER, DO on 7/21/2016 at 9:12
Transcribed by: MMMB on 7/21/2016 at 9:34
Approved by:  RYAN FARRER, DO on 7/21/2016 at 13:41

        ** REPORT SIGNED IN OTHER VENDOR SYSTEM 07/21/2016 **
        Reported By: RYAN FARRER, D.O.

CC: KEVIN J MIERZEJEWSKI DO

Technologist: DFROSTAD
Transcribed Date/Time: 07/21/2016 (0934)
Transcriptionist: MMMBALESTR
Printed Date/Time: 09/07/2016 (1048)

PAGE 2         Signed Report Printed From PCI

*Grays Harbor Community Hospital*
*Diagnostic Imaging Department*
*915 Anderson Dr * Aberdeen, WA 98520*

Name: MARKS,PAUL D
Phys: MIERZEJEWSKI,KEVIN J  DO
DOB: 11/01/1945 Age: 70    Sex: M
Acct No: G019621986 Loc: 316 02
Exam Date: 07/20/2016 Status: DIS IN
Unit No: M0203326

Patient Name: MARKS,PAUL D
          Unit No: M0203326



TYPE/EXAM
000842316 CT/HEAD/C-SPINE WITHOUT CONTRAS
    CLINICAL HISTORY: aggitated takedown by scc staff, seizure --> coma
    **Rule Out is not a clinical history.**?
    COMMENT:

PROCEDURE: CT HEAD & C-SPINE WITHOUT CONTRAST

COMPARISON:      None.

INDICATIONS:     Agitated takedown by SCC staff, seizure --> coma.

TECHNIQUE
Multiple contiguous CT axial images of the head and cervical spine
performed with coronal and sagittal reconstructed images.  Dose
reduction techniques were utilized.

FINDINGS
CT HEAD:  No mass, midline shift, hydrocephalus, or acute
intracranial hemorrhage.  There is a moderate amount of
periventricular low attenuation.  This is a nonspecific finding
commonly ascribed to changes chronic ischemic microangiopathy.  There
is mild to moderate cortical atrophy.  There is mild bilateral
ethmoid sinus mucosal thickening.  The calvarium is unremarkable.

CT CERVICAL SPINE:  Reversal of the normal cervical curve with the
apex at C3-C4 disc space.  There is advanced multilevel degenerative
disc and facet disease.  No fracture or malalignment.  ET and NG tube
within the neck soft tissues.  The lung apices are unremarkable.

IMPRESSION
1. Moderate nonspecific white matter changes and cortical atrophy.
2. Advanced degenerative disc and facet disease without fracture.
3. Reversal of the normal cervical curve.
4. NG tube coiled within the esophagus.
5. Preliminary results were called by Dr. Carrie Harvey of Nightshift
Radiology and sent to the ER at 2143 hours.


Dictated by:  RYAN FARRER, DO on 7/21/2016 at 9:06


PAGE 1          Signed Report Printed From PCI     (CONTINUED)

**Grays Harbor Community Hospital**
*Diagnostic Imaging Department*
*915 Anderson Dr * Aberdeen, WA 98520*

Name: MARKS,PAUL D
Phys: MIERZEJEWSKI,KEVIN J  DO
DOB: 11/01/1945 Age: 70    Sex: M
Acct No: G019621986 Loc: 316 02
Exam Date: 07/20/2016 Status: DIS IN
Unit No: M0203326

Patient Name: MARKS, PAUL D
        Unit No: M0203326

7-20-16   (40)

TYPE/EXAM
000842316 CT/HEAD/C-SPINE WITHOUT CONTRAS
    CLINICAL HISTORY: aggitated takedown by scc staff, seizure --> coma
    **Rule Out is not a clinical history.**?
    COMMENT:
  <Continued>

Transcribed by: MMMB on 7/21/2016 at 9:20
Approved by:  RYAN FARRER, DO on 7/21/2016 at 13:41

             ** REPORT SIGNED IN OTHER VENDOR SYSTEM 07/21/2016 **
             Reported By: RYAN FARRER, D.O.

CC: KEVIN J MIERZEJEWSKI DO

Technologist: DFROSTAD
Transcribed Date/Time: 07/21/2016 (0921)
Transcriptionist: MMMBALESTR
Printed Date/Time: 09/07/2016 (1048)

PAGE 2           Signed Report Printed From PCI

***Grays Harbor Community Hospital***
*Diagnostic Imaging Department*
*915 Anderson Dr * Aberdeen, WA 98520*

Name: MARKS, PAUL D
Phys: MIERZEJEWSKI, KEVIN J  DO
DOB: 11/01/1945 Age: 70    Sex: M
Acct No: G019621986 Loc: 316 02
Exam Date: 07/20/2016 Status: DIS IN
Unit No: M0203326

Patient Name: MARKS,PAUL D
            Unit No: M0203326

7-20-16

TYPE/EXAM
000842317 XR/PORTABLE CHEST
    CLINICAL HISTORY: intubated
    **Rule Out is not a clinical history.**?
    ** PLEASE ENTER REASON FOR EXAM AT CLINICAL HISTORY  **?

PROCEDURE: PORTABLE CHEST X-RAY

COMPARISON:        None.

INDICATIONS:       Intubated.

FINDINGS
The endotracheal tube is in good position.  Nasogastric tube distal
tip is in the stomach, however, the side-port is possibly in the
distal esophagus.  Prominent interstitium secondary to increased
pulmonary vasculature.  The rest of the lung field demonstrate no
evidence of pneumonia heart, pneumothorax or pleural effusions.  The
mediastinum and hemidiaphragms are normal.  The heart is normal in
size and shape.

IMPRESSION
1. Endotracheal tube is in good position.
2. The nasogastric tube side-port is possibly in the distal
esophagus.  Recommend advance further down.
3. Prominent pulmonary vasculature.
4. No evidence of pneumonia, pneumothorax or pleural effusions.

Dictated by:  THANH TRIEU, M.D. on 7/21/2016 at 8:48
Transcribed by: MMMB on 7/21/2016 at 8:51
Approved by:  THANH TRIEU, M.D. on 7/21/2016 at 18:12


                ** REPORT SIGNED IN OTHER VENDOR SYSTEM 07/21/2016 **
                Reported By: THANH TRIEU, M.D.



CC: KEVIN J MIERZEJEWSKI DO

Technologist: DFROSTAD
Transcribed Date/Time: 07/21/2016 (1812)
Transcriptionist: MMMBALESTR
Printed Date/Time: 09/07/2016 (1048)

PAGE 1              Signed Report Printed From PCI



*Grays Harbor Community Hospital*
*Diagnostic Imaging Department*
*915 Anderson Dr * Aberdeen, WA 98520*

Name: MARKS,PAUL D
Phys: MIERZEJEWSKI,KEVIN J  DO
DOB: 11/01/1945 Age: 70      Sex: M
Acct No: G019621986 Loc: 316 02
Exam Date: 07/20/2016 Status: DIS IN
Unit No: M0203326

EVENTS   OF


7-27-16


9   PAGES

*EVENTS OF 7-27-16*

*9 - PAGES*



Department of
**Corrections**
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 7/27/2016,  2228 | Offenders Involved: MARKS, PAUL | DOC Number 321696 | Living Unit F-Unit (FN B01) |
|---|---|---|---|
| Location FN B01 | Witnesses Involved: n/a | | |
| Use of Force Incident? ☐ Yes    ☒ No | | | |
| Description of Incident: Medical emergency. | Employees/Contract Staff/Volunteers Involved: C/O McClucas, C/O Crummett, C/O Reese, J, Nurse Lisle, Nurse Hanson | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7/27/2016, I Sgt. Eric Stielau was posted at SCCC as the IMU sergeant on 1st shift.  At approximately 2228hrs C/O McClucas made notification that inmate MARKS, PAUL 321696 was on his cell floor unresponsive.  Booth officer Cullop made notification to Medical for response, and to Master Control.  I responded to the cell with C/O Crummett.  We all assessed that MARKS was moving (heavy shaking) and breathing (chest rising) so we waited for medical.  He wasn't responding to any verbal prompts/directives.  C/O McClucas retrieved a QRT shield for stand-by.  Upon the arrival of medical a few minutes later, the nurses determined the need for immediate entry.  We did so and had no resistance or issues.  The patient was restrained then medical quickly assessed and determined the need for a move to medical (R-building).  C/O Crummett, C/O Reese,J,  Nurse Hanson, Nurse Lisle and I escorted MARKS to medical.  The officers and I stood by until he was later admitted to the IPU.

**Immediate Action Taken:**

| | | | |
|---|---|---|---|
| _[signature]_ | 7/28/2016 | Sgt. | Eric Stielau |
| Signature | Date | Title | Name (Please Print) |

**TO BE COMPLETED BY SUPERINTENDENT DESIGNEE**

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

**Comments:**

| |
|---|
| Signature                                                    Date |

The contents of this document may be eligible for public disclosure.  Social Security Numbers are considered confidential information and will be redacted in the event of such a request.  This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

**Distribution: ORIGINAL-Superintendent        COPY- Chief Investigator**

DOC 21-917 (Rev. 10/23/15)

Scan Code GM02

DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390, DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620

I USED
HELP!! CASE
SITUTION

**OFFENDER'S KITE**

Department of
**Corrections**
WASHINGTON STATE

*PAPELETA DE PETICIÓN DEL INTERNO*

| OFFENDER NAME (PRINT) *NOMBRE DEL INTERNO (LETRA DE MOLDE)* | | |
|---|---|---|
| PAUL MARKS | | |
| DOC NUMBER/*NÚMERO DOC* | FACILITY, UNIT, CELL/FACILITY IS INSTALACIÓN/*UNIDAD, CELDA* | DATE/*FECHA* |
| 321696 | SCCC | 7-22-06 |

DESIRE INTERVIEW WITH OR ANSWER FROM/*DESEA ENTREVISTA CON O RESPUESTA DE*

MS MCTARSNTY OR SOME ONE FROM GRIEVENCE DEPT. ASAP

**REASON/QUESTION**
*RAZÓN/PREGUNTA*

☐ Interpreter needed for_____ (language).
☐ *Necesito intérprete para_____ (idioma).*

PLEASE HELP ME. I'm IN GREAT PAIN FROM
AN ANURSIAM IN MY STOMIC AND NEED A
REAL DOCTOR. THE P.A. AND NURSES ARE WAITING
FOR MY ANURSAM TO ERUPT AND I DIE
SO THEY CAN RID THEM SELUS OF ME. I WAS
AT THE ABERDEEN HOSP BUT WAS DISCHARGED
FOR A SIZURE OF SOME TYPE RELATED TO MY
ANURGAM TO SAVE MONEY. I HAVE A VERY

| SIGNATURE/*FIRMA* | DAYS OFF/*DÍAS LIBRES* |
|---|---|
| Paul Marks | |

**RESPONSE**
*RESPUESTA* SERIOUS SITUTION AND AM BEING
HEID IN CAME U CATo AS MUCH AS THEY
CAN. I HAVE BEEN ATTACKED BY CO'S AND
TAKEN TO THE HOSP AS DISCRIBED ABOVE. I'm
BEING HEID ON SOME MADE UP INCIDENT ABOUT
FAILING TO RETURN TO MY UNIT. I'm SUPPOSED
TO HAVE A HEARING BUT WHO KNOWS WHEN. THEY
CAN HOLD ME FOREVER IF THEY THINK THEY CAN
GET AWAY WITH IT

| RESPONDER/*PERSONA QUE RESPONDE* | DATE/*FECHA* |
|---|---|
| | |

Distribution: **WHITE/YELLOW**-Responder, **YELLOW**-Return to Offender with Response, **PINK**-Offender keeps
*Distribución: BLANCA/AMARILLA-Persona que responde, AMARILLA-Devuelva al interno con respuesta,*
**ROSA**-*Interno*
DOC 21-473 E/S (Rev. 05/23/13)                    DOC 390.585, DOC 450.500



Department of
# Corrections
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 7/27/2016 22:29 | Offenders Involved: Marks Paul | DOC Number 321696 | Living Unit F B01 |
|---|---|---|---|

| Location F- Unit | Witnesses Involved: | | |
|---|---|---|---|

Use of Force Incident? ☐ Yes   ☒ No

| Description of Incident: Medical Emergency Nonresponsive Offender | Employees/Contract Staff/Volunteers Involved: Hansen James RN2,  Lisle Carrie RN2 |
|---|---|

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7/27/2016 at approximately 22:29 a medical emergency was called for a nonresponsive offender down in his cell in F-Unit, Medical staff responded to F-Unit.  Upon arrival to the cell, offender Marks Paul 321696 was found sitting on the floor of his cell. Offender Marks was responsive and breathing, custody transferred offender Marks to a wheelchair form the floor, offender Marks was placed in restraints.

Offender Marks was shaky,and was slow to respond to questions. Offender Marks was transported to medical for further evaluation.

The medical provider was contacted, orders were received, offender Marks was admited to IPU for further observation and nerological assessments,

Immediate Action Taken:Assessment, Triage, Provider Contacted, admited to IPU

| Signature | 7/27/2016 Date | RN2 Title | James Hansen Name (Please Print) |
|---|---|---|---|

### TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

Comments:

| Signature | Date |
|---|---|

The contents of this document may be eligible for public disclosure.  Social Security Numbers are considered confidential information and will be redacted in the event of such a request.  This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)       DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
                                 DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620
Scan Code GM02



Department of
**Corrections**
WASHINGTON STATE

## INCIDENT REPORT

☐ Confidential

| Date/Time of Incident 7/27/16  22:29 | Offenders Involved: Marks, Paul | DOC Number 321696 | Living Unit F-B01 |
|---|---|---|---|
| Location F-unit | Witnesses Involved: | | |
| Use of Force Incident? ☐ Yes   ☒ No | | | |
| Description of Incident: Medical emergency nonresponsive offender down | Employees/Contract Staff/Volunteers Involved: Carrie Lisle RN2, James Hansen RN2 | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7/27/16 at 22:29 hours a medical emergency was called for nonresponsive man down in F-unit.  RN Hansen and myself, RN Lisle responded with the gurney and medical supplies to F-unit.  Upon arrival offender Marks was sitting up on floor in cell, responsive and breathing.  Custody transferred him from floor to wheelchair and then cuffed arms and legs for security.  Offender very shaky, slow to respond to questions.  Moved to medical for evaluation.  Offender stopped shaking, able to respond to questions. States he was taking a nap on the floor, denies falling, hitting head or loss of consciousness. States he has pain in his abdomen, unable to rate pain.  Pupils slightly sluggish on neuro exam.  No injuries noted, vital signs stable.  Assessment findings phoned to Dr. Sara Smith who ordered offender Marks be admitted to IPU for observation and neurological assessments every two hours throughout the night.

Immediate Action Taken:Offender Marks admitted to IPU as ordered.

| Signature: *Carrie Lisle RN* | 7/27/16 Date | RN2 Title | Carrie Lisle RN2 Name (Please Print) |
|---|---|---|---|

### TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

Comments:

Signature                                                    Date

The contents of this document may be eligible for public disclosure.  Social Security Numbers are considered confidential information and will be redacted in the event of such a request.  This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)    DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
                              DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620
Scan Code GM02               PRU-43634 2nd Installment  000023

Printed by: Barry DeHaven

**Incident Information**

| | |
|---|---|
| Incident Number: | 16-46679 |
| Facility : | SCCC-IMU |
| Location : | Cell |
| Place : | Cell |
| Confidential ? : | No |
| Facility Lockdown ? : | No |
| Restricted Movement ? : | No |
| STG Incident ? : | No |
| Property Damage ? : | No |
| Date and Time of Incident : | 07/27/2016 22:35 |
| Reporting Staff : | Dehaven, Barry E |
| Date and Time Submitted : | |
| Creating Staff: | Dehaven, Barry E |

*ca: R. weber* (handwritten)

**Primary Incident Type**

| | |
|---|---|
| Primary Incident Category : | Offender |
| Primary Incident Type : | Medical Emergency |
| Modifiers : | |
| Mandatory Confidential : | N |

**Involved Offenders**

| | | | | |
|---|---|---|---|---|
| Doc Nb : 321696 | Name : MARKS, Paul D | Gender : Male | Race : White | STG Group: |
| Community Concerns: No | Active Warrant : No | Injured ? : No | Hospitalized ? : No | |

**Involved Staff**

| Name | Position Description | Injured ? | Hospitalized ? |
|---|---|---|---|
| Name : Stielau, Eric E | Position Description : Corrections/Custody Officer 3 | Injured ? : No | Hospitalized ? : No |
| Name : Reese, Jesse E | Position Description : Corrections/Custody Officer 2 | Injured ? : No | Hospitalized ? : No |
| Name : Mcclucas, Timothy J | Position Description : Corrections/Custody Officer 2 | Injured ? : No | Hospitalized ? : No |
| Name : Hansen, James E | Position Description : Registered Nurse 2 | Injured ? : No | Hospitalized ? : No |
| Name : Lisle, Carrie A | Position Description : Registered Nurse 2 | Injured ? : No | Hospitalized ? : No |

**Other Participants**

Type : Gender: Last name : First name : Comment : Injured ? : No Hospitalized ? : No

**Other Agencies Contacted**

| Agency Type | Agency Name | Date Contacted | Time Contacted | Comments |
|---|---|---|---|---|

PRU-43634 2nd Installment  000015

**Narrative**

| Date | Narrative |
|------|-----------|
| 07/28/2016 | On 7/27/16 at 2335 hours F unit staff reported an offender down in his cell appeared to be in convulsions. Offender Marks Paul # 321696 was assessed by RN Hansen and Lisle taken to medical evaluated further and placed in the IPU for observation. Duty Officer Van Ogle notified. all documentation completed. |



**Department of**
# Corrections
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident<br>07/27/2016    2235 | Offenders Involved: Marks,Paul | DOC Number<br>321696 | Living Unit<br>FNB-01 |
|---|---|---|---|
| Location<br>FNB-01 | Witnesses Involved: C/O's Crummett, McClucas and Sgt. Stielau | | |
| Use of Force Incident? ☐ Yes   ☒ No | | | |
| Description of Incident: emergency medical cell entry | Employees/Contract Staff/Volunteers Involved: C/O's Crummett, McClucas, Reese, J and Sgt. Stielau | | |

DETAILS: Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 07/27/2016 at approximately 2228 a medical emergency was called in F Unit. At 2235 I, C/O Reese, J was directed by Sgt. Richards (208) to report to F Unit to assist. Upon arrival in F North B-Pod I was directed by Sgt. Stielau to assist in the emergency medical cell entry of FNB-01 assigned to I/M Marks, Paul DOC# 321696. Upon looking through the window and also upon entering cell FNB-01 I/M Marks was found to be laying/sitting on the floor convulsing/shaking. I retained the ankle restraints and handed them to C/O Crummett after he had applied wrist restraints. I then retrieved a wheel chair from medical staff and held the wheel chair in place so I/M Marks could be lifted into it to transport him to medical. I then proceeded to push I/M Marks from F Unit to medical. Once in medical I remained in the treatment room until I/M Marks was addmitted into upper medical. Once addmitted I escorted I/M Marks from the treatment room to upper medical room R-2022 and remained in R-2022 while medical staff conducted a vitals check. Once the vitals check was completed I exited mdeical.

Immediate Action Taken:   *Offender assessed taken to medical third floor*

Signature _____   07/27/2016 Date   C/O 2 Title   Reese, Jesse Name (Please Print)

TO BE COMPLETED BY SUPERINTENDENT DESIGNEE

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

Comments:

Signature _____   Date _____

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

DOC 21-917 (Rev. 10/23/15)

Scan Code GM02

DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390, DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620



Department of
# Corrections
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident<br>7/27/16, 2228 | Offenders Involved:<br>MARKS, PAUL | DOC Number<br>321696 | Living Unit<br>F-Unit (FN B01) |
|---|---|---|---|
| Location<br>FN B01 | Witnesses Involved: n/a | | |
| Use of Force Incident? ☐ Yes     ☒ No | | | |
| Description of Incident:<br>Medical emergency. | Employees/Contract Staff/Volunteers Involved:<br>C/O Crummett, C/O McClucas, C/O Reese, J, Nurse Lisle, Nurse Hanson | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7-27-16 at 2228 hours C/O McClucas made notification that inmate MARKS, PAUL 321696 in cell FN B01 was laying on his cell floor and unresponsive. I (C/O Crummett) responded to the cell with Sgt Stielau. We all assessed that MARKS was moving (heavy shaking) and breathing (chest rising) so we waited for medical. He wasn't responding to any verbal prompts/directives. When medical arrived a few minutes later, the nurses determined the need for immediate entry. We did so and had no resistance or issues. The patient was restrained then medical quickly assessed and determined the need for a move to medical (R-building). I C/O Crummett, C/O Reese,J, Nurse Hanson, Nurse Lisle escorted MARKS to medical. I then stayed with MARKS until he was admitted to the IPU.

Immediate Action Taken:

| Signature | 7/27/16<br>Date | C/O 2<br>Title | Nathan Crummmett<br>Name (Please Print) |
|---|---|---|---|

**TO BE COMPLETED BY SUPERINTENDENT/DESIGNEE**

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

Comments:

| Signature | Date |
|---|---|

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

Distribution: ORIGINAL-Superintendent          COPY- Chief Investigator

DOC 21-917 (Rev. 10/23/15)          DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
                                    DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 890.620
Scan Code GM02



Department of
**Corrections**
WASHINGTON STATE

**INCIDENT REPORT**

☐ Confidential

| Date/Time of Incident 7-27-2016 // 2228 hours | Offenders Involved: MARKS, PAUL | DOC Number 321696 | Living Unit F-Unit IMU |
|---|---|---|---|
| Location FNB01 | Witnesses Involved: n/a | | |
| Use of Force Incident? ☐ Yes   ☒ No | | | |
| Description of Incident: Medical emergency/Cell Entry. | Employees/Contract Staff/Volunteers Involved: SGT. Stielau, C/O Crummett, C/O Cullop, C/O Reese, J., Nurse Lisle, Nurse Hanson | | |

**DETAILS:** Who was involved, what took place, how did it happen, description of any injuries, damage, use of force, etc. Attach additional sheet, if necessary.

On 7/27/2016 at approximately 2228 hrs I, C/O McClucas, T. (F583), made notification to SGT. Stielau (F582) and C/O Cullop (F587/Booth Operator) that Offender Marks, Paul DOC# 321696 was on his cell floor unresponsive, but breathing, and appearing to be convulsing. Shortly thereafter, both C/O Crummett and SGT. Stielau were at the cell front observing much the same. Upon SGT. Stielau's directives I retrieved a QRT shield for stand-by. Soon thereafter Medical Nurses Lisle and Hanson and C/O Reese, J. arrived at the cell and determined the need for immediate entry. I made entry with the shield and several staff and experienced no resistance or issues. The Offender was restrained, placed in a wheel chair, and then medical assessed him, determining he needed to be moved to Medical R-Building for further assessment/observations.

| Immediate Action Taken: |
|---|
| Cell Entry Assisted with restraining Offender for movement. |

| Signature | 7/28/2016 | Correction Officer 2 | McClucas, Timothy |
|---|---|---|---|
| | Date | Title | Name (Please Print) |

TO BE COMPLETED BY SUPERINTENDENT DESIGNEE

| Date/Time Received | | Incident Number |
|---|---|---|
| Investigation Assigned To | By | Date |

| Comments: |
|---|
| |

| Signature | Date |
|---|---|

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

Distribution: ORIGINAL-Superintendent     COPY- Chief Investigator

DOC 21-917 (Rev. 10/23/15)      DOC 390.350, DOC 420.080, DOC 420.150, DOC 420.250, DOC 420.255, DOC 420.360, DOC 420.390,
DOC 420.500, DOC 420.550, DOC 620.200, DOC 630.550, DOC 690.620
Scan Code GM02

CONTINUED FROM

(59)

(60) WHAT HAPPENED NEXT: FOR the NEXT FEW DAYS I WAS IN MY CELL BY MYSELF.

(61) WHAT HAPPENED NEXT: A INMATE NAMED BROCK NORRIS WAS MOVED INTO MY CELL

(62) WHAT HAPPENED NEXT: AFTER SEVERAL DAYS, NORRIS MADE SEXUAL JESTURES

(63) WHAT HAPPENED NEXT: I REPORTED the INAPPROPRIATE JESTURES TO SGT DICKERSON WHO JUST ROLED HIS EYES AND SAID "THERE IS NOTHING I CAN DO ABOUT IT, I HAVE NO PLACE TO MOVE HIM."

(64) WHAT HAPPENED NEXT: I HAD AN OPPERATION ON MY AROTA AORTA, WAS DISCHARGED FROM the HOSPITAL IN OLYMPIA, WA AND RETURNED TO SCCC UPSTAIRS MEDICAL.

(65) WHAT HAPPENED NEXT: AT APPROX 11:00 NURSE ESPOLIZA CAME TO MY ROOM, TOOK MY VITALS, WAS CONCERNED THAT I HAD A ELEVATED TEMP AND MY SKIN HAD A RASH. SHE CALLED A MEDICAL EMERGELCY. A AMBULANCE CAME AND TOOK ME TO ABERDEEN EMERGENCY WITH 2 CO'S ALMGREN AND CARTMAN.

(66) WHAT HAPPENED NEXT: AT THE EMERGENCY ROOM I WAS MADE TO CHANGE INTO A GOWN GOWN, LAID ON A BED ALL CHAINED UP. I WAS VERY ILL FROM THE OPPERATION. CO ALMGREN AND CO CARTMAN

PAGE 7 CRONO

DID EVERYTHING TO CAUSE ME TO HAVE A MIGRAIN HEADACH BY
HAVING THERE RADIO TURNED UP AS LOUD AS THEY COULD. KARTMAL EVEN
TOLD ME IT WAS HIS JOB TO MAKE ME AS UNCOMFORTABLE AS HE COULD.

(67) WHAT HAPPENED NEXT: THE EMERGENCY ROOM DR. CAME IN,
SAID THERE WAS NOTHING WRONG WITH ME, THAT I WAS HAVEING
A REACTION TO THE MEDICATION. I TOLD HER I HAD A MIGRAIN
HEADACK AND WANTED A CODINE ASPIRN. SHE SLAMED HER BOOK
LEFT THE ROOM. SENT IN A NURSE WITH AN ASPIRN. I WAS
DISCHARGED AND SENT BACK TO SCCC MEDICAL

(68) WHAT HAPPENED NEXT: WENT BACK TO "G" UNIT

(69) WHAT HAPPENED NEXT: NEXT FEW DAYS I WAS RECOUPING FROM
MY SURGERY. NORRIS CONTINUED HIS PREA CRAP.

(70) WHAT HAPPENED NEXT: I COMPLAINED TO SGT DICKERSON ABOUT
NORRIS. SAME RESULT NOTHING HAPPENED.

(71) WHAT HAPPENED NEXT: AFTER SEVERAL MORE COMPLAINTS ABOUT
NORRIS, DICKERSON HAND ME FILL OUT A MOVE SLIP TO MOVE NORRIS.
I FILLED OUT THE MOVE SLIP AND INCLUDED A 1½ PAGES OF
THINGS NORRIS DID. SGT DICKERSON TOOK ONLY THE MOVE
SLIP.

(72) WHAT HAPPENED NEXT: AFTER MORE COMPLAINTS TO SGT DICKERSON,
WHO DID NOTHING. I WENT TO MY COUNSLOR, TOLD HER ABOUT

My Situation. She had me fill out a statement.

(73) What happened next: After filling out the statement, I asked my colsluree if I was going to be moved. She assured me I wasn't to be moved because of my recient surgery.

→ what happened next

(74) At aprox 3:15+ - my counselor came to me and told me I had to move

(75) What happened next: At great discomfort to me, I packed up all my stuff, put it on a cart and went to a side of 'G' unit and reported to the day room C.O. name unknown at this time.

(76) What happened next: the day room C.O. told me my new cell asignment was up stairs.

(77) What happened next: I told him I had a HSR that required me to have a lower bunk and no climeing stairs (which at the time I thought was valid because I sent a request for a HSR update on 9-8-16 via a medical kite and another on 8-25-16 to Ba.light via a medical kite) and I was recouering from a surgery I had stueral days earlyer.

(78) What happened next: the dayroom CO slamen closen a book he was writing in and went some ware unknown to me.

(79) What happened next: the day room CO and another CO. came to

ME AND LEAD ME TO A BACK ROOM HOLDING CELL (IT WAS COUNT TIME 3:40)

(80) WHAT HAPPENED NEXT: THE NEXT THING I KNEW, I WAS AT LOWER MEDICAL AND A NURSE WAS ASKING ME QUESTIONS, MY NAME ECT. I WAS TOLD I HAD A SEIZURE AND A MEDICAL EMERGENCY WAS CALLED. I RECCUERED AND SPENT THE NIGHT IN UPSTAIRS MEDICAL

(81) WHAT HAPPENED NEXT: AT APROX 2:30$^{pm}$+ - 3 CO'S CAME TO UPPER MEDICAL AND took ME TO IMU. NO REASON WAS GIVEN AT THAT TIME.

(82) WHAT HAPPENED NEXT: THAT DAY OR THE NEXT DAY I WAS STRVED A MAJOR INFRACTION FOR REFUSING TO TAKE A CELL ASSIGNMENT. THE INFRACTION WAS BROUGHT BY CUS SCHRIBER

SEE  CUS SCHRIBER

AND MOVE TO CRCC

BECAUSE OF SCHRIBER

(83) WHAT HAPPENED NEXT: THE INFRACTION WAS SERVED ON ME At UPSTAIRS MEDICAL

(84) WHAT HAPPENED NEXT: I WAS MOVED TO I.M.U. By ORDERS FROM CUS SCHRIBER

SEE SCHRIBER EVENTS

EX 1 (B)

A05

## Placement Referral:

**MARKS, Paul D (321696)**

Offender Information At Time Of Placement
| | | | |
|---|---|---|---|
| **ERD:** 01/02/2020 | **RLC:** LOW | **Custody Level:** Medium | **Location:** SCCC |

Placement Movement

**\* Initial Placement Date:** 10/18/2016    **\* Time:** 10:25    **\* Initial Placement Status:** Pre-Hearing Confinement

**\* Initial Placement Facility:** SCCC-IMU    **\* Initial Placement Living Unit:** F

**\* Pre-Placement Location:** SCCC-R

Placement Details

| **Placement Type:** | **Placement Detail:** | **Placement Due Infraction:** |
|---|---|---|
| Threat to Orderliness of Facility | Refusing Bed Assignment | 724 - REFUSE CELL/HOUSING ASSIGN |

Placement Narrative
Offender Refused Cell Assignment. Infraction Submitted.

**Requesting Staff:** Schreiber, Robert J                 **Authorizing Staff:** Mainio, Eric W

## Placement Authorization:

**\* Authorization Narrative:**
Concur

◉ Authorize          ○ Deny

| **Authorizing Staff:** | **Serving/Reporting Staff:** | **Superintendent/Designee:** |
|---|---|---|
| Mainio, Eric W | Schuetter, Brian L | Cotton, Jeneva M |

## Placement Decision:

**Superintendent/Designee:** Cotton, Jeneva M                 **Date of Decision:** 10/18/2016

**Decision Narrative:**
PHC Approved - WAC 724

◉ Approve          ○ Deny

## Change Placement Status: Administrative Segregation Pending Transfer

**Staff:** Richardson, Rick M                                         ~~Date~~ 10/2016

**\* Action Narrative**
~~Due To Recent Info~~

**Previous Placement Status:** Pre-Hearing Confinement   **New Placement Status:** Administrative Segregation Pending Transfer

SCHREIBER EVENT

11/9/2016

**Department of**
# Corrections
WASHINGTON STATE

**INITIAL SERIOUS INFRACTION REPORT**

*EVENT* (11)

| Date of Infraction 10/18/16 | Offender Name (Last, First) Marks, Paul | DOC Number 321696 | Housing Assignment GD19L |
|---|---|---|---|

Rule Violation #(s)
~~505~~  724

| Approximate Time Occurred 1540 hours | Place of Incident (Be Specific) G Unit holding cell | | Date Occurred 10/17/16 |
|---|---|---|---|
| Witness (1) | Days Off | Witness (3) | Days Off |
| Witness (2) | Days Off | Witness (4) | Days Off |

### NARRATIVE

State a concise description of the details of the rule violations, covering all elements and answering the questions of When? Where? Who? What? Why? and How?  Describe any injuries, property damage, use of force, etc.  Attach all related reports.

On 10/17/2016 at approximately 1540 hours offender Marks was being moved from GA24L to GD19L due to ongoing concerns with he and his current cell mate.  As offender Marks was given his new cell assignment he told the officers he would not be going to the cell due to it being upstairs.  Officer Travess reported to me that offender Marks stated he was not going to go to his newly assigned cell.  Offender was placed in G Unit holding cell at this time.  A check of offender Marks OMNI as well as a check with medical does not show the offender being issued a Health Status Report for a lower Bunk or to be housed on the lower tier. This information was relayed to offender Marks to which he stated he was not going to any cell that required him to go up any stairs for any reason, I then asked offender Marks if he was refusing a cell to which he replied "yes".

*WAS HAVING SEAZURE WAS UNCONSOUS*

| Reporting Employee/Contract Staff Name (Last, First) (Print Name) Schreiber, Rob | Shift 0800-1630 | Days Off S/S |
|---|---|---|

| Evidence Taken ☐ Yes ☒ No | Evidence Case Number | Evidence Locker Number | Photo/Video Submitted ☐ Yes ☒ No |
|---|---|---|---|

Description of Evidence

**RECEIVED**

Placed in
Pre-Hearing Confinement ☐ Yes ☐ No  Date _____
Administrative Segregation ☐ Yes ☐ No  Date _____

OCT 20 2016

SCCC HEARINGS DEPARTMENT

### NAME(S) OF ALLEGED VICTIMS OF THIS INCIDENT

| Last, First 1) | ☐ Employee/Contract Staff | ☐ Volunteer/Visitor/Other ☐ Offender | DOC# |
|---|---|---|---|
| Last, First 2) | ☐ Employee/Contract Staff | ☐ Volunteer/Visitor/Other ☐ Offender | DOC# |

Related Reports Attached ☒ Supplemental  ☐ Medical
☐ Employee/Contract Staff Witness Statements  ☐ Other (Specify)

| Reporting Employee/Contract Staff Signature   L'HEUCUX | Date 10/16/16 |
|---|---|
| Infraction Review Officer Signature and Name (Last/First)   LT. E. MANNO, ERIC | Date 10/18/16 |

**The contents of this document may be eligible for public disclosure.  Social Security Numbers are considered confidential information and will be redacted in the event of such a request.  This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.**

Distribution: **ORIGINAL** - Imaging System/Central File  **COPY** - Hearing Officer, Offender, Board
DOC 17-076 (Rev. 05/11/16)
Scan Code IF01

*NVNE NONE   MC NARTY TOLD TO BRING ME HERE*

DOC 460.000, DOC 580.655
[4-4233], [4-4236]



# OFFENDER COPY

**Department of Corrections**
WASHINGTON STATE

Sch Event

**SERIOUS INFRACTION REPORT**

Facility: SCCC-IMU

Infraction Group Number: 29

## EMPLOYEE REPORT

Name: MARKS, Paul D.                    DOC #: 321696                    Date: 10/17/2016

Number of rule(s) violated:   724 - REFUSE CELL/HOUSING ASSIGN          Time: 15:40

Place: Living Unit

Details in full:  On 10/17/2016 at approximately 1540 hours offender Marks was being moved from GA24L to GD19L due to ongoing concerns with he and his current cell mate. As offender Marks was given his new cell assignment he told the officers he would not be going to the cell due to it being upstairs. Officer Travess reported to me that offender Marks stated he was not going to go to his newly assigned cell. Offender was placed in G Unit holding cell at this time. A check of offender Marks OMNI as well as a check with medical does not show the offender being issued a Health Status Report for a lower Bunk or to be housed on the lower tier. This information was relayed to offender Marks to which he stated he was not going to any cell that required him to go up any stairs for any reason, I then asked offender Marks If he was refusing a cell to which he replied "yes".

Witnesses:

ROBERT J. SCHREIBER
_____          _____
Reporting Employee (Print)        Reporting Employee Signature

## FACT FINDING DURING HEARING

Was offender informed of right to remain silent? ☒Yes ☐No       Date of Hearing: 11/9/2016

  PLEA:   GUILTY

     NOT GUILTY   724

     NO PLEA

Did the offender make statement after being informed of his/her rights? ☒ Yes ☐ No

If so, what? In the prior unit I had an HSR. I talked to SGT Dickerson about moving. He said, he had no place to move me. I went to Miss Thomas, she had me fill out a statement. When I was told to move I had an HSR, I told him I wasn't going up and down stairs. I never talked to Schreiber.

## DECISION

  FINDING: GUILTY   724

Reason for sanction(s): Facts and evidence found: Based upon inmate's statement, OMNI Reports. I/M didn't have an HSR as of 11/07/16

Sanction is within doc policy 460.050; 10 days dseg;.

Recommendations (Non-Sanction): 1st infraction of this kind.

Thomas L'heureux
_____          _____          11/09/16
Hearing Officer (Print)           Hearing Officer Signature         Date

Dan  Van Ogle
_____          _____          11/09/16
Superintendent/designee (Print)   Superintendent/designee Signature Date

The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.

# Corrections
Department of
WASHINGTON STATE

Infraction Group Number: 29

**DISCIPLINARY HEARING APPEAL DECISION**

| To | DOC # | Date |
|---|---|---|
| MARKS, Paul D. | 321696 | 11/21/2016 |
| From | Superintendent/Designee | |
| Hearings | Dan Van Ogle | |

On 11/9/2016, a Department Hearing was held for the WAC violation(s) listed: 724 - Refusing a cell or housing assignment

The Hearing Officer found you guilty of committing one or more violations and imposed the following sanction (s): 10 days segregation applied

On 11/21/2016, an appeal of this hearing was received from you in which you requested review of the Hearing Officer's

decision and/or sanction.

You appealed:

**OFFENDER COPY**

☒ The finding(s) of guilt
☐ The sanction(s) imposed

In summary, your appeal states:
You never intended to refuse a cell assignment.

In reviewing your appeal, I have made the following determination(s):

☒ The disciplinary hearing process was conducted in accordance with Due Process requirements and WAC 137-28.
☒ At least 24 hours advance written notice was provided or you waived the 24 hour advance notice in writing/with witness.
☒ You were provided an opportunity to call witnesses and present documentary evidence on your behalf. If witness(es) were denied, the Hearing Officer provided you with written reason(s) for the denial.
☒ The finding was made by an impartial (i.e., not viewed as biased or having witnessed the incident being heard) Hearing Officer.
☒ A written statement of the finding(s) and sanction(s) imposed was provided to you and includes the evidence relied upon and the reason(s) for the decision.
☒ Sanction(s) are in accordance with DOC Presumptive Sanction Guidelines and WAC 137-28.

If confidential information was submitted, I have confirmed:

☐ The Hearing Officer made an independent determination regarding reliability of the confidential source(s), credibility of the information, and safety concerns that justify non-disclosure of the confidential source(s) of information.
☐ The above information was documented on DOC 17-072 Confidential Information Review Checklist.

On behalf of the Superintendent, I have investigated your appeal and find that:
**Sufficient evidence exists to support substantiate a guilty finding.**

☒ You were found guilty as explained above.
☐ There was insufficient evidence for a finding of guilt as explained below.
☐ A procedural error occurred as explained below.
☐ The sanction was appropriate, and you were provided with the Hearing Officer's written report.
☐ Other:

AND THEREFORE, the decision of the Hearing Officer is:

☒ Affirmed
☐ Remanded for a new hearing. (You will be notified of the hearing date).
☐ Reversed
☐ Reduced
☐ Modified as follows:

**The contents of this document may be eligible for public disclosure. Social Security Numbers are considered confidential information and will be redacted in the event of such a request. This form is governed by Executive Order 00-03, RCW 42.56, and RCW 40.14.**

Distribution: Original –Offender    COPY-Superintendent, Imaging System/Central File, Hearing Officer
DOC 09-197 (Rev. 12/08/15) E-Form
Scan Code: Packet (IF01), Individual (HR04)

DOC 460.000

IGN 24

WAC 724
SCH EUPH
(12)

**Department of**
## Corrections
WASHINGTON STATE

# WITNESS STATEMENT

| Name of Witness | DOC Number | Facility |
|---|---|---|
| Thomas, Amanda | | SCCC |

Position/Title of Witness

Staff/CC

| NAME OF OFFENDER(S) TO WHICH STATEMENT REFERS | DOC NUMBER |
|---|---|
| Marks, Paul | 321696 |
| | |
| | |

Offender Copy

### OFFENDER DESIRES WRITTEN STATEMENT CONCERNING THE FOLLOWING

724 - Refusing a cell or housing assignment

On 10/17/2016 at approximately 1540 hours offender Marks was being moved from GA24L to GD19L due to ongoing concerns with he and his current cell mate. As offender Marks was given his new cell assignment he told the officers he would not be going to the cell due to it being upstairs. Officer Travess reported to me that offender Marks stated he was not going to go to his newly assigned cell. Offender was placed in G Unit holding cell at this time. A check of offender Marks OMNI as well as a check with medical does not show the offender being issued a Health Status Report for a lower Bunk or to be housed on the lower tier. This information was relayed to offender Marks to which he stated he was not going to any cell that required him to go up any stairs for any reason, I then asked offender Marks if he was refusing a cell to which he replied "yes".

| Name of Person Obtaining Statement | Date | Time | |
|---|---|---|---|
| Sheron Creed OAS-Hearings | 11/02/16 | 1446 | ☐ a.m. ☒ p.m. |

**NOTE:** This statement should give a factual account of the events witnessed. Of particular importance is information as to what was observed, where and when it occurred, who was involved, what other witnesses there were to the event and, if possible, any factual information relative to the possible reasons for the incident or misconduct.

### STATEMENT (Use back of this page if additional space is required.)

On 10/17/2016 I CC2 Thomas reviewed OMNI and found no status report for lower bunk or lower tier. I then walked to Medical to confirm in the files that I was not overlooking his HSR (he stated he had). Per SCCC Medical Marks has no lower tier lower bunk HSR. I did witness Marks refuse to cell in due to his cell being on the upper tier. Marks was placed in a holding cell due to his refusal.

**FILED**

AO 440 (Rev. 02/09) Summons in a Civil Action (Page 2)

Civil Action No. *17-2-50-3*

**PROOF OF SERVICE**

17  MAY 10  A9 :41

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

GRAYS HARBOR CO. SUPERIOR
C. BROWN CLERK

This summons for *(name of individual and title, if any)* DEPT. OF CORR.

was received by me on *(date)* _____

☒ I personally served the summons on the individual at *(place)* COYOTE RIDGE C.C. 1301 N. EPHRATA AVE, CONNELL, WA 99321 on *(date)* 5-4-17 ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____, a person of suitable age and discretion who resides there,
on *(date)* _____, and mailed a copy to the individual's last known address; or

☒ I served the summons on *(name of individual)* CRS PARTADA SGT SIELEY , who is
designated by law to accept service of process on behalf of *(name of organization)* DEPT OF CORRECTIONS
AT CO. FOREDOL on *(date)* 5-4-17 -1:41 ; or PM time

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date: 5-4-17

*Server's signature*

PAUL MARICS 321696 EB 26L
*Printed name and title*

1301 N. EPHRATA AVE, CONLTLL WA 99326
*Server's address*

Additional information regarding attempted service, etc:

